IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------- x
                                 :

*In re:*                               :       **Chapter 15**

                                 :

**ESSAR STEEL ALGOMA INC.,** *et al.,*[1]    :       **Case No. 15–** _____ (   )

                                 :

      **Debtors in a foreign proceeding.**    :       **(Joint Administration Requested)**

                                 :
-------------------------------------------------------------- x

**DECLARATION OF JOHN CIARDULLO IN SUPPORT
OF VERIFIED CHAPTER 15 PETITIONS AND MOTION OF FOREIGN
REPRESENTATIVE FOR ENTRY OF PROVISIONAL AND FINAL ORDERS
<u>GRANTING RECOGNITION OF FOREIGN MAIN PROCEEDING</u>**

      I, John Ciardullo, state as follows:

      1.      I submit this declaration (this "**Declaration**") in support of the above-

captioned debtors and debtors-in-possession (collectively, "**Algoma**" or the "**Debtors**"), who

contemporaneously filed a motion seeking recognition of the Canadian Proceeding (as defined

below) as a "foreign main proceeding" and additional relief, respecting and in aid of the Canadian

Proceeding.  All facts set forth in this Declaration are based on:  (i) my knowledge; (ii) my review

of relevant documents; or (iii) my opinion based upon my experience and knowledge of Algoma's

operations.  If I were called upon to testify, I could and would testify competently to the facts set

forth herein.

      2.      I am a partner in the firm of Stikeman Elliott LLP, 5300 Commerce Court

West, 199 Bay Street, Toronto, Ontario M5L 1B9 where I chair the Capital Markets/Public

---

[1] The Debtors in the foreign proceeding and the last four digits of each Debtor's United States Tax Identification Number, Canadian Business Number, or Provincial Corporation Number, as applicable, are as follows: Essar Steel Algoma Inc. (0642), Essar Steel Algoma Inc. USA (8788), Essar Steel Algoma (Alberta) ULC (6883), Essar Tech Algoma Inc. (8811), and Cannelton Iron Ore Company (9965).  The Debtors' principal offices are located at 105 West Street, Sault Ste. Marie, Ontario P6A 7B4, Canada.

Mergers & Acquisitions Group in the firm's Toronto office and co-chair the firm's global Public

M&A group.  I am Canadian counsel to Algoma, whose Canadian Proceeding is pending before

the Canadian Court.

3.      I attended the University of Waterloo from 1989-1991 and Queen's

University from 1992 to 1995 when I graduated with a Bachelor of Laws degree and was admitted

to the Ontario Bar in 1997.

4.      I have a broad-ranging domestic and cross-border corporate practice at

Stikeman Elliott LLP which is currently focused on Public M&A transactions but also

encompasses a broad spectrum of other corporate transactions including debt and equity financings

and corporate restructurings.  Over the course of my career, I have been involved in numerous

CCAA arrangement proceedings.

5.      My expertise in Canadian corporate law is recognized by a number of

different publications including:  The Best Lawyers in Canada, The Canadian Legal Lexpert

Directory, Lexpert's Guide to the Leading U.S./Canada Cross-border Corporate Lawyers in

Canada, PLC's Which Lawyer? and Chambers Global's Guide to the World's Leading Lawyers

for Business.

6.      This Declaration is comprised of matters that are statements of legal opinion

and/or statements of fact.  Where the matters stated in this Declaration are statements of legal

opinion, such statements represent my view of Canadian law as a lawyer admitted and licensed to

practice in Ontario, Canada.

7.      Where the matters stated in this Declaration are statements of fact that are

within my personal knowledge, they are true.  Where the matters stated in this Declaration are

statements of fact that are not within my personal knowledge, they are derived from documents

and/or information supplied to me by or on behalf of the Debtors and are true to the best of my knowledge, information, and belief.

### Algoma's CCAA Proceeding

8.      On November 9, 2015, Algoma, in a foreign proceeding (the "**Canadian Proceeding**"), filed an application (the "**Application**") with the Ontario Superior Court of Justice (Commercial List) (the "**Canadian Court**") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**").  On November 9, 2015, the Canadian Court issued an interim order (the "**CCAA Initial Order**") granting certain relief, including, *inter alia*, (i) approving a postpetition financing facility, (ii) a charge over Algoma's assets to secure the postpetition financing facility, (iii) a charge on Algoma's assets to secure payment in favor of indemnities granted to its directors and officers, (iv) charges securing payments of certain professional obligations, (v) an order directing Algoma's critical suppliers to continue providing goods and/or services to Algoma during the Canadian Proceeding and a charge over Algoma's assets in an amount equal to the value of the goods and services supplied by such critical suppliers and received by Algoma after the date of the CCAA Initial Order less all amounts paid to such critical supplier in respect of such goods and services, (vi) an order prohibiting all of Algoma's suppliers from interfering with the supply of goods or services to Algoma, and (vii) a stay of all proceedings and actions against Algoma.

### Overview of CCAA Restructuring Process

9.      The CCAA provides for a controlled reorganization procedure designed to enable financially distressed companies to avoid foreclosure or seizure of assets while maximizing the company's value as a going concern for the benefit of creditors and other parties in interest (a "**CCAA Proceeding**").

10.     A CCAA Proceeding is a voluntary insolvency proceeding in which the debtor reorganizes or liquidates its business and distributes proceeds to creditors pursuant to a plan and under court supervision.  The debtor's assets and affairs are subject to the supervision of the Canadian Court during the pendency of a CCAA Proceeding.

11.     In a CCAA Proceeding, absent exceptional circumstances, the debtor's management and board of directors remain in place, and the board maintains its power under Canadian law to approve significant actions, including disposing of important assets, borrowing significant amounts, or changing corporate structures, subject to oversight by a court-appointed monitor (discussed below) and consent of the court.

12.     Upon the commencement of a CCAA Proceeding, the court will appoint a qualified monitor, who functions as an independent observer of the CCAA Proceeding and the debtor's business and (i) monitors the company's ongoing operations, (ii) reports to the court on any major events affecting the company, (iii) notifies the company's creditors and shareholders of any meetings and tabulates votes at these meetings, if held, (iv) assists with preparing, filing, and holding meetings for voting on the plan of arrangement, (v) approves the disclaimer of contracts, (vi) may prepare reports in conjunction with any interlocutory motions by the company or other stakeholders, and (vii) prepares a report on the plan of arrangement, which is usually included in the mailing of the plan, if one is filed.  Consent of the monitor is generally not required for the debtor to manage its business, including the sale of assets in the ordinary course, but the monitor may request that the court enjoin any actions that may prove harmful to the debtor and/or its creditors.  Though the monitor need not formally approve significant transactions such as asset sales outside of the ordinary course, court approval is generally required for such transactions and the court gives weight to the monitor's recommendations concerning such transactions.

13.     Upon the commencement of a CCAA Proceeding, all actions against the debtor and its assets are stayed, wherever located.  The stay is typically granted for an initial period of 30 days, but is typically extended where the debtor can show it continues to act with good faith and due diligence. There is no limit on the number or duration of these extensions of the stay.

14.     In a CCAA Proceeding, subject to limited exceptions, clauses triggering termination rights upon the debtor's commencement of an insolvency proceeding are not enforceable, so contract counterparties may not terminate contracts solely by virtue of the commencement of the CCAA Proceeding.

15.     In a CCAA Proceeding, a debtor is able to obtain postpetition financing (DIP financing), subject to a hearing and court approval, after showing that the proposed financing is in the best interests of its estate.  Such borrowings would typically have priority status in the CCAA Proceeding and, if unsecured financing is unavailable, the debtor is permitted to borrow on a secured basis.

16.     In a CCAA Proceeding, the court may approve priority charges against the company's assets, which prime existing secured creditors, where notice of the charge approval hearing is given to the potentially affected creditors and the court is of the opinion that such charges are necessary in the circumstances.

17.     After commencing a CCAA Proceeding, a debtor has a number of options available for its restructuring, including pursuing asset sales outside of the ordinary course of business before a plan is confirmed or by confirming a plan of arrangement that would provide for the transactions described therein.  Any party-in-interest seeking to object to the plan of arrangement may appeal to the Canadian Court.

18.     Throughout a CCAA Proceeding, the court retains broad discretion to "make any order that it considers appropriate in the circumstances."

*[Remainder of Page Intentionally Left Blank.  Signature Page to Follow]*

**<u>Conclusion</u>**

I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct to the best of my knowledge, information, and belief.


Executed on this ___9th___ day of November, 2015


Toronto, Ontario

John Ciardullo
Stikeman Elliott LLP
5300 Commerce Court West
199 Bay Street
Toronto, ON M5L 1B9

## EXHIBIT A

**CCAA Initial Order**

Court File No. CV-15-000011169-00CL

### ONTARIO
### SUPERIOR COURT OF JUSTICE
### COMMERCIAL LIST

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | MONDAY, THE 9TH |
| | ) | |
| JUSTICE NEWBOULD | ) | DAY OF NOVEMBER, 2015 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT
OF ESSAR STEEL ALGOMA INC., ESSAR TECH ALGOMA INC., ESSAR STEEL ALGOMA
(ALBERTA) ULC, CANNELTON IRON ORE COMPANY AND ESSAR STEEL ALGOMA
INC. USA

Applicants

### INITIAL ORDER

**THIS APPLICATION,** made by Essar Steel Algoma Inc. ("**ESAI**"), Essar Tech Algoma Inc., Essar Steel Algoma (Alberta) ULC, Cannelton Iron Ore Company and Essar Steel Algoma Inc. USA (together, the "**Applicants**" or "**Algoma**"), pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**") was heard this day at 330 University Avenue, Toronto, Ontario.

**ON READING** the affidavit of Rajat Marwah sworn November 9, 2015, and the Exhibits attached thereto (the "**Marwah Affidavit**"), the Pre-filing Report of Ernst & Young Inc., as proposed monitor, and on being advised that those parties listed in Schedule "A" hereto were given notice of this application, and on hearing the submissions of counsel for the Applicants, Ernst & Young Inc. and the DIP Agent (as defined below) and on reading the consent of Ernst & Young Inc. to act as Monitor (the "**Monitor**").

THIS IS TO CERTIFY THAT THIS DOCUMENT, EACH PAGE OF WHICH IS STAMPED WITH THE SEAL OF THE SUPERIOR COURT OF JUSTICE AT TORONTO, IS A TRUE COPY OF THE DOCUMENT ON FILE IN THIS OFFICE.

LA PRÉSENT ATTEST QUE CE DOCUMENT, DONT CHACUNE DES PAGES EST REVÊTUE DU SCEAU DE LA COUR SUPÉRIEURE DE JUSTICE À TORONTO, EST UNE COPIE CONFORME DU DOCUMENT CONSERVÉ DANS CE BUREAU

DATED AT TORONTO THIS 9 DAY OF November 20 15
FAIT À TORONTO LE JOUR DE

REGISTRAR

**Tara Steed**
Registrar, Superior Court of Justice

6473413 v17

SERVICE

1.      THIS COURT ORDERS that the time for service of the Notice of Application and the Application Record is hereby abridged and validated so that this Application is properly returnable today and hereby dispenses with further service thereof.

APPLICATION

2.      THIS COURT ORDERS AND DECLARES that the Applicants are companies to which the CCAA applies.

PLAN OF ARRANGEMENT

3.      THIS COURT ORDERS that any one or more of the Applicants shall have the authority to file and may, subject to further order of this Court, file with this Court a plan of compromise or arrangement (hereinafter referred to as the "Plan").

POSSESSION OF PROPERTY AND OPERATIONS

4.      THIS COURT ORDERS that the Applicants shall remain in possession and control of their current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate, including all proceeds thereof (the "Property").  For greater certainty, "Property" includes all raw materials, inventory and other assets of the Applicants currently, or in the future, located at the cargo port facility (the "Port") leased by Algoma to Port of Algoma Inc. ("PortCo") pursuant to the Port Lease between ESAI (as landlord) and PortCo (as tenant) dated November 14, 2014, as amended, restated, supplemented and/or modified from time to time, and the Applicants shall be entitled to continued unimpeded access to all Property located at the Port and use of all equipment used in connection with the operation of the Port.  Subject to further Order of this Court, the Applicants shall continue to carry on business in a manner consistent with the preservation of their business (the "Business") and the Property.

THIS IS TO CERTIFY THAT THIS
DOCUMENT EACH PAGE OF
WHICH IS STAMPED WITH THE
SEAL OF THE SUPERIOR COURT
OF JUSTICE AT TORONTO, IS A
TRUE COPY OF THE DOCUMENT
ON FILE IN THIS OFFICE

DATED AT TORONTO THIS  9  DAY OF  November  20 15
FAIT À TORONTO LE

REGISTRAR

LA PRÉSENT ATTEST QUE CE
DOCUMENT, DONT CHACUNE
DES PAGES EST REVÊTUE DU
SCEAU DE LA COUR SUPÉRIEURE
DE JUSTICE À TORONTO, EST UNE
COPIE CONFORME DU DOCUMENT
CONSERVÉ DANS CE BUREAU

JOUR DE

Tara Stead
Registrar, Superior Court of Justice

5.    **THIS COURT ORDERS** that the Applicants are authorized and empowered to continue to retain and employ the employees, consultants, agents, experts, accountants, counsel and such other persons (collectively, the "**Assistants**") currently retained or employed by them, with liberty to retain such further Assistants as they deem reasonably necessary or desirable in the ordinary course of business or for the carrying out of the terms of this Order.

6.    **THIS COURT ORDERS** that the Applicants shall be entitled to continue to utilize the central cash management system currently in place, as described in the Marwah Affidavit, or, subject to the terms of the DIP Agreement (as defined below) and the Definitive Documents (as defined below), replace it with another substantially similar central cash management system (the "**Cash Management System**") and that any present or future bank providing the Cash Management System shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by the Applicants of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, shall be entitled to provide the Cash Management System without any liability in respect thereof to any Person (as hereinafter defined) other than the Applicants, pursuant to the terms of the documentation applicable to the Cash Management System, and shall be, in its capacity as provider of the Cash Management System, an unaffected creditor under the Plan with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management System.

7.    **THIS COURT ORDERS** that, in accordance with the DIP Agreement, the Definitive Documents and the Budget (as defined in the DIP Agreement), the Applicants shall be entitled but not required to pay the following expenses whether incurred prior to or after this Order:

(a)    all outstanding and future wages, salaries, bonuses, employee and pension benefits (including, without limitation, employee and retiree medical, dental and similar benefit plans or arrangements, employee assistance programs, and other retirement benefits and related contributions) vacation pay and

THIS IS TO CERTIFY THAT THIS
WHICH IS STAMPED WITH THE
SEAL OF THE SUPERIOR COURT
OF JUSTICE AT TORONTO, IS A
TRUE COPY OF THE DOCUMENT
ON FILE IN THIS OFFICE

LA PRÉSENT ATTEST QUE CE
DOCUMENT, DONT CHACUNE
DES PAGES EST REVÊTUE DU
SCEAU DE LA COUR SUPÉRIEURE
DE JUSTICE A TORONTO, EST UNE
COPIE CONFORME DU DOCUMENT
CONSERVÉ DANS CE BUREAU

DATED AT TORONTO THIS ____ DAY OF _November__ 20 _15_
FAIT À TORONTO LE                    JOUR DE

**Tara Stead**
Registrar, Superior Court of Justice

REGISTRAR

expenses payable on or after the date of this Order, in each case incurred in the ordinary course of business and consistent with existing compensation policies and arrangements;

(b) all outstanding or future amounts owing in respect of customer rebates, refunds, discounts or other amounts on account of similar customer programs or obligations; and

(c) the fees and disbursements of any Assistants retained or employed by the Applicants in respect of these proceedings, at their standard rates and charges.

8.    THIS COURT ORDERS that, in accordance with the DIP Agreement, the Definitive Documents and the Budget, and except as otherwise provided to the contrary herein, the Applicants shall be entitled but not required to pay all reasonable expenses incurred by the Applicants in carrying on the Business in the ordinary course prior to, on or after this Order, and in carrying out the provisions of this Order, which expenses shall include, without limitation:

(a) all expenses and capital expenditures reasonably necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors and officers insurance), maintenance and security services; and

(b) payment for goods or services actually supplied to the Applicants following the date of this Order,

provided that, to the extent such expenses were incurred prior to the date of this Order, the Applicants shall only be entitled to pay such amounts if they are determined by the Applicants, in consultation with the Monitor, to be necessary to the continued operation of the Business or preservation of the Property and such payments are approved in advance by the Monitor or by further Order of the Court.

THIS IS TO CERTIFY THAT THIS DOCUMENT, EACH PAGE OF WHICH IS STAMPED WITH THE SEAL OF THE SUPERIOR COURT OF JUSTICE AT TORONTO, IS A TRUE COPY OF THE DOCUMENT ON FILE IN THIS OFFICE

LA PRÉSENT ATTEST QUE CE DOCUMENT, DONT CHACUNE AUX PAGES EST REVÊTUE DU SCEAU DE LA COUR SUPÉRIEURE DE JUSTICE A TORONTO, EST UNE COPIE CONFORME DU DOCUMENT CONSERVÉ DANS CE BUREAU

DATED AT TORONTO THIS ___ DAY OF _November_ 20 _15_
FAIT A TORONTO LE ___ JOUR DE

Tara Stead
Registrar, Superior Court of Justice

- 5 -

9.      THIS COURT ORDERS that the Applicants shall remit, in accordance with legal requirements, or pay:

    (a)      any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from employees' wages, including, without limitation, amounts in respect of (a) employment insurance, (b) Canada Pension Plan, and (c) income taxes;

    (b)      all goods and services or other applicable sales taxes (collectively, "**Sales Taxes**") required to be remitted by the Applicants in connection with the sale of goods and services by the Applicants, but only where such Sales Taxes are accrued or collected after the date of this Order, or where such Sales Taxes were accrued or collected prior to the date of this Order but not required to be remitted until on or after the date of this Order; and

    (c)      any amount payable to the Crown in right of Canada or of any Province thereof or any political subdivision thereof or any other taxation authority in respect of municipal realty, municipal business or other taxes, assessments or levies of any nature or kind which are entitled at law to be paid in priority to claims of secured creditors and which are attributable to or in respect of the carrying on of the Business by the Applicants.

10.      THIS COURT ORDERS that until a real property lease is disclaimed in accordance with the CCAA, the Applicants shall pay all amounts constituting rent or payable as rent under real property leases (including, for greater certainty, common area maintenance charges, utilities and realty taxes and any other amounts payable to the landlord under the lease) or as otherwise may be negotiated between the Applicants and the landlord from time to time ("**Rent**"), for the period commencing from and including the date of this Order, twice-monthly in equal payments on the first and fifteenth day of each month, in advance (but not in arrears).  On the date of the first of such payments, any Rent relating to the period commencing from and including the date of this Order shall also be paid.

Tara Stead
Registrar, Superior Court of Justice

11.     **THIS COURT ORDERS** that, except as specifically permitted herein and in accordance with the DIP Agreement, the Definitive Documents and the Budget, the Applicants are hereby directed, until further Order of this Court: (a) to make no payments of principal, interest thereon or otherwise on account of amounts owing by the Applicants to any of their creditors as of this date; (b) to grant no security interests, trust, liens, charges or encumbrances upon or in respect of any of its Property; and (c) to not grant credit or incur liabilities except in the ordinary course of the Business.

RESTRUCTURING

12.     **THIS COURT ORDERS** that the Applicants shall, subject to such requirements as are imposed by the CCAA and such covenants as may be contained in the DIP Agreement, Definitive Documents, have the right to:

(a)     permanently or temporarily cease, downsize or shut down any of its business or operations;

(b)     dispose of redundant or non-material assets not exceeding $5 million in any one transaction or $10 million in the aggregate, and otherwise with the consent of the Monitor and the DIP Agent and the Requisite Lenders (as defined in the DIP Agreement) or further Order of the Court;

(c)     terminate the employment of such of its employees or temporarily lay off such of its employees as it deems appropriate; and

(d)     pursue all avenues of refinancing of its Business or Property, in whole or part, subject to prior approval of this Court being obtained before any material refinancing,

all of the foregoing to permit the Applicants to proceed with an orderly restructuring of the Business (the "**Restructuring**").

Tara Stead
Registrar, Superior Court of Justice

13.     THIS COURT ORDERS that the Applicants shall provide each of the relevant landlords with notice of the Applicants' intention to remove any fixtures from any leased premises at least seven (7) days prior to the date of the intended removal. The relevant landlord shall be entitled to have a representative present in the leased premises to observe such removal and, if the landlord disputes the Applicants' entitlement to remove any such fixture under the provisions of the lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors, such landlord and the Applicants, or by further Order of this Court upon application by the Applicants on at least two (2) days' notice to such landlord and any such secured creditors. If the Applicants disclaim the lease governing such leased premises in accordance with Section 32 of the CCAA, they shall not be required to pay Rent under such lease pending resolution of any such dispute (other than Rent payable for the notice period provided for in Section 32(5) of the CCAA), and the disclaimer of the lease shall be without prejudice to the Applicants' claim to the fixtures in dispute.

14.     THIS COURT ORDERS that if a notice of disclaimer is delivered pursuant to Section 32 of the CCAA, then (a) during the notice period prior to the effective time of the disclaimer, the landlord may show the affected leased premises to prospective tenants during normal business hours, on giving the Applicants and the Monitor 24 hours' prior written notice, and (b) at the effective time of the disclaimer, the relevant landlord shall be entitled to take possession of any such leased premises without waiver of or prejudice to any claims or rights such landlord may have against the Applicants in respect of such lease or leased premises, provided that nothing herein shall relieve such landlord of its obligation to mitigate any damages claimed in connection therewith.

NO PROCEEDINGS AGAINST THE APPLICANTS OR THE PROPERTY

15.     THIS COURT ORDERS that until and including December 9, 2015, or such later date as this Court may order (the "**Stay Period**"), no proceeding or enforcement process in any court or tribunal (each, a "Proceeding") shall be commenced or continued against or in respect of the Applicants or the Monitor, or affecting the Business or the Property, except with the written consent of the Applicants and the Monitor, or with leave of this Court, and

Tara Stead
Registrar, Superior Court of Justice

- 8 -

any and all Proceedings currently under way against or in respect of the Applicants or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.

**NO EXERCISE OF RIGHTS OR REMEDIES**

16.     THIS COURT ORDERS that during the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of the Applicants or the Monitor, or affecting the Business or the Property, are hereby stayed and suspended, including the right of any Person who has entered into a consignment arrangement with the Applicants to repossess or remove any property delivered to the Applicants or located on the property owned by the Applicant, except with the written consent of the Applicants and the Monitor or leave of this Court, provided that nothing in this Order shall (a) empower the Applicants to carry on any business which the Applicants are not lawfully entitled to carry on, (b) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA, (c) prevent the filing of any registration to preserve or perfect a security interest, or (d) prevent the registration of a claim for lien.

17.     THIS COURT ORDERS that during the Stay Period, all rights and remedies of any Person, against or in respect of PortCo and Essar Power Canada Ltd. ("**EPC**"), or affecting the business, assets, undertakings or properties of PortCo or EPC that could alter, interfere with or otherwise impede the Business or Property are hereby stayed and suspended except with the written consent of the Monitor or leave of this Court, provided that ESAI continues to perform its contractual obligations to PortCo and EPC.

**NO INTERFERENCE WITH RIGHTS**

18.     THIS COURT ORDERS that during the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Applicants, except with the written consent of the Applicants and the Monitor, or leave of this Court.

9 _ November_ 15

Tara Stead
Registrar, Superior Court of Justice

## CONTINUATION OF SERVICES

19.    **THIS COURT ORDERS** that during the Stay Period, all Persons having oral or written agreements with the Applicants or statutory or regulatory mandates for the supply of goods and/or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation services, utility, electricity, steam, raw materials, equipment, customs clearing, logistics, port services, cargo handling services, warehouse services, outside processors, or other services to the Business or the Applicants (including for greater certainty PortCo and EPC), are hereby restrained until further Order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the Applicants, and that the Applicants shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by the Applicants in accordance with normal payment practices of the Applicants or such other practices as may be agreed upon by the supplier or service provider and each of the Applicants and the Monitor, or as may be ordered by this Court.

## NON-DEROGATION OF RIGHTS

20.    **THIS COURT ORDERS** that, notwithstanding anything else in this Order, but subject to paragraphs 21 to 23 below, no Person shall be prohibited from requiring immediate payment for goods, services, use of lease or licensed property or other valuable consideration provided on or after the date of this Order, nor shall any Person be under any obligation on or after the date of this Order to advance or re-advance any monies or otherwise extend any credit to the Applicants. Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA.

6473413 v17

Tara Stead
Registrar, Superior Court of Justice

## CRITICAL SUPPLIERS

21.     THIS COURT ORDERS AND DECLARES that each of the entities listed in Schedule "B" hereto is a critical supplier of the Applicants as contemplated by Section 11.4 of the CCAA (each, a "**Critical Supplier**").

22.     THIS COURT ORDERS that each Critical Supplier shall continue to supply the Applicants with goods and/or services in accordance with the terms and conditions of their existing agreement or arrangements, as set out in Schedule "B" hereto. No Critical Supplier may require the payment of a further deposit or the posting of any additional security in connection with the supply of goods and/or services to the Applicants after the date of this Order.

23.     THIS COURT ORDERS that each Critical Supplier shall be entitled to the benefit of and is hereby granted a charge (together, the "**Critical Supplier Charge**") on the Property in an amount equal to the value of the goods and services supplied by such Critical Supplier and received by the Applicants after the date of this Order less all amounts paid to such Critical Supplier in respect of such goods and services; provided that such charge shall not exceed an aggregate amount of $15 million. The value of the goods and services supplied shall be determined in accordance with the terms of the existing agreement or arrangements between the Applicants and the Critical Supplier or, in the event of any dispute, by the Court. The Critical Supplier Charge shall have the priority set out in paragraphs 47 and 49 hereof.

## PROCEEDINGS AGAINST DIRECTORS AND OFFICERS

24.     THIS COURT ORDERS that during the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against any of the former, current or future directors or officers of the Applicants with respect to any claim against the directors or officers that arose before the date hereof and that relates to any obligations of the Applicants whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such obligations, until a compromise or arrangement in respect of the Applicants, if one is

Tara Stead
Registrar, Superior Court of Justice

filed, is sanctioned by this Court or is refused by the creditors of the Applicants or this Court.

## DIRECTORS' AND OFFICERS' INDEMNIFICATION AND CHARGE

25.    THIS COURT ORDERS that the Applicants shall indemnify their directors and officers against obligations and liabilities that they may incur as directors and officers of the Applicants after the commencement of the within proceedings, except to the extent that, with respect to any director or officer the obligation or liability was incurred as a result of the director's or officer's gross negligence or wilful misconduct.

26.    THIS COURT ORDERS that the directors and officers of the Applicants shall be entitled to the benefit of and are hereby granted a charge (the "D&O Charge") on the Property, which charge shall not exceed an aggregate amount of $30 million, as security for the indemnity provided to their directors and officers in paragraph 25 of this Order. The D&O Charge shall have the priority set out in paragraphs 47 and 49 hereof.

27.    THIS COURT ORDERS that, notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the D&O Charge, and (b) the Applicants' directors and officers shall only be entitled to the benefit of the D&O Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph 25 of this Order.

## ENGAGEMENT OF FINANCIAL ADVISOR

28.    THIS COURT ORDERS that the agreement dated as of October 14, 2015, engaging Evercore Group L.L.C. (the "Financial Advisor") as financial advisor to the Applicants, a copy of which is attached as Exhibit "[E]" to the Marwah Affidavit (the "Evercore Engagement Letter"), and the retention of the Financial Advisor under the terms thereof are hereby approved, including, without limitation, the payment of the Monthly Fee and reasonable expenses, the Success Fee and the Financing Fee (as those terms are defined in the Evercore Engagement Letter). The Financial Advisor shall be

9  DAY OF November 20 15

Tara Stead
Registrar, Superior Court of Justice

entitled to the benefit of and is hereby granted a charge (the "**Financial Advisor's Charge**") on the Property, which charge shall not exceed an aggregate amount of $8 million, as security for the Success Fee. The Financial Advisor's Charge shall have the priority set out in paragraphs 47 and 49 hereof. The Monthly Fee and reasonable expenses shall be entitled to the benefit of the Administration Charge (as defined below).

## APPOINTMENT OF MONITOR

29.     **THIS COURT ORDERS** that Ernst & Young Inc. is hereby appointed pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the business and financial affairs of the Applicants with the powers and obligations set out in the CCAA or set forth herein and that the Applicants and their shareholders, officers, directors, and Assistants shall advise the Monitor of all material steps taken by the Applicants pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations and provide the Monitor with the assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.

30.     **THIS COURT ORDERS** that the Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

   (a)     monitor the Applicants' receipts and disbursements;

   (b)     report to this Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, and such other matters as may be relevant to the proceedings herein;

   (c)     assist the Applicants, to the extent required by the Applicants, in their dissemination to the DIP Agent and the DIP Lenders and their respective counsel and financial advisors of financial and other information as contemplated to be provided to the DIP Agent and the DIP Lenders pursuant to the DIP Agreement and the Definitive Documents, and the Court orders that such information may be used in these proceedings;

Tara Stead
Registrar, Superior Court of Justice

(d)     advise the Applicants in their preparation of the Applicants' cash flow statements and reporting required by the DIP Agreement and the Definitive Documents, which information shall be reviewed with the Monitor and delivered to the DIP Agent and the DIP Lenders and their respective counsel and financial advisors in accordance with the DIP Agreement and the Definitive Documents;

(e)     advise the Applicants in their development of the Plan and any amendments to the Plan;

(f)     assist the Applicants, to the extent required by the Applicants, with the holding and administering of creditors' or shareholders' meetings for voting on the Plan;

(g)     have full and complete access to the Property, including the premises, books, records, data, including data in electronic form, and other financial documents of the Applicants, to the extent that is necessary to adequately assess the Applicants' business and financial affairs or to perform its duties arising under this Order;

(h)     be at liberty to engage independent legal counsel or such other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order; and

(i)     perform such other duties as are required by this Order or by this Court from time to time.

31.     THIS COURT ORDERS that the Monitor shall not take possession of the Property and shall take no part whatsoever in the management or supervision of the management of the Business and shall not, by fulfilling its obligations hereunder, be deemed to have taken or maintained possession or control of the Business or Property, or any part thereof.

32.     THIS COURT ORDERS that nothing herein contained shall require the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, "Possession") of any of the Property that might be environmentally

Tara Stead
Registrar, Superior Court of Justice

contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the *Canadian Environmental Protection Act*, the Ontario *Environmental Protection Act*, the *Ontario Water Resources Act*, or the Ontario *Occupational Health and Safety Act* and regulations thereunder (the "**Environmental Legislation**"), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation. The Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.

33.     **THIS COURT ORDERS** that the Monitor shall provide any creditor of the Applicants and the DIP Agent with information provided by the Applicants in response to reasonable requests for information made in writing by such creditor addressed to the Monitor. The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph. In the case of information that the Monitor has been advised by the Applicants is confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Applicants may agree.

34.     **THIS COURT ORDERS** that, in addition to the rights and protections afforded the Monitor under the CCAA or as an officer of this Court, the Monitor shall incur no liability or obligation as a result of its appointment or the carrying out of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part. Nothing in this Order shall derogate from the protections afforded the Monitor by the CCAA or any applicable legislation.

*November 15*

**Tara Stead**
Registrar, Superior Court of Justice

35.    **THIS COURT ORDERS** that the Monitor, counsel to the Monitor, counsel to the Applicants and counsel to the Board of Directors of ESAI shall be paid their reasonable fees and disbursements, whether incurred before or after the date of this Order, in each case at their standard rates and charges, by the Applicants as part of the costs of these proceedings, all subject to assessment by order of the Court. The Applicants are hereby authorized and directed to pay the accounts of the Monitor, counsel to the Monitor, counsel to the Applicants and counsel to the Board of Directors on a weekly basis and, in addition, the Applicants are hereby authorized to pay to the Monitor, counsel to the Monitor, counsel to the Applicants and counsel to the Board of Directors, retainers in amounts satisfactory to the Monitor or this Court, to be held by them as security for payment of their respective fees and disbursements outstanding from time to time.

36.    **THIS COURT ORDERS** that the Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the Commercial List of the Ontario Superior Court of Justice.

37.    **THIS COURT ORDERS** that the Monitor, counsel to the Monitor, counsel to the Applicants, counsel to the Board of Directors of ESAI, the Financial Advisor (in respect of its monthly fees and expenses, but not in respect of the Success Fee or the Financing Fee, as those terms are defined in the Marwah Affidavit) shall be entitled to the benefit of and are hereby granted a charge (the "**Administration Charge**") on the Property, which charge shall not exceed an aggregate amount of $5 million, as security for the professional fees and disbursements of the Monitor, counsel to the Monitor, counsel to the Applicants, and counsel to the Board of Directors of ESAI (incurred at their standard rates and charges) and the monthly fees and expenses of the Financial Advisor (in accordance with the Evercore Engagement Letter), both before and after the making of this Order in respect of these proceedings. The Administration Charge shall have the priority set out in paragraphs 47 and 49 hereof.

**Tara Stead**
Registrar, Superior Court of Justice

## DIP FINANCING

38.     THIS COURT ORDERS that the Applicants   are hereby authorized and empowered to obtain and borrow under the Senior Secured, Priming and Super-Priority Debtor-in-Possession Revolving Credit Agreement, including as amended by the DIP Term Sheet annexed thereto (the "**DIP Agreement**"), attached to the Marwah Affidavit as Exhibit "[G]", among the Applicants and Deutsche Bank AG New York Branch (the "**DIP Agent**") and the Lenders party thereto (the "**DIP Lenders**") in order to finance the Applicants' working capital requirements and other general corporate purposes and capital expenditures, all in accordance with the Budget, provided that borrowings under the DIP Agreement shall not exceed the principal amount of US$50 million unless permitted by further Order of this Court.

39.     THIS COURT ORDERS that such credit facility shall be on the terms and subject to the conditions set forth in the DIP Agreement and the Definitive Documents (defined below).

40.     THIS COURT ORDERS that the Applicants are hereby authorized and empowered to execute and deliver such credit agreements, mortgages, charges, hypothecs and security documents, guarantees and other definitive documents (collectively, the "**Definitive Documents**"), as are contemplated by the DIP Agreement or as may be reasonably required by the DIP Agent and the DIP Lenders pursuant to the terms thereof, and the Applicants are hereby authorized and directed to pay and perform all of their indebtedness, interest, fees, liabilities and obligations to the DIP Agent and the DIP Lenders under and pursuant to the DIP Agreement and the Definitive Documents as and when the same become due and are to be performed, notwithstanding any other provision of this Order.

41.     THIS COURT ORDERS that the DIP Agent and the DIP Lenders shall be entitled to the benefit of and is hereby granted a charge (the "**DIP Lenders' Charge**") on the Property. The DIP Lenders' Charge shall secure all amounts owing by the Borrower to the

**Tara Stead**
Registrar, Superior Court of Justice

- 17 -

DIP Agent and the DIP Lenders under the DIP Agreement and the Definitive Documents. The DIP Lenders' Charge shall have the priority set out in paragraphs 47 and 49 hereof.

42.     **THIS COURT ORDERS** that, notwithstanding any other provision of this Order:

  (a)   the DIP Agent and the DIP Lenders may take such steps from time to time as it may deem necessary or appropriate to file, register, record or perfect the DIP Lenders' Charge or any of the Definitive Documents;

  (b)   upon the occurrence of an event of default under the DIP Agreement, the Definitive Documents or the DIP Lenders' Charge, the DIP Agent and the DIP Lenders may cease making advances to the Applicants, set off and/or consolidate any amounts owing by the DIP Agent and the DIP Lenders to the Applicants against the obligations of the Applicants to the DIP Agent and the DIP Lenders under the DIP Agreement, the Definitive Documents or the DIP Lenders' Charge, make demand, accelerate payment, terminate any unutilized commitments under the DIP Agreement, the Definitive Documents or the DIP Lenders' Charge and give other notices, and upon four (4) days written notice to the Applicants and the Monitor, and with leave of the Court, may exercise any and all of its other rights and remedies against the Applicants or the Property under or pursuant to the DIP Agreement, the Definitive Documents and the DIP Lenders' Charge, including without limitation, the appointment of a receiver, receiver and manager or interim receiver, or for a bankruptcy order against the Applicants and for the appointment of a trustee in bankruptcy of the Applicants;

  (c)   in connection with the exercise of any and all of their rights and remedies under paragraph 42(b), the DIP Agent and the DIP Lenders and any receiver, receiver and manager or interim receiver of the Applicants appointed by the Court on the application of the DIP Agent and the DIP Lenders shall be entitled to enter the cargo port facility located at the Port on notice to PortCo and repossess, disable or remove all or any portion of the DIP Collateral located at the Port; and

9   November   15

Tara Stead
Registrar, Superior Court of Justice

(d)     the foregoing rights and remedies of the DIP Agent and the DIP Lenders shall
be enforceable against any trustee in bankruptcy, interim receiver, receiver or
receiver and manager of the Applicants, the Property or PortCo and its
property.

43.     THIS COURT ORDERS that the DIP Agent is authorized and directed to make
any and all payments required to be made by the DIP Agent under the DIP Agreement, the
Definitive Documents and this Order, in each case in accordance with the Budget.

44.     THIS COURT ORDERS AND DECLARES that notwithstanding paragraph 3 but
subject to paragraph 42, the DIP Agent and the DIP Lenders shall be treated as unaffected
in any plan of arrangement or compromise filed by the Applicants under the CCAA, or
any proposal filed by the Applicants under the *Bankruptcy and Insolvency Act*, R.S.C. 1985 c.
B-2, as amended (the "BIA"), with respect to any advances made under the DIP Agreement
and the Definitive Documents.

45.     THIS COURT ORDERS that prior to the hearing of the Comeback Motion (defined
below), the Applicants, in consultation with the Monitor, shall prepare such protocols and
procedures regarding intercompany transactions, claims and cash transfer (including,
without limitation, such protocols regarding transactions with PortCo and EPC), which
shall be reasonably acceptable to the DIP Agent and which protocol and procedures shall
form part of the Cash Management System.

46.     THIS COURT ORDERS AND DECLARES that this Order is subject to provisional
execution and that if any of the provisions of this Order in connection with the DIP
Agreement, the Definitive Documents or the DIP Lenders' Charge shall subsequently be
stayed, modified, varied, amended, reversed or vacated in whole or in part (collectively, a
"Variation") whether by subsequent order of this Court on or pending an appeal from this
Order, such Variation shall not in any way impair, limit or lessen the protections, rights or
remedies of the DIP Agent and the DIP Lenders, whether under this Order (as made prior
to the Variation), under the DIP Agreement or under any of the documentation delivered
hereto or thereto (including the Definitive Documents, if any), with respect to any
advances made prior to the DIP Agent and the DIP Lenders being given notice of the

9   November   15

**Tara Stead**
Registrar, Superior Court of Justice

Variation and the DIP Agent and the DIP Lenders shall be entitled to rely on this Order as issued (including, without limitation, the DIP Lenders' Charge) for all advances so made.

**VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER**

47.    **THIS COURT ORDERS** that the priorities of the Administration Charge, the Critical Supplier Charge, the DIP Lenders' Charge and the D&O Charge, as among them, shall be as follows:

> First – Administration Charge (to the maximum amount of $5 million);

> Second – Critical Suppliers' Charge (to the maximum amount of $15 million);

> Third – DIP Lenders' Charge;

> Fourth – D&O Charge (to the maximum amount of $30 million); and

> Fifth – Financial Advisor's Charge (to the maximum amount of $8 million).

48.    **THIS COURT ORDERS** that the filing, registration or perfection of the Administration Charge, the Critical Suppliers' Charge, the DIP Lenders' Charge, the D&O Charge and the Financial Advisor's Charge (collectively, the "Charges") shall not be required, and that the Charges shall be valid and enforceable for all purposes, including as against any right, title or interest filed, registered, recorded or perfected subsequent to the Charges coming into existence, notwithstanding any such failure to file, register, record or perfect.

49.    **THIS COURT ORDERS** that each of the Charges shall constitute a charge on the Property and, subject to the charge over real property pursuant to section 11.8(8) of the CCAA (which, for greater certainty, shall not include any personal property of the Applicants or any property or equipment of the Applicants that is now or hereafter on or affixed to any real property of the Applicants, including any property of the Applicants that is or becomes a fixture), and subject to the requirements of s. 11.2 of the CCAA, such Charges shall rank in priority to all other security interests, trusts (including constructive

Tara Stead
Registrar, Superior Court of Justice

trusts), liens, charges and encumbrances, claims of secured creditors, statutory or otherwise (including any deemed trust created under the Ontario *Pension Benefits Act*) (collectively, the "**Encumbrances**") other than (a) any Person with a properly perfected purchase money security interest under the *Personal Property Security Act* (Ontario) or such other applicable provincial legislation that has not been served with notice of the application for this Order; and (b) statutory super-priority deemed trusts and liens for unpaid employee source deductions.

50.     **THIS COURT ORDERS** that except as otherwise expressly provided for herein, or as may be approved by this Court, the Applicants shall not grant any Encumbrances over any Property that rank in priority to, or *pari passu* with, any of the Charges unless the Applicants also obtain the prior written consent of the Monitor, the DIP Agent and the DIP Lenders and the other beneficiaries of the Charges, or further Order of this Court.

51.     **THIS COURT ORDERS** that the Charges and the DIP Agreement and the Definitive Documents shall not be rendered invalid or unenforceable and the rights and remedies of the chargees entitled to the benefit of the Charges (collectively, the "**Chargees**") thereunder shall not otherwise be limited or impaired in any way by (a) the pendency of these proceedings and the declarations of insolvency made herein; (b) any application(s) for bankruptcy order(s) issued pursuant to the BIA, or any bankruptcy order made pursuant to such applications; (c) the filing of any assignments for the general benefit of creditors made pursuant to the BIA; (d) the provisions of any federal or provincial statutes; or (e) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan documents, lease, sublease, offer to lease or other agreement (collectively, an "**Agreement**") which binds the Applicants, and notwithstanding any provision to the contrary in any Agreement:

(a)     neither the creation of the Charges nor the execution, delivery, perfection, registration or performance of the DIP Agreement or the Definitive Documents shall create or be deemed to constitute a breach by the Applicants of any Agreement to which it is a party;

9    November 15

Tara Stead
Registrar, Superior Court of Justice

(b)   none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from the Applicants entering into the DIP Agreement or the Definitive Documents, the creation of the Charges, or the execution, delivery or performance of the DIP Agreement and the Definitive Documents; and

(c)   the payments made by the Applicants pursuant to this Order or the DIP Agreement, and the granting of the Charges, do not and will not constitute preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law.

52.    **THIS COURT ORDERS** that any Charge created by this Order over leases of real property in Canada shall only be a Charge in the Applicants' interest in such real property leases.

**CHAPTER 15 PROCEEDINGS**

53.    **THIS COURT ORDERS** that ESAI is hereby authorized and empowered, but not required, to act as the foreign representative (the "Foreign Representative") in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside of Canada, including, if deemed advisable by the Applicants, to apply for recognition of these proceedings in the United States pursuant to chapter 15 of title 11 of the *United States Code*, 11 U.S.C. §§ 101- 1532.

**SERVICE AND NOTICE**

54.    **THIS COURT ORDERS** that the Monitor shall (a) without delay, publish in the national edition of *The Globe and Mail* and the *Sault Star*, a notice containing the information prescribed under the CCAA, (b) within five (5) days after the date of this Order, (i) make this Order publicly available in the manner prescribed under the CCAA, (ii) send, in the prescribed manner, a notice to every known creditor who has a claim against the Applicants of more than $1000 (excluding individual employees, former employees with pension and/or retirement savings plan entitlements, and retirees and other beneficiaries

9  November 15

**Tara Stead**
Register, Superior Court of Justice

who have entitlements under any pension or retirement savings plans), and (iii) prepare a list showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder, provided that the Monitor shall not make the claims, names and addresses of individuals who are creditors publicly available.

55.     **THIS COURT ORDERS** that the Monitor shall create, maintain and update as necessary a list of all Persons appearing in person or by counsel in this proceeding (the "**Service List**"). The Monitor shall post the Service List, as may be updated from time to time, on the Website as part of the public materials to be recorded thereon in relation to this proceeding. Notwithstanding the foregoing, the Monitor shall have no liability in respect of the accuracy of or the timeliness of making any changes to the Service List.

56.     **THIS COURT ORDERS** the E-Service Protocol of the Commercial List (the "**Protocol**") is approved and adopted by reference herein and, in this proceeding, the service of documents made in accordance with the Protocol (which can be found on the Commercial List website at http://www.ontariocourts.ca/scj/practice/practice-directions/toronto/e-serviceprotocol/) shall be valid and effective service. Subject to Rule 17.05 this Order shall constitute an order for substituted service pursuant to Rule 16.04 of the Rules of Civil Procedure. Subject to Rule 3.01(d) of the Rules of Civil Procedure and paragraph 21 of the Protocol, service of documents in accordance with the Protocol will be effective on transmission. This Court further orders that a Case Website shall be established in accordance with the Protocol with the following URL: www.ey.com/ca/essaralgoma (the "**Website**").

57.     **THIS COURT ORDERS** that if the service or distribution of documents in accordance with the Protocol is not practicable, the Applicant and the Monitor are at liberty to serve or distribute this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery or facsimile transmission to the Applicant's creditors or other interested parties at their respective addresses as last shown on the records of the

9    November    15

**Tara Stead**
Registrar, Superior Court of Justice

Applicant and that any such service or distribution by courier, personal delivery or facsimile transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

58.    THIS COURT ORDERS that the Applicants and the Monitor be at liberty to serve this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery or electronic transmission to the Applicants' creditors or other interested parties at their respective addresses as last shown on the records of the Applicants and that any such service or notice by courier, personal delivery or electronic transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

## COMEBACK MOTION

59.    THIS COURT ORDERS that the Applicants are otherwise authorized to serve their motion materials with respect to a motion at which the Applicants intend to seek, *inter alia*, priority of the Charges over all Encumbrances, an order permitting Algoma to suspend special payments required to be made to its defined benefit pension plans, an extension of the Stay Period and approval of a key employee retention plan (the "**Comeback Motion**") by forwarding a copy of this Order and any additional materials to be filed with respect to the Comeback Motion by electronic transmission, where available, or by courier to the parties likely to be affected by the relief to be sought at such parties' respective addresses as last shown on the records of the Applicants as soon as practicable.

60.    THIS COURT ORDERS that the Comeback Motion shall be heard on November 16, 2015.



Tara Stead
Registrar, Superior Court of Justice

6473413 v17

SEALING

61.    **THIS COURT ORDERS** that Confidential Exhibits "H", "I", and "J" to the Marwah Affidavit are hereby sealed and shall not form part of the public record until further order of the Court.

GENERAL

62.    **THIS COURT ORDERS** that the Applicants and the Monitor may from time to time apply to this Court for advice and directions in the discharge of its powers and duties hereunder.

63.    **THIS COURT ORDERS** that nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Applicants, the Business or the Property.

64.    **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order.   All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

65.    **THIS COURT ORDERS** that each of the Applicants and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

66.    **THIS COURT ORDERS** that any interested party (including the Applicants and the Monitor) may apply to this Court to vary or amend this Order on not less than seven (7) days' notice to any other party or parties likely to be affected by the order sought or upon such other notice, if any, as this Court may order.

6473413 v17

9   November   15

Tara Stead
Registrar, Superior Court of Justice

67.    **THIS COURT ORDERS** that this Order and all of its provisions are effective as of 12:01 a.m. Eastern Time on the date of this Order.

ENTERED AT / INSCRIT A TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

**NOV 0 9 2015**

**Tara Stead**
Registrar, Superior Court of Justice

## SCHEDULE "A"

Osler, Hoskin & Harcourt LLP, counsel to Deutsche Bank AG (Canada Branch)

White & Case LLP, counsel to Deutsche Bank AG (New York Branch)

Davis Polk Wardwell LLP, counsel for a Term Lender Group

Goodmans LLP, counsel to an Ad Hoc Group of Senior Noteholders

Cassels Brock & Blackwell LLP, counsel to an Ad Hoc Group of Junior Noteholders

Wilmington Trust, National Association

Essar Power Canada Ltd.

ICICI Bank Canada

BNY Trust Company of Canada

Port of Algoma Inc.

GIP Primus LP

Torys LLP, counsel to Essar Capital Americas Limited and Essar Capital Mauritius Limited

Ministry of Finance (Ontario)

Ministry of the Environment and Climate Change (Ontario)

Independent Electricity System Operator

Department of Justice

Financial Services Commission of Ontario

Paliare Roland Rosenberg Rothstein LLP, counsel to The United Steel Workers, National

USW District 6

USW Local 2251

USW Local 2724

SOAR Chapter 17

SOAR Chapter 7

Group 1009

9 November 15

**Tara Stead**
Registrar, Superior Court of Justice

## SCHEDULE "B"

| CRITICAL SUPPLIER | SUPPLY TERMS |
|---|---|
| Shell Energy North America (Canada) Inc. | In accordance with the master natural gas purchase and/or sale contract dated June 1, 2011 between Essar Steel Algoma Inc. and Shell Energy North America (Canada) Inc. (as amended) and the transaction confirmations issued thereunder dated March 16, 2015, June 24, 2015 and August 18, 2015 |
| Noble Americas Gas & Power Corp. | In accordance with the master agreement dated December 3, 2010 between Noble Americas Gas & Power Corp. and Essar Steel Algoma and the physical deal confirmations issued thereunder dated March 3, 2015, April 14, 2015 and August 24, 2015 |
| Praxair, Inc. | In accordance with the agreement dated March 1, 1996 (as amended and extended by an amending agreement dated October 28, 2009) and the agreement March 3, 1999, all among Praxair, Inc. and Essar Steel Algoma Inc. |
| Southern Coal Sales Corporation | In accordance with the coal supply agreement dated November 1, 2015 between Southern Coal Sales Corporation and Essar Steel Algoma Inc. |
| Canadian National Railway Company | In accordance with terms and conditions that are consistent with the supply relationship between Canadian National Railway Company and Essar Steel Algoma Inc. |

9 _____ day of November _____ 20 15

**Tara Stead**
**Registrar, Superior Court of Justice**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
ESSAR STEEL ALGOMA INC., ESSAR TECH ALGOMA INC., ESSAR STEEL ALGOMA
(ALBERTA) ULC, CANNELTON IRON ORE COMPANY AND ESSAR STEEL ALGOMA INC.
USA

Court File No: CV-15-00001169

| | |
|---|---|
| | *ONTARIO*<br>SUPERIOR COURT OF JUSTICE<br><br>Proceeding commenced at Toronto |
| | INITIAL ORDER |
| | STIKEMAN ELLIOTT LLP<br>Barristers & Solicitors<br>5300 Commerce Court West<br>199 Bay Street<br>Toronto, Canada  M5L 1B9<br><br>**Ashley John Taylor** LSUC#: 39932E<br>Tel: (416) 869-5236<br>E-mail: ataylor@stikeman.com<br><br>**Yannick Katirai** LSUC#: 62234K<br>Tel:  (416) 869-5556<br>E-mail: ykatirai@stikeman.com<br><br>**Patrick J. Corney** LSUC#: 65462N<br>Tel: (416) 869-5668<br>E-mail: pcorney@stikeman.com<br>Fax: (416) 947-0866<br><br>Lawyers for the Applicants |

9 November 15

Tara Stead
Registrar, Superior Court of Justice

6473413 v17