IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- x

|  |  |  |
|---|---|---|
| *In re:* | : | **Chapter 15** |
|  | : |  |
| **ESSAR STEEL ALGOMA INC.,** *et al.,*[1] | : | **Case No. 15–_____ (    )** |
|  | : |  |
| **Debtors in a foreign proceeding.** | : | **(Joint Administration Requested)** |
|  | : |  |

-------------------------------------------------------- x

## MOTION OF FOREIGN REPRESENTATIVE FOR ENTRY OF PROVISIONAL AND FINAL ORDERS GRANTING RECOGNITION OF FOREIGN MAIN PROCEEDING AND CERTAIN RELATED RELIEF PURSUANT TO SECTIONS 362, 364(e), 365, 1517, 1519, 1520, 1521, AND 105(a) OF BANKRUPTCY CODE

Essar Steel Algoma Inc. ("**Algoma Canada**"),[2] in its capacity as the foreign

representative (the "**Foreign Representative**") of the above-captioned debtors (collectively,

"**Algoma**" or the "**Debtors**"), who have filed an application in a foreign proceeding (the "**CCAA**

**Proceeding**") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as

amended (the "**CCAA**") pending before the Ontario Superior Court of Justice (Commercial List)

(the "**Canadian Court**"), respectfully represents:

### Jurisdiction and Venue

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334 and the *Amended Standing Order of Reference from the United States District Court*

*for the District of Delaware*, dated as of February 29, 2012.  These cases have been properly

---

[1] The Debtors in the foreign proceeding and the last four digits of each Debtor's United States Tax Identification Number, Canadian Business Number, or Provincial Corporation Number, as applicable, are as follows: Essar Steel Algoma Inc. (0642), Essar Steel Algoma Inc. USA (8788), Essar Steel Algoma (Alberta) ULC (6883), Essar Tech Algoma Inc. (8811), and Cannelton Iron Ore Company (9965).  The Debtors' principal offices are located at 105 West Street, Sault Ste. Marie, Ontario P6A 7B4, Canada.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Memorandum of Law (defined below).

commenced pursuant to 11 U.S.C. § 1504 by the filing of petitions for recognition of the CCAA

Proceeding pursuant to 11 U.S.C. § 1515 of title 11 of the United States Code (the "**Bankruptcy**

**Code**").

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P), and pursuant to

Rule 9013-1(f) of the *Local Rules of Bankruptcy Practice and Procedure of the United States*

*Bankruptcy Court for the District* of *Delaware* (the "**Local Rules**"), Algoma consents to the

entry of a final order by the Court in connection with this Motion to the extent that it is later

determined that the Court, absent consent of the parties, cannot enter final orders or judgments

consistent with Article III of the United States Constitution.

3.      Venue is proper before this Court pursuant to 28 U.S.C. § 1410.

### Relief Requested

4.      Pursuant to sections 362, 364(e), 365, 1517, 1519, 1520, 1521, and 105(a) of the

Bankruptcy Code, the Foreign Representative seeks (a) entry of a provisional order (the

"**Provisional Order**") (i) recognizing and enforcing in the United States (the "**U.S.**"), on an

interim basis, the initial order issued on November 9, 2015 (the "**CCAA Initial Order**"),[3] by the

Canadian Court, including, without limitation, the Canadian Court's authorization of the DIP

Facility (as defined below) and granting of a charge and certain other protections (as defined in

more detail below), (ii) applying sections 362 and 365(e) of the Bankruptcy Code in these

chapter 15 cases on an interim basis pursuant to sections 1519(a)(3), 1521(a)(7), and 105(a) of

the Bankruptcy Code, (iii) granting the DIP Lenders (as defined below) certain protections

afforded by section 364(e) of the Bankruptcy Code, and (iv) granting such other and further

relief as the Court deems just and proper; and (b) a final order (the "**Final Order**"), after notice

---

[3] A copy of the CCAA Initial Order is attached to the Sandoval Declaration (defined below) as **Exhibit A**.

and a hearing (i) granting the petitions in these cases and recognizing the CCAA Proceeding as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code, (ii) giving full force and effect in the U.S. to the CCAA Initial Order, including any and all extensions or amendments thereof authorized by the Canadian Court and extending the protections of the Provisional Order to Algoma on a final basis, (iii) applying section 365 of the Bankruptcy Code in these chapter 15 cases on a final basis pursuant to section 1521 of the Bankruptcy Code, (iv) granting the DIP Lenders certain protections afforded by section 364(e) of the Bankruptcy Code, and (v) granting such other and further relief as the Court deems just and proper.

5.      A proposed form of order approving the relief requested herein on an interim basis is annexed hereto as **Exhibit A** (the Provisional Order) and, pending a final hearing on the Motion, on a final basis as **Exhibit B** (the Final Order).

6.      In support of this Motion, the Foreign Representative refers the Court to the statements and arguments contained in the (a) *Declaration of J. Robert Sandoval in Support of (I) Verified Chapter 15 Petitions; (II) Foreign Representative's Motion for Orders Granting Provisional and Final Relief in Aid of Foreign Main Proceeding; and (III) Certain Related Relief* (the "**Sandoval Declaration**"), (b) *Declaration of John Ciardullo in Support of Verified Chapter 15 Petitions and Motion of Foreign Representative for Entry of Provisional and Final Orders Granting Recognition of Foreign Main Proceeding* (the "**Ciardullo Declaration**"), and (c) *Memorandum of Law of Foreign Representative in Support of (I) Verified Chapter 15 Petitions and (II) Motion of Foreign Representative for Orders Granting Provisional and Final Relief in Aid of Foreign Main Proceeding* (the "**Memorandum of Law**"), which were filed contemporaneously herewith and are incorporated herein by reference.

**Background**

7.      On November 9, 2015, Algoma commenced the CCAA Proceeding in the

Canadian Court and the Canadian Court issued the CCAA Initial Order that same day granting

certain provisional relief in connection with the CCAA Proceeding.

8.      Subsequently, on the date hereof (the "**Commencement Date**"), the Foreign

Representative commenced these chapter 15 cases by filing, among other things, verified chapter

15 petitions seeking recognition by the Court of the CCAA Proceeding as a foreign main

proceeding under chapter 15 of the Bankruptcy Code.

9.      Contemporaneously herewith, the Foreign Representative filed a motion seeking

joint administration of the Debtors' chapter 15 cases pursuant to Rule 1015(b) of the Federal

Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**") and Local Rule 1015-1.

**Algoma's Business**

10.      Algoma operates one of the largest integrated steel manufacturing facilities in

Canada, producing high-quality steel and steel products for customers throughout North

America.  Algoma primarily manufactures two types of products, sheet and strip steel and plate

steel, which it markets and sells directly to its customers or to steel service centers who distribute

them to buyers in the automotive, construction, and heavy equipment markets.  In 2015,

approximately 50% of Algoma's steel products were sold to customers located in Canada, and

the other 50% to customers located in the U.S.

11.      Algoma's steelworks requires large quantities of several different raw materials

for operation including, among others, iron ore pellets, coal, coke, limestone, alloys, and scrap.

Approximately 60-70% of the Company's raw material suppliers are located in the U.S.  The

largest and most important input in the steel making process is iron ore.  From January 2002 until

mid-October 2015, all of the Company's iron ore supply was purchased under a 23-year contract

(the "**Cliffs Iron Ore Contract**") with The Cleveland-Cliffs Iron Company, Cliffs Mining

Company, and Northshore Mining Company (collectively, "**Cliffs**").

12.     Algoma's steelworks operations and head office are located at its 2,000-acre site

located in the hub of the Great Lakes region in Sault Ste. Marie, Ontario, Canada.  It has sales

offices in Burlington, Ontario and Calgary, Alberta in Canada, and a sales team in the U.S.

Algoma employs approximately 3,000 employees, including six in the U.S., and approximately

90% of its Canadian employees are represented by the United Steelworkers.

13.     Algoma is managed on a consolidated basis out of its corporate headquarters in

Sault Ste. Marie, Ontario, Canada.  All corporate-level decision-making and corporate

administrative functions affecting Algoma, including decisions on capital expenditures and

business development initiatives, are centralized in the Sault Ste. Marie office; indeed, the entire

Algoma management team is based there.  Additionally, all active business operations of

Algoma are undertaken, and all producing assets of Algoma are located in, Canada.

14.     While Algoma's principal place of business and principal assets are located in

Canada, certain of the Debtors are incorporated or otherwise organized under the laws of the

U.S. and have assets and creditors located in the U.S.  Many of Algoma's suppliers and

customers are U.S. entities, some of whom are party to contracts governed by U.S. law.

Furthermore, each of the Debtors' prepetition credit facilities is governed by U.S. law and many

of the lenders and noteholders thereto are located in the U.S.  In addition, Essar Steel Algoma

Inc. USA ("**Algoma USA**") holds two separate bank accounts at Bank of America in the U.S.

**Algoma's Significant Liabilities**

15.     On November 14, 2014, Algoma Canada, as borrower, and the other Debtors, as

guarantors, entered into that certain revolving credit agreement maturing May 17, 2019 (the

"**Prepetition Revolving ABL Facility**") with Deutsche Bank AG (acting through its Canada

branch), as administrative agent and collateral agent (the "**ABL Agent**"), providing the Debtors with a $50 million (USD) asset-based revolving credit facility, with sub-facilities for swingline loans of up to $5 million (USD) and letters of credit of up to $40 million (USD).  As of the Commencement Date, the principal amount outstanding under the Prepetition Revolving ABL Facility was approximately $42 million (USD).  All obligations under the Prepetition Revolving ABL facility are secured by (i) a first-priority lien on substantially all accounts, cash, and inventory owned by the Debtors, subject to certain exclusions (collectively, the "**ABL Priority Collateral**"), and (ii) a second-priority lien on substantially all the stock, equipment, fixtures, intellectual property, real estate, and other assets not constituting the ABL Priority Collateral owned by the Debtors, subject to certain exclusions (the "**Term Loan Priority Collateral**").

16.     On November 14, 2014, Algoma Canada, as borrower, and the other Debtors, as guarantors, entered into that certain term loan credit agreement (the "**Prepetition Term Loan Agreement**") with Deutsche Bank AG New York Branch ("**Deutsche Bank**"), as administrative and collateral agent (the "**Term Loan Agent**"), which provided for a $375 million (USD) senior secured term loan facility maturing on August 16, 2019.  As of the Commencement Date, there was approximately $372 million (USD) in principal outstanding under the Prepetition Term Loan Agreement, plus accrued interest.  Obligations under the Prepetition Term Loan Agreement are secured by (i) a first-priority lien on the Term Loan Priority Collateral (*pari passu* with the 9.5% Senior Secured Notes, as defined below) and (ii) a second-priority lien on the ABL Priority Collateral.

17.     As of the Commencement Date, there was approximately $375 million (USD) in principal outstanding under the 9.5% senior secured notes due November 15, 2019 (the "**9.5% Senior Secured Notes**") issued pursuant to that certain indenture (the "**9.5% Senior Secured**

**Notes Indenture**"), dated as of November 14, 2014, among Algoma Canada, as issuer, the other

Debtors, as guarantors, and Wilmington Trust,  National Association, as trustee and collateral

agent (the "**Senior Notes Trustee**").  Obligations under the 9.5% Senior Secured Notes are

secured by (i) a first-priority lien on the Term Loan Priority Collateral (*pari passu* with the

Prepetition Term Loan Agreement), and (ii) a third-party lien on the ABL Priority Collateral.

18.     As of the Commencement Date, there was approximately $280 million (USD) in

principal outstanding under the 14% junior secured notes due February 13, 2020 (the "**14%**

**Junior Secured PIK Notes**") issued pursuant to that certain indenture (the "**14% Junior**

**Secured PIK Notes Indenture**"), dated as of November 14, 2014, among Algoma Alberta, as

issuer, the other Debtors as guarantors, and Wilmington Trust, National Association, as trustee

and collateral agent (the "**Junior Notes Trustee**").  Obligations under the 14% Junior Secured

PIK Notes are secured by (i) a third-priority lien on the Term Loan Priority Collateral, and (ii) a

fourth-priority lien on the ABL Priority Collateral.

19.     Each of the Prepetition Revolving ABL Facility, the Prepetition Term Loan

Agreement, the 9.5% Senior Secured Notes Indenture, and the 14% Junior Secured PIK Notes

Indenture are governed by New York Law.

### Events Leading to CCAA Proceeding and Chapter 15 Cases

20.     As described in more detail in the Sandoval Declaration, a little over a year ago,

Algoma underwent a targeted debt restructuring (the "**2014 Restructuring**") and effectuated a

plan of arrangement implemented in a proceeding under section 192 of the *Canada Business*

*Corporations Act*, R.S.C. 1985, c. C-44, as amended, before the Canadian Court (the "**CBCA**

**Proceeding**"), and ancillary cases under chapter 15 of the Bankruptcy Code before this Court.

Prior to the 2014 Restructuring, Algoma was plagued by multi-year losses resulting from the

economic downturn in 2008, which had caused decreased steel demand and pricing; severe

weather disruptions that resulted in shipment delays and reduced production; unfavorable raw material pricing; and increased near-term costs of pension liabilities.  Pursuant to the 2014 Restructuring, Algoma refinanced its secured credit facilities and secured and unsecured notes, and received a substantial equity infusion from its ultimate parent entity.  Algoma emerged from those proceedings with a significantly deleveraged balance sheet, additional equity, and the expectation that, with reduced debt service obligations and better economic and market conditions, its financial performance would substantially improve.

21.     Unfortunately, since the 2014 Restructuring went effective, the price of steel has continued to drop as a result of oversupply in the market, causing a corresponding decline in Algoma's earnings.  Notwithstanding Algoma's efforts to reduce costs, this environment has placed significant pressure on Algoma's ability to service debt and other expenses, and placed Algoma out of compliance with a financial covenant in its Prepetition Term Loan Agreement.

22.     At the same time, since early 2015, Algoma has been engaged in litigation with Cliffs, its longstanding supplier of iron ore pellets—an essential raw material input in the steel making process.  Notwithstanding the pendency of this litigation, the parties continued doing business with one another, as they had for over ten years, with Cliffs providing Algoma with its sole and essential supply of iron ore pellets.  Then, in early October 2015, without any basis in the law or contract, and with no notice to Algoma, Cliffs purported to terminate its exclusive supply agreement and immediately ceased providing Algoma with this essential raw material. Cliff's actions forced Algoma to scramble to seek an emergency, near-term pellet supply from alternate sources at a significantly increased price compared to the Cliffs Iron Ore Contract.  This placed Algoma in an untenable financial and operational situation, particularly in light of the upcoming winter months, which place significant strain on Algoma's ability to receive the iron

8

ore supply necessary to maintain production capacity at the level required to avoid equipment failure and ultimately, permanent shutdown.

23.     In light of the foregoing, Algoma once again engaged restructuring advisors to assess Algoma's options for implementing immediate measures to protect the value of the company and its assets, obtaining access to necessary liquidity, and securing a stable and affordable ongoing supply of iron ore pellets, while giving Algoma "breathing room" to explore alternatives for a comprehensive restructuring.  Following an analysis of Algoma's finances and operations, Algoma and its restructuring advisors determined that, given the exigent circumstances, Algoma needed to seek protection in Canada and the U.S. from actions by creditors to preserve and maximize the value of its assets for the benefit of all stakeholders.

## CCAA Proceeding

24.     On November 9, 2015, Algoma commenced the CCAA Proceeding in the Canadian Court, and the Canadian Court entered the CCAA Initial Order, granting certain relief in connection with the CCAA Proceeding.  Subsequently, on the date hereof, the Foreign Representative commenced these chapter 15 cases by filing, among other things, verified chapter 15 petitions seeking recognition by the Court of the CCAA Proceeding as the foreign main proceeding under chapter 15 of the Bankruptcy Code in respect of each of the Debtors.

25.     Additional information about the CCAA Proceeding and the relief set forth in the CCAA Initial Order can be found in the Ciardullo Declaration and the Memorandum of Law.

## Relief Requested Should be Granted

26.     As discussed in the Ciardullo Declaration, and similar to the protection provided to a debtor under U.S. bankruptcy law, upon commencement of the CCAA Proceeding, all of Algoma's creditors were stayed from taking any enforcement actions against Algoma and its assets, wherever located.  Notwithstanding the worldwide application of the stay imposed by the

9

CCAA Proceeding, there is a risk that Algoma's creditors may attempt to take enforcement actions in the U.S.  To protect against this risk, the Foreign Representative commenced these chapter 15 cases and, by this Motion, is seeking a final order (i) granting recognition of the CCAA Proceeding, (ii) giving full force and effect in the U.S. to the CCAA Initial Order, (iii) applying section 365 of the Bankruptcy Code to these chapter 15 cases; and (iv) granting certain protections to the DIP Lenders (as defined below) afforded by section 364(e) of the Bankruptcy Code.  The entry of a final order granting such relief would, among other things, extend the protections of the stay to Algoma's assets located in the U.S, prevent contract counterparties from modifying or terminating U.S.-based contracts, and permit the enforcement in the U.S. of claims and liens granted to the lenders providing Algoma with postpetition financing.

27.     Because such relief is not available until this Court grants a final order (after notice and a hearing) recognizing the CCAA Proceeding, in the interim, there is no automatic stay or other protections in the U.S.  Additionally, absent access to the additional liquidity provided by the DIP Facility (as defined herein), it is likely that Algoma will be unable to meet its postpetition obligations as they become due, maintain the operation of its business as a going concern, or pursue restructuring efforts.  Therefore, in addition to the final order, Algoma is seeking, on an interim basis, an order (i) recognizing the CCAA Proceeding, (ii) applying sections 362 and 365(e) to ensure that creditors do not attempt to bring any enforcement action against Algoma or attempt to terminate or modify their contracts as a result of the commencement of the CCAA Proceeding or these chapter 15 cases, and (iii) granting the DIP Lenders (as defined below) certain protections required by them to make financing available to Algoma.

**I.      CCAA Proceeding Is Entitled to Recognition as a Foreign Main Proceeding**

28.      Pursuant to this Motion, the Foreign Representative seeks, pursuant to sections 1517 and 1520 of the Bankruptcy Code, recognition and enforcement of the CCAA Initial Order. Section 1517(a) of the Bankruptcy Code authorizes the Court to enter a final order, after notice and a hearing, recognizing a foreign proceeding if (i) such proceeding is a foreign main proceeding or a foreign nonmain proceeding, (ii) the foreign representative applying for recognition is a person or body, and (iii) the application for recognition was properly filed in accordance with section 1515 of the Bankruptcy Code.  Section 1517(b) of the Bankruptcy Code further provides that such a proceeding shall be recognized as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests.

29.      As more fully set forth in the Memorandum of Law and the Sandoval Declaration, the Foreign Representative respectfully submits that (i) the CCAA Proceeding is a foreign main proceeding within the meanings of sections 101(23) and 1502(4) of the Bankruptcy Code, (ii) Algoma Canada is an authorized foreign representative within the meaning of section 101(24) of the Bankruptcy Code, and (iii) the verified chapter 15 petitions were properly filed in accordance with section 1515 of the Bankruptcy Code and are consistent with the purpose of chapter 15.

30.      The CCAA Proceeding should be recognized as a foreign main proceeding because it is pending in Canada, the center of each of the Debtor's main interests.  Algoma's steel making facility is located in Sault Ste. Marie, Ontario.  Substantially all operations take place there.  Algoma is managed on a consolidated basis out of its corporate headquarters in Sault Ste. Marie, Ontario.  Further, in the chapter 15 cases filed in connection with the 2014 Restructuring, this Court recognized the CBCA Proceeding as "foreign main proceeding" on the basis that Canada is Algoma's center of main interests.  *In re Essar Steel Algoma Inc*., Case No.

14-11730 (BLS) (Bankr. D. Del. Aug. 30, 2014) [D.I. 96].  Moreover, recognizing the CCAA

Proceeding as a foreign main proceeding is consistent with the purpose of chapter 15 and U.S.

public policy.

## II.    Additional Relief Pursuant to Section 1521 of the Bankruptcy Code Is Warranted and Appropriate

31.    The Foreign Representative also seeks an order applying section 365 of the

Bankruptcy Code in these chapter 15 cases on a final basis pursuant to section 1521 of the

Bankruptcy Code to enable Algoma to maintain key contracts, prevent counterparties from

exercising insolvency-related termination provisions, and provide Algoma with the ability to

assume or reject a contract or compel a contract counterparty to perform under a contract.  This

relief is particularly important with respect to Cliffs, since it purported to terminate its iron ore

supply contract with Algoma with no basis for doing so, leaving Algoma with significant

uncertainty regarding its ongoing source of this essential raw material.

32.    Section 1521(a) of the Bankruptcy Code provides that, upon recognition of a

foreign proceeding, and "where necessary to effectuate the purpose of this chapter and to protect

the assets of the debtor or the interests of any creditors, the court may grant any appropriate relief

. . . ." 11 U.S.C. § 1521.  Such relief includes, among other things, "extending [provisional] relief

granted under section 1519(a)" and "granting any additional relief that may be available to a

trustee."  *Id.*  Section 365 of the Bankruptcy Code offers critical protection to key contracts,

including preventing the termination of contractual relationships based solely upon financial

condition, bankruptcy filings, or insolvency events, and providing Algoma with the tools to

assume a beneficial contract or compel a counterparty to perform.

33.    Application of section 365 is warranted and necessary in these chapter 15 cases.

More than half of Algoma's key suppliers are entities with a presence in the U.S., many of whom

are parties to contracts governed by U.S. law.  Approximately half of Algoma's customers are

located in the U.S., many of whom are parties to contracts governed by U.S. law.  Although

contract counterparties, including those whose contracts are exclusively governed by U.S. law,

are subject to the jurisdiction of the Canadian Court and bound by the CCAA Initial Order, out of

an abundance of caution and in order to fully protect its rights, Algoma seeks an order applying

section 365 of the Bankruptcy Code in these chapter 15 cases.  Algoma must have certainty that,

among other things, Cliffs and other contract counterparties will not terminate or exercise

remedies under their agreements, and will be subject to and bound by any decision by Algoma to

affirm or disclaim such agreements.[4]  Without the preservation of its contractual relationships,

Algoma could suffer significant value loss, litigation may ensue, and counterparties may obtain

unfair advantages over other creditors.  While section 365 does not apply as of right upon the

recognition of a proceeding as a foreign main proceeding, such relief is warranted in these

chapter 15 cases.

34.     Additionally, the Foreign Representative requests that the Court recognize the

liens and charges negotiated in the DIP Facility (as defined below) approved by the Canadian

Court and afford the DIP Lenders (as defined below) the protections available under section

364(e) of the Bankruptcy Code.

35.     Prior to commencing the CCAA Proceeding, Algoma engaged Evercore Group

LLC ("**Evercore**") to source debtor-in-possession financing ("**DIP Financing**") to (a) provide

Algoma with sufficient liquidity to maintain its operations, including the payment of employees

and vendors, and (b) fund an orderly CCAA Proceeding and chapter 15 cases.  Evercore included

---

[4] Algoma's contract with Cliffs is a valuable and important asset.  Accordingly, Algoma intends to file one or more
pleadings relating to Cliffs' performance under the Cliffs Iron Ore Contract.  In addition, in the CCAA Proceeding,
Algoma intends to seek "critical supplier relief" with respect to Cliffs, pursuant to which Cliffs would be compelled
to continue supplying Algoma on commercial terms.

in its process a wide variety of potential lenders, and Algoma ultimately received five term sheet proposals for the DIP Financing.  The DIP Financing selection process was extremely competitive by any comparison.  The DIP Financing proposals were analyzed in detail by Algoma and its advisors, and Algoma determined it was in its best interests to simultaneously pursue negotiations with (i) Deutsche Bank, acting on behalf of itself and a group of certain of the prepetition secured lenders, and (ii) one other group of potential lenders in order to maintain a competitive process and obtain the best available terms.  Over a period of almost three weeks, Algoma and its advisors engaged in arm's-length negotiations to obtain the best terms each was willing to offer.  Negotiations with the two potential groups of lenders continued all the way up to the night before the commencement of these chapter 15 cases, with the lenders agreeing to additional concessions to improve their proposals.  Based upon the proposals presented, Algoma, with the assistance of its advisors, concluded that the Deutsche Bank proposal offered the most favorable economic terms with flexible covenant and milestone provisions, and importantly, provided the most certainty of funding with a fully underwritten commitment.

36.     Accordingly, Algoma made a good-faith business decision, after extensive arm's-length negotiations, to enter into an agreement with Deutsche Bank (together with any other lenders under the DIP Facility from time to time, the "**DIP Lenders**") to provide a superpriority senior secured, priming, non-amortizing, debtor-in-possession term loan credit facility in an aggregate principal amount of $175.0 million (USD), and a superpriority senior secured, priming, non-amortizing, debtor-in-possession revolving credit facility in an aggregate principal amount of $25.0 million (USD) (collectively, the "**DIP Facility**"), to be evidenced by that certain Senior Secured, Priming, and Superpriority Debtor-In-Possession Revolving Credit Agreement with Deutsche Bank dated as of November 9, 2015 for an initial availability of

14

$25 million (USD)[5] under a revolving credit facility and a term sheet attached thereto, as may be amended and restated from time to time (the "**DIP Credit Agreement**").  The DIP Credit Agreement provides that Deutsche Bank is committed to provide the full amount of the DIP Facility and Algoma and Deutsche Bank are obligated to negotiate in good faith to amend and restate the DIP Credit Agreement to provide for the terms set forth in the term sheet attached to the DIP Credit Agreement.  The term sheet contemplates the full $200 million (USD) DIP Facility will be evidenced by that certain secured debtor-in-possession credit agreement to be entered into by and among Algoma Canada, as borrower, Algoma Holdings B.V., Essar Tech Algoma Inc., Algoma USA, Cannelton Iron Ore Company, and Essar Steel Algoma (Alberta) ULC as guarantors (the "**Guarantors**"), the DIP Lenders, and Deutsche Bank, or an affiliate, as administrative agent and collateral agent for the DIP Lenders (in such capacity and together with its successors, the "**DIP Agent**") (together with the Exhibits and Schedules annexed thereto, the "**DIP Loan Agreement**").[6]  Access to the DIP Facility has been conditioned upon, among other things, entry of a provisional order in these chapter 15 cases that is satisfactory to the DIP Lenders, and access to a portion of the DIP Facility has been conditioned upon the entry of a Final Order that is satisfactory to the DIP Lenders.

37.    As discussed in more detail in the Sandoval Declaration and Memorandum of Law, Algoma, in the exercise of its prudent business judgment and consistent with its fiduciary duties, has concluded that the DIP Facility is necessary and the terms and conditions of the DIP Facility are fair, reasonable, and the best available under the circumstances, and are supported by

---

[5] The DIP Credit Agreement currently reflects an initial $25 million (USD) revolving loan but the DIP Lenders agreed to provide a $50 million (USD) term loan and the DIP Credit Agreement will be amended to reflect this change.

[6] Additional information about the process to secure DIP Financing and about the terms of the DIP Facility can be found in the Sandoval Declaration.

reasonably equivalent value and consideration.  Without access to the additional liquidity provided by the DIP Facility, Algoma may be unable to secure goods, pay employees, maintain the operation of its business as a going concern, or pursue its restructuring efforts under the CCAA Proceeding and these chapter 15 cases, to the detriment of its creditors and all parties in interest.  Additionally, obtaining the DIP Facility from the DIP Lenders will assure Algoma the support of a significant portion of its prepetition secured lenders throughout this restructuring process.  That support is critical to preserving the business as a going-concern, and maximizing value for all creditors.  The DIP Facility was negotiated in good faith and at arm's-length by all parties involved and, accordingly, any credit extended and loans made to Algoma under the DIP Facility should be deemed to have been extended in good faith, within the meaning of section 364(e) of the Bankruptcy Code.  Furthermore, the proceeds to be provided under the DIP Facility will be extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Lenders should be entitled to the protection and benefits of section 364(e) of the Bankruptcy Code in these chapter 15 cases.[7]

38.     As described in the Memorandum of Law and the Sandoval Declaration, recognizing the CCAA Proceeding as a foreign main proceeding and applying section 365, other relief requested herein, and the relief automatically granted upon recognition pursuant to section 1520 of the Bankruptcy Code is consistent with the purposes of chapter 15 of the Bankruptcy Code and public policy of the U.S.  Therefore, the Foreign Representative respectfully requests that, upon notice and a hearing, the Court grant the Final Order and such other and further relief as the Court may deem just and proper.

---

[7] Additional evidence in support of this relief will be made available to the extent necessary and appropriate.

**III.    Provisional Relief Within the Scope of Section 1519 of the Bankruptcy Code Is Necessary and Appropriate Under the Circumstances**

39.     By this Motion, the Foreign Representative seeks interim recognition of the CCAA Initial Order, a stay of execution against Algoma's assets and entrustment of administration in the Foreign Representative, and application of sections 362 and 365(e) of the Bankruptcy Code.  Section 1519 of the Bankruptcy Code authorizes the Court to grant the Foreign Representative certain enumerated relief pending the Court's entry of the Final Order:

> (a) From the time of filing a petition for recognition until the court rules on the petition, the court may, at the request of the foreign representative, where relief is urgently needed to protect the assets of the debtor or the interests of the creditors, grant relief of a provisional nature, including —
>
> . . . (3) any relief referred to in paragraph (3), (4), or (7) of section 1521(a).

11 U.S.C. § 1519(a).

40.     Section 1521(a)(7) provides that the Court may grant "any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a)."  11 U S.C. § 1521(a)(7).  The relief Algoma seeks on an interim basis herein, including the relief authorized by the CCAA Initial Order, is "relief that may be available to a trustee."  Thus, pursuant to section 1521(a)(7), the Court should grant interim recognition of the CCAA Initial Order and apply sections 362 and 365(e) of the Bankruptcy Code, which are urgently needed to protect Algoma prior to entry of the Final Order in these chapter 15 cases.

41.     As described above, although the CCAA Initial Order implements a stay preventing parties from taking actions against Algoma and its assets, Algoma has assets in the U.S. that may be subject to enforcement actions by certain creditors that may not believe they are bound by the CCAA Initial Order.[8]  Until this Court recognizes the CCAA Proceeding on a final

---

[8] Algoma reserves all rights with respect to whether any party is subject to jurisdiction of the Canadian Court and bound by the CCAA Initial Order.

basis as a foreign main proceeding, Algoma and its assets may be at risk in the U.S.  The

commencement of the CCAA Proceeding and these chapter 15 cases may trigger certain events,

which could cause harm to Algoma and its assets.  Most significantly, certain holders of

Algoma's prepetition debt may assert that the commencement of either or both of these

proceedings is an event of default under the applicable prepetition debt agreements, entitling

them to begin exercising their remedies thereunder.  In addition, counterparties to various

contracts with Algoma may take the position that the commencement of the CCAA Proceeding

and/or these chapter 15 cases is an event of default giving rise to a right to terminate of modify

such contracts.  Without the protections afforded by sections 362 and 365(e) of the Bankruptcy

Code, creditors may start taking actions against Algoma's assets in the U.S. and Algoma may

lose valuable rights and benefits under terminated contracts.  Algoma cannot afford to incur

these risks and losses, especially with respect to a key agreement such as the Cliffs supply

contract.  Accordingly, certain interim protections are necessary.

42.      Moreover, as more fully discussed above and in the Memorandum of Law, access

to Algoma's DIP Facility has been conditioned upon, among other things, entry of a provisional

order and final order of the Court satisfactory to the DIP Lenders, which includes section 364(e)

of the Bankruptcy Code.  Without immediate access to the additional liquidity provided by the

DIP Facility, Algoma may have insufficient funds to maintain its business operations or to

pursue its restructuring efforts.

43.      The provisional relief requested herein is necessary on an immediate basis to

protect against potential destruction of asset value, disruption to business operations, and

interference with reorganization efforts that would result from Algoma's liquidity constraints and

the exercise of remedies by lenders, contract counterparties, and others pending entry of the Final

Order.  Absent this relief, Algoma and its creditors may suffer irreparable harm.

44.     Provisional relief pursuant to section 1519 requires satisfaction of the standard for

injunctive relief. 11 U.S.C. § 1519(e); *In re Innua Can. Ltd.*, No. 09–16362 (DHS), 2009 WL

1025088, at *3 (Bankr. D.N.J. Mar. 25, 2009).  In the Third Circuit, that standard requires a

movant to show that:  (i) it has a likelihood of success on the merits; (ii) it will suffer irreparable

harm if the requested injunction is denied; (iii) granting preliminary relief will not result in

greater harm to the nonmoving party; and (iv) the public interest favors such relief.  *U.S. v. Bell*,

414 F.3d 474, 478 n.4 (3d Cir. 2005) (citing *ACLU of N.J. v. Black Horse Pike Reg'l Bd. of

Educ.*, 84 F.3d 1471, 1477 n.2 (3d Cir. 1996)); *see also Rogers v. Corbett*, 468 F.3d 188, 192 (3d

Cir. 2006) (citations omitted); *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)

(citations omitted).  The Foreign Representative submits that the standard is satisfied in these

cases with respect to the requested provisional relief and, therefore, the relief is justified.

### A.     There Is a Substantial Likelihood of Recognition of the CCAA Proceeding as a Foreign Main Proceeding and Application of Requested Additional Bankruptcy Code Provisions

45.     As set forth above and in the Memorandum of Law, there is a compelling case for

recognition of the CCAA Proceeding as a foreign main proceeding.  It is clear that the CCAA

Proceeding is a "foreign main proceeding" and Algoma Canada is a "foreign representative" as

those terms are defined in the Bankruptcy Code.  In addition, these chapter 15 cases were duly

and properly commenced by filing the verified chapter 15 petitions accompanied by all fees,

documents, and information required by the Bankruptcy Code and the Bankruptcy Rules.  Upon

recognition of the CCAA Proceeding as a foreign main proceeding, section 362 of the

Bankruptcy Code will automatically apply in these chapter 15 cases pursuant to section

1520(a)(1) of the Bankruptcy Code.  11 U.S.C. § 1520(a)(1).  Moreover, the application of

section 365(e) on an interim basis, preventing contract counterparties from terminating their prepetition contracts with Algoma, is entirely consistent with the injunctive relief afforded by the automatic stay under section 362.  Additionally, granting the DIP Lenders (as defined below) certain protections afforded by section 364(e) of the Bankruptcy Code interim basis will provide Algoma with the necessary liquidity to pursue its restructuring efforts in the CCAA proceeding and these chapter 15 cases, thus promoting the fair and efficient administration of a cross-border reorganization procedure that protects the interests of all stakeholders.  Furthermore, as addressed in the Memorandum of Law, similar relief has been granted in other chapter 15 cases. Accordingly, it is likely that Algoma will receive final approval of all of the relief requested on an interim basis.

### B.  Algoma Will Suffer Irreparable Harm Absent Provisional Relief

46.   Application of provisional relief pursuant to sections 362 and 365(e) of the Bankruptcy Code in these cases is critical to the prevention of irreparable damage to Algoma's reorganization proceeding in Canada.  These chapter 15 cases were commenced for the purpose of obtaining the assistance of this Court in respect of the CCAA Proceeding, to give effect in the U.S. to the CCAA Initial Order of the Canadian Court.  As noted above, in the Sandoval Declaration, and in the Memorandum of Law, Algoma has assets in the U.S., including valuable customer and supplier contracts governed by U.S. law.  In addition, each of the Debtors is either a primary obligor under or guarantor of Algoma's prepetition debt obligations, which are governed by U.S. law.  Unless the Provisional Order is granted and all creditors are enjoined, Algoma faces the risk that creditors may take enforcement actions under Algoma's prepetition debt instruments to recover against its U.S. assets, as well as the risk that contract counterparties, such as Cliffs, may attempt to terminate prepetition contracts.  If creditors unilaterally pursue collection or enforcement efforts such actions could diminish the value of Algoma's assets and

cause significant delay and disruption to Algoma's restructuring process.  Indeed, any such action by Cliffs, for example, could be crippling.  The relief requested herein is necessary to protect against these risks.  The purpose of chapter 15 is to provide such protection by, among other things, ensuring that all of a debtor's creditors are enjoined from taking action against the debtor's assets, thereby preventing some creditors from getting an unfair advantage over others. *See* 11 U.S.C. § 1501.

47.    A number of courts have recognized the need to provide provisional relief in order to ensure the orderly distribution of a debtor's assets in a single proceeding, and prevent piecemeal enforcement against a debtor's assets across multiple jurisdictions.  *See, e.g., Victrix S.S. Co., S.A. v. Salen Dry Cargo, A.B.*, 825 F.2d 709, 713-14 (2d Cir. 1987) (harm to an estate exists where orderly determination of claims and fair distribution of assets are disrupted); *In re Banco Nacional de Obras y Servicios Publicos, S.N.C.*, 91 B.R. 661, 664 (Bankr. S.D.N.Y. 1988) (stating that injunctive relief is necessary "to prevent individual American creditors from arrogating to themselves property belonging to the creditors as a group"); *In re Lines*, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988) (stating that "the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury").

48.    Indeed, in the chapter 15 cases filed in connection with the 2014 Restructuring, this Court entered an order recognizing and enforcing the preliminary order entered in the CBCA Proceeding and applying sections 362 and 365(e) of the Bankruptcy Code, each on an interim basis.  *In re Essar Steel Algoma Inc.*, Case No. 14-11730 (KJC) (Bankr. D. Del. Jul. 7, 2014) (D.I. 28).

49.    Algoma also will suffer immediate and irreparable harm unless it can access the DIP Facility approved by the Canadian Court.  Algoma currently is operating under significant

liquidity constraints and requires immediate access to the DIP Facility to fund working capital requirements, capital expenditures, general corporate expenses, and the costs of administering its bankruptcy cases.  If the interim requested relief is not granted, it is likely that Algoma will be unable to secure necessary goods, and it is possible that it will lose customers and become unable to pay employees, and may not be able to maintain the operation of its business as a going concern.

50.    In addition to providing Algoma with the liquidity necessary to operate during these cases, the DIP Facility will help to preserve Algoma's business by providing assurance to its suppliers and customers that Algoma will be able to maintain its business operations and satisfy its obligations pending the outcome of these cases and the CCAA Proceeding.

51.    For these reasons, the Foreign Representative requests that the Court, on an interim basis, recognize, give full force and effect to, and enforce the liens and charges negotiated in connection with the DIP Facility and approved by the Canadian Court and described herein, and afford the DIP Lenders the protections available pursuant to section 364(e) of the Bankruptcy Code. [9]  Relief that is the same or similar to the section 364 relief requested herein is often granted to debtors in domestic proceedings and, as it relates to the DIP Lenders, similar protections have been granted by this Court in other chapter 15 cases.  *See, e.g., In re Arctic Glacier Int'l Inc.*, Case No. 12-10605 (KG) (Bankr. D. Del. Feb. 23, 2012) [D.I. 28] (order granting provisional DIP relief); *In re Fraser Papers Inc*., Case No. 09-12123 (KJC) (Bankr. D. Del. June 19, 2009) [D.I. 61] (same); *In re W.C. Wood Corp., Ltd*., Case No. 09-11893 (KG) (Bankr. D. Del. June 1, 2009) [D.I. 26] (same); *In re Destinator Techs. Inc*., Case No. 08-11003 (CSS) (Bankr D. Del. May 20, 2008) [D.I. 35] (same).

---

[9] Additional evidence in support of this relief will be made available to the extent necessary and appropriate.

### C.  Provisional Relief Will Benefit Creditors

52.  In contrast to the hardships described above, preservation of the status quo by providing Algoma with necessary liquidity to continue its business operations and through imposition of the automatic stay and prevention of contract termination while the Foreign Representative and Algoma undertake the reorganization process in the CCAA Proceeding will not prejudice creditors.  Indeed, creditors as a whole will benefit from such relief.  The relief requested in this Motion is intended to be temporary, extending only through the disposition of the petitions for recognition.  Moreover, the Provisional Order specifically provides that any creditor that believes it has been harmed by the provisional relief granted therein may file a motion with the Court seeking relief therefrom.  Granting the request for provisional relief actually will benefit Algoma's creditors because it will ensure the value of Algoma's assets is preserved, protected, and maximized for the benefit of and fair distribution to all creditors.

### D.  Public Interest Favors Granting Provisional Relief

53.  As noted above, the requested interim relief is consistent with the policies underlying the Bankruptcy Code, including the provision of a breathing spell for a debtor and the equitable treatment of all creditors.  Additionally, granting the requested relief is in the public interest because it will facilitate Algoma's efforts to complete a court-supervised restructuring for the benefit of its creditors and other stakeholders (including those in the U.S.).  *See Rehabworks, Inc. v. Lee (In re Integrated Health Servs., Inc.)*, 281 B.R. 231, 239 (Bankr. D. Del. 2002) ("In the context of a bankruptcy case, promoting a successful reorganization is one of the most important public interests."); *Am. Film Techs, Inc. v. Taritero (In re Am. Film Techs., Inc.)*, 175 B.R. 847, 849 (Bankr. D. Del. 1994) ("It is 'one of the paramount interests' of this court to assist the Debtor in its reorganization efforts.") (*quoting Gathering Rest., Inc. v. First Nat'l Bank of Valparaiso (In re Gathering Rest., Inc.)*, 79 B.R. 992, 1001 (Bankr. N.D. Ind. 1986)).

Moreover, granting the provisional relief is in the public interest because it promotes cooperation between jurisdictions in cross-border insolvencies, which is an express purpose of chapter 15 of the Bankruptcy Code.  11 U.S.C. § 1501(a).

54.    For these reasons, this Court has frequently granted requests for similar provisional relief in chapter 15 cases.  *See*, *e.g., In re Lone Pine Resources Inc.*, Case No. 13-12487 (BLS) (Bankr. D. Del. Sept. 26, 2013) [D.I. 18] (order granting provisional relief, including recognition and enforcement of the initial order entered in the CCAA proceeding, and application of section 362); *In re Catalyst Paper Corp.*, Case No. 12-10221 (PJW) (Bankr. D. Del. Jan. 19, 2012) [D.I. 22] (order granting provisional relief, including application of sections 362 and 365(e)); *In re Arctic Glacier Int'l Inc.*, Case No. 12-10605 (KG) (Bankr. D. Del. Feb. 23, 2012) [D.I. 28] (order granting provisional relief, including recognition and enforcement of the initial order entered in the CCAA proceeding, and application of sections 362, 364(e) and 365(e)); *In re Elpida Memory, Inc.*, Case No. 12-10947 (CSS) (Bankr. D. Del. Mar. 21, 2012) [D.I. 25] (order granting provisional relief, including application of section 362); *In re Cinram International Inc.*, Case No. 12-11882 (KJC) (Bankr. D. Del. Jun. 26, 2012) [D.I. 30] (order granting provisional relief, including recognition and enforcement of the initial order entered in the CCAA, protections provided by sections 364(c), 364(d), and 364(e), and application of sections 362 and 365(e)); *In re Angiotech Pharm. Inc.*, Case No. 11-10269 (KG) (Bankr. D. Del. Jan. 31, 2011) [D.I. 26] (order granting provisional relief, including application of sections 362 and 365(e)); *In re MAAX Corp.*, Case No. 08-11443 (CSS) (Bankr. D. Del. July 14, 2008) [D.I. 22] (order granting provisional relief, including section 365(e)).

## Conclusion

55.    The Foreign Representative respectfully submits that the CCAA Proceeding should be recognized as a foreign main proceeding, it is appropriate to apply sections 365 in

these chapter 15 cases, it is appropriate to grant the DIP Lenders certain protections afforded by section 364(e) of the Bankruptcy Code, and the provisional relief requested herein is necessary to prevent harm to Algoma and its assets and, therefore, should be approved.

**Notice**

56.    The Foreign Representative shall provide notice of the Motion to the following parties, or their counsel, if known:  (a) all persons or bodies authorized to administer foreign proceedings of the Debtors; (b) principal parties that have appeared in the CCAA Proceeding as of the date of service of the relevant pleading; (c) the Office of the U.S. Trustee for the District of Delaware; (d) White & Case LLP, 1155 Avenue of the Americas, New York, NY 10036-2787 (Attn: Scott Greissman, Esq. and Andrew Ambruoso, Esq.), counsel to Deutsche Bank AG, New York Branch, in its capacity as Term Loan Agent and as DIP Agent, and to Deutsche Bank AG, Canadian Branch, in its capacity as ABL Agent; (e) Wilmington Trust, National Association, 246 Goose Lane, Suite 105, Guilford, CT 06437 (Attn:  Essar Steel Algoma Senior Notes Administrator), as Senior Notes Trustee; (f) Wilmington Trust, National Association, 246 Goose Lane, Suite 105, Guilford, CT 06437 (Attn:  Essar Steel Algoma Junior Notes Administrator), as Junior Notes Trustee; (g) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Alan W. Kornberg, Esq., Brian Hermann, Esq. and Catherine Goodall, Esq.) and Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801 (Attn: Pauline K. Morgan, Esq. and Maris J. Kandestin, Esq.), counsel to the ad hoc group of noteholders of the 9.5% Senior Secured Notes; (h) Cassels Brock & Blackwell LLP, 2100 Scotia Plaza, 40 King Street West, Toronto, Ontario, M5H 3C2 (Attn:  Ryan C. Jacobs), counsel to the ad hoc group of noteholders of the 14% Junior Secured PIK Notes; (i) Davis Polk & Wardwell, LLP, 450 Lexington Avenue, New York, New York, 10017 (Attn: Damian Schaible, Esq.), counsel to certain Prepetition Term Loan Lenders;

25

(j) Milbank, Tweed, Hadley & McCloy LLP, 28 Liberty Street, New York, NY 10005

(Attn: Gerard Uzzi, Esq.), counsel to Essar Global Fund Limited; (k) Ernst & Young Inc., 222

Bay Street, Toronto, Ontario M5K 1J7 (Attn: Brian M. Denega and Alex F. Morrison), the

proposed Monitor in the CCAA Proceeding; (l) the Office of the Delaware Secretary of State;

(m) the Internal Revenue Service; (n) the Securities and Exchange Commission; and (o) any

party that has requested notice pursuant to Bankruptcy Rule 2002.  The Foreign Representative

proposes to further notify all creditors and parties in interest of the filing of the chapter 15

petitions and the Foreign Representative's request for entry of the Final Order in the form and

manner set forth in the *Motion of Foreign Representative for Entry of Order Scheduling Hearing

and Specifying Form and Manner of Service of Notice Pursuant to Sections 1515 and 105(a) of

Bankruptcy Code and Bankruptcy Rules 2002 and 9007*, which was filed concurrently herewith.

In light of the nature of the relief requested, the Foreign Representative submits that no further

notice is required.

### No Prior Request

57.    No previous request for the relief sought herein has been made to this or any other

court.  As noted above, Algoma previously filed a chapter 15 case seeking recognition of the

CBCA Proceeding.  As part of that proceeding, Algoma sought and was granted provisional

relief similar to the relief requested herein.

WHEREFORE, the Foreign Representative respectfully requests that the Court:  (a) enter

the Provisional Order, substantially in the form attached hereto as **Exhibit A**; (b) enter the Final

Order, upon notice and a hearing, substantially in the form attached hereto as **Exhibit B**; and

(c) grant such other and further relief as it deems just and proper.

Dated: November 9, 2015

      Wilmington, Delaware

                        */s/ Mark D. Collins*
                        RICHARDS, LAYTON & FINGER, P.A.

                        Mark D. Collins (No. 2981)
                        Daniel J. DeFranceschi (No. 2732)
                        Amanda R. Steele (No. 5530)
                        One Rodney Square
                        920 North King Street
                        Wilmington, Delaware  19801
                        Telephone:     (302) 651-7700
                        Facsimile:     (302) 651-7701
                        Email:         collins@rlf.com
                        Email:         defranceschi@rlf.com
                        Email:         steele@rlf.com

                        -and-

                        WEIL, GOTSHAL & MANGES LLP

                        Ray C. Schrock, P.C. (*pro hac vice* pending)
                        Matthew S. Barr (*pro hac vice* pending)
                        767 Fifth Avenue
                        New York, New York  10153
                        Telephone:     (212) 310-8000
                        Facsimile:     (212) 310-8007
                        Email:         ray.schrock@weil.com
                        Email:         matt.barr@weil.com

                        *Attorneys for the Foreign Representative*

## EXHIBIT A

**Provisional Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

----------------------------------------------------------- x
               :

*In re:*                         :       **Chapter 15**
               :

**ESSAR STEEL ALGOMA INC.,** *et al.,*[1]  :      **Case No. 15– _____ (     )**
               :

               :

**Debtors in a foreign proceeding.**   :      **(Joint Administration Requested)**
               :

----------------------------------------------------------- x

**PROVISIONAL ORDER GRANTING**
**RECOGNITION OF FOREIGN MAIN PROCEEDING**
**AND CERTAIN RELATED RELIEF PURSUANT TO SECTIONS**
**362, 364(e), 365, 1517, 1519, 1520, 1521, AND 105(a) OF BANKRUPTCY CODE**

Upon the motion (the "**Motion**")[2] of Essar Steel Algoma Inc. ("**Algoma Canada**"), in its capacity as the authorized foreign representative (the "**Foreign Representative**") of the above-captioned debtors (collectively, "**Algoma**" or the "**Debtors**") who have filed an application in a foreign proceeding (the "**CCAA Proceeding**") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**") pending before the Ontario Superior Court of Justice (Commercial List) (the "**Canadian Court**"), pursuant to sections 362, 364(e), 365, 1517, 1519, 1520, 1521, and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") for entry of (a) a provisional order (this "**Order**"):  (i) recognizing and enforcing in the United States (the "**U.S.**"), on an interim basis, the initial order issued on November 9, 2015, by the Canadian Court (the "**CCAA Initial Order**"),[3] including, without

---

[1] The Debtors in the foreign proceeding and the last four digits of each Debtor's United States Tax Identification Number, Canadian Business Number, or Provincial Corporation Number, as applicable, are as follows: Essar Steel Algoma Inc. (0642), Essar Steel Algoma Inc. USA (8788), Essar Steel Algoma (Alberta) ULC (6883), Essar Tech Algoma Inc. (8811), and Cannelton Iron Ore Company (9965).  The Debtors' principal offices are located at 105 West Street, Sault Ste. Marie, Ontario P6A 7B4, Canada.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[3] A copy of the CCAA Initial Order is attached to the Sandoval Declaration as **Exhibit A**.

limitation, the Canadian Court's decision (A) to authorize the Debtors to enter into and perform

under that certain DIP Facility, and (B) to grant the DIP Lenders' Charge (as defined in the

CCAA Initial Order), (ii) granting an interim stay of execution against the Debtors' assets and

applying sections 362 and 365(e) of the Bankruptcy Code in these chapter 15 cases on an interim

basis pursuant to sections 1519(a)(3), 1521(a)(7), and 105(a) of the Bankruptcy Code,

(iii) granting the DIP Lenders certain protections afforded by section 364(e) of the Bankruptcy

Code, and (iv) granting such other and further relief as this Court deems just and proper; and

(b) a final order after notice and a hearing (the "**Final Order**") (i) granting the petitions in these

cases and recognizing the CCAA Proceeding as a foreign main proceeding pursuant to section

1517 of the Bankruptcy Code, (ii) giving full force and effect in the U.S. to the CCAA Initial

Order, including any and all extensions, amendments and/or supplements thereto authorized by

the Canadian Court and extending the protections of the Provisional Order to Algoma on a final

basis, (iii) applying section 365 of the Bankruptcy Code in these chapter 15 cases on a final basis

pursuant to section 1521 of the Bankruptcy Code, (iv) granting the DIP Lenders certain

protections afforded by section 364(e) of the Bankruptcy Code, and (v) granting such other and

further relief as this Court deems just and proper, all as more fully described in the Motion; and

the Court having jurisdiction to consider the Motion and the relief requested therein in

accordance with 28 U.S.C. §§ 157 and 1334, 11 U.S.C. §§ 109 and 1501, and the *Amended

Standing Order of Reference from the United States District Court for the District of Delaware*,

dated as of February 29, 2012; and consideration of the Motion and the relief requested therein

being a core proceeding pursuant to 28 U.S.C. § 157(b); and Algoma having consented to the

Court's authority to enter a final order consistent with Article III of the U.S. Constitution; and

venue being proper before this Court pursuant to 28 U.S.C. § 1410; and due and proper notice of

the provisional relief sought in the Motion having been provided; and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and the appearances of all interested parties having been noted in the record of the Hearing; and upon the Sandoval Declaration, the Ciardullo Declaration, the Memorandum of Law, and the verified chapter 15 petitions, filed contemporaneously with the Motion, the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that the provisional relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

**THIS COURT HEREBY FINDS AND DETERMINES THAT:**

A.      The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**") made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.

C.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

D.      Venue for this proceeding is proper before this Court pursuant to 28 U.S.C. § 1410.

E.    The Foreign Representative has demonstrated a substantial likelihood of success on the merits that (a) the CCAA Proceeding is a "foreign main proceeding" as that term is defined in section 1502(4) of the Bankruptcy Code, (b) the Foreign Representative is a "foreign representative" as that term is defined in section 101(24) of the Bankruptcy Code, (c) all statutory elements for recognition of the CCAA Proceeding are satisfied in accordance with section 1517 of the Bankruptcy Code, (d) upon recognition of the CCAA Proceeding as a foreign main proceeding, section 362 of the Bankruptcy Code will automatically apply in these chapter 15 cases pursuant to section 1520(a)(1) of the Bankruptcy Code, and (e) that application of section 365(e) on an interim basis to prevent contract counterparties from terminating their prepetition contracts with Algoma is entirely consistent with the injunctive relief afforded by the automatic stay under section 362.

F.    The Foreign Representative has demonstrated that (a) the commencement of any proceeding or action in the U.S. against Algoma and its business and all of its assets should be stayed pursuant to sections 1519, 1521, and 105(a) of the Bankruptcy Code, which protections, in each case, shall be coextensive with the provisions of section 362 of the Bankruptcy Code, to permit the fair and efficient administration of the CCAA Proceeding, including an orderly marketing and sale process for all or substantially all of the assets and property (or an investment in the business) of the Debtors and/or a reorganization pursuant to a plan of compromise or arrangement, pursuant to the CCAA Initial Order and any other applicable orders of the Canadian Court, for the benefit of all stakeholders, and (b) the relief requested in the Motion will neither cause an undue hardship nor create any hardship to parties in interest that is not outweighed by the benefits of the relief granted herein.

G.      The Foreign Representative has demonstrated that Algoma has assets in the U.S., including valuable customer and supplier contracts governed by U.S. law, and that each of the Debtors is either a primary obligor under or guarantor of Algoma's prepetition debt obligations, which are governed by U.S. Law.

H.      The Foreign Representative has demonstrated that without the protection of sections 362 and 365(e) of the Bankruptcy Code, there is a material risk that counterparties to certain of Algoma's contracts and creditors under Algoma's prepetition debt instruments may take the position that the commencement of the CCAA Proceeding or these chapter 15 cases authorizes them to terminate such contracts or accelerate obligations or exercise remedies thereunder.  Such termination or acceleration will severely impair Algoma's restructuring efforts and result in irreparable damage to Algoma's business and the value of Algoma's assets, and substantial harm to Algoma's creditors and other parties in interest.

I.      The Foreign Representative has demonstrated to the Canadian Court and the Canadian Court found that the incurrence of indebtedness under the DIP Facility, and the granting of the liens and charges negotiated in connection with the DIP Facility, are necessary to prevent irreparable harm to Algoma because, without such financing, Algoma will be unable to continue operations or fund its restructuring proceedings, which will significantly impair the value of its assets.

J.      The Foreign Representative has demonstrated to the Canadian Court and the Canadian Court found that the terms of the DIP Facility are fair and reasonable and were entered into in good faith by Algoma and the DIP Lenders, and the Foreign Representative has demonstrated that the DIP Lenders would not have extended financing without the provisions of this Order and protections set forth in this Order relating to the DIP Facility.

K.       The Foreign Representative has demonstrated that absent the relief granted herein, there is a material risk that one or more parties in interest will take action against Algoma or its assets.  As a result, Algoma may suffer immediate and irreparable injury, loss, or damage for which there is no adequate remedy at law and therefore it is necessary that this Court grant the relief requested in the Motion without prior notice to parties in interest or their counsel.  Further, unless this Order is entered, Algoma's assets could be subject to efforts by creditors to control, possess, or execute upon such assets and such efforts could result in Algoma suffering immediate and irreparable injury, loss or damage by, among other things, creditors (a) interfering with the jurisdictional mandate of this Court under chapter 15 of the Bankruptcy Code, and (b) interfering with or undermining the success of the CCAA Proceeding.

L.       The Foreign Representative has demonstrated that no injury will result to any party that is greater than the harm to Algoma's business, assets, and property in the absence of the relief requested in the Motion.

M.      The interests of the public and public policy of the U.S. will be served by entry of this Order.

N.       The Foreign Representative and Algoma are entitled to the full protections and rights available pursuant to section 1519(a)(1)-(3) of the Bankruptcy Code.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.       The Motion is granted as set forth herein.

2.       The CCAA Initial Order is hereby given full force and effect on an interim basis, including, without limitation, (a) authorizing the Debtors to obtain credit under the DIP Facility and granting to the DIP Agent and the DIP Lenders the DIP Lenders' Charge, and (b) staying the commencement or continuation of any actions against Algoma or its assets (except as otherwise

6

expressly provided herein), and shall be given full force and effect in the U.S. until otherwise ordered by this Court.

3.      While this Order is in effect, the Foreign Representative and Algoma are entitled to the full protections and rights pursuant to section 1519(a)(1), which protections shall be coextensive with the provisions of section 362 of the Bankruptcy Code, and this Order shall operate as a stay of any execution against Algoma's assets within the territorial jurisdiction of the U.S. (except as otherwise expressly provided herein).

4.      While this Order is in effect, pursuant to sections 1519(a)(3) and 1521(a)(7) of the Bankruptcy Code, sections 362 and 365(e) of the Bankruptcy Code are hereby made applicable in these cases to Algoma and the property of Algoma within the territorial jurisdiction of the U.S.; provided that, notwithstanding any other provision of this Order, upon the occurrence of an event of default under the DIP Documents (as defined below) or the DIP Lenders' Charge, this paragraph and the other provisions of this Order shall be deemed to be automatically modified to the extent necessary to allow the DIP Agent and the DIP Lenders to exercise their rights pursuant to paragraph 42 of the CCAA Initial Order and the DIP Documents.  Specifically, all entities (as that term is defined in section 101(15) of the Bankruptcy Code), other than (x) the Foreign Representative and its expressly authorized representatives and agents and (y) the DIP Agent and the DIP Lenders, to the extent provided for in the foregoing sentence of this paragraph, are hereby enjoined from:

       a)  execution against any of Algoma's assets;

       b)  the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, arbitral, or other action or proceeding, or to recover a claim, including without

limitation any and all unpaid judgments, settlements, or otherwise
against Algoma in the U.S.;

c) taking or continuing any act to create, perfect, or enforce a lien or
other security interest, set-off, or other claim against Algoma or any of
its property;

d) transferring, relinquishing, or disposing of any property of Algoma to
any entity (as that term is defined in section 101(15) of the Bankruptcy
Code) other than the Foreign Representative;

e) commencing or continuing an individual action or proceeding
concerning Algoma's assets, rights, obligations, or liabilities; and

f) terminating contracts or otherwise accelerating obligations or
exercising remedies thereunder *provided*, in each case, that such
injunction shall be effective solely within the territorial jurisdiction of
the U.S.

5.     Notwithstanding anything to the contrary contained herein, this Order shall not be
construed as (a) enjoining the police or regulatory act of a governmental unit, including a
criminal action or proceeding, to the extent not stayed pursuant to section 362 of the Bankruptcy
Code or (b) staying the exercise of any rights that section 362(o) of the Bankruptcy Code does
not allow to be stayed.

6.     To the extent provided in the CCAA Initial Order and based on the finding made
therein and to promote cooperation between jurisdictions in cross-border insolvencies, Algoma is
hereby authorized to execute and deliver such term sheets, credit agreements, mortgages,
charges, hypothecs and security documents, guarantees, and other definitive documents as are

contemplated by the DIP Facility (collectively, the "**DIP Documents**") or as may be reasonably required by the DIP Lenders pursuant to the terms thereof, and Algoma is hereby authorized to pay and perform all of its indebtedness, interest, fees, liabilities, and obligations to the DIP Lenders under and pursuant to the DIP Facility (and in accordance with the budget delivered in connection therewith) including, but not limited to, the fees and expenses of the DIP Lenders' Canadian and U.S. counsel, and other advisors, as and when the same become due and are to be performed, notwithstanding any other provision of this Order and without any further order of this Court.  The Court provisionally recognizes (i) the borrowing of $50 million (USD) authorized by the CCAA Initial Order and (ii) any additional amounts approved by the Canadian Court prior to the entry of the Final Order up to a total amount of $125 million (USD).

7.      To the extent authorized under the CCAA Initial Order, the Court recognizes, on a provisional basis, the DIP Lenders' Charge, as defined in the CCAA Initial Order, granted in the CCAA Initial Order which applies to all of Algoma's U.S. assets, subject to the priorities, terms, and conditions of the CCAA Initial Order, to secure current and future amounts outstanding under the DIP Facility.

8.      This Order shall be sufficient and conclusive notice and evidence of the grant, validity, perfection, and priority of the liens granted to the DIP Lenders in the CCAA Initial Order without the necessity of filing or recording this Order or any financing statement, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction; *provided* that Algoma is authorized to execute, and the administrative agent under the DIP Facility may file or record, any financing statements, mortgages, other instruments or any other DIP Document to further evidence the liens authorized, granted, and perfected hereby and by the CCAA Initial Order.

9.      Pursuant to sections 364(e), 1519(a)(3), 1521(a)(7), and 105(a) of the Bankruptcy Code, the validity of the indebtedness, and the priority of the liens authorized by the CCAA Initial Order made enforceable in the U.S. by this Order, shall not be affected by any reversal or modification of this Order, on appeal or the entry of an order denying recognition of the CCAA Proceeding pursuant to section 1517 of the Bankruptcy Code.

10.      Effective on a provisional basis upon entry of this Order, no action, inaction or acquiescence by the DIP Agent or the DIP Lenders, including, without limitation, funding the Debtors' ongoing operations under this Order, shall be deemed to be or shall be considered as evidence of any alleged consent by the DIP Agent or the DIP Lenders to a charge against the collateral pursuant to sections 506(c), 552(b) or 105(a) of the Bankruptcy Code.  The DIP Agent and the DIP Lenders shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the collateral.

11.      Effective on a provisional basis upon entry of this Order, no person or entity shall be entitled, directly or indirectly, whether by operation of sections 506(c), 552(b) or 105 of the Bankruptcy Code or otherwise, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of any collateral or property after an Event of Default under the DIP Documents, or termination or breach under the DIP Facility, the DIP Documents, the CCAA Initial Order or this Order.

12.      Algoma's creditors will not suffer any significant harm by the requested provisional relief, as the relief will merely preserve the status quo during the short time necessary for the Court to rule on the verified chapter 15 petitions.  The provisional relief sought will benefit Algoma's creditors because it will ensure the value of Algoma's assets are preserved, protected and maximized for the benefit of all creditors.

13.     Any creditor that believes it has been harmed by the provisional relief may file a motion seeking relief from, or modification of, this Order with the Court on not less than seven (7) business days' written notice to Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:  Ray C. Schrock, P.C. and Matthew S. Barr, and this Court will hear such motion on a date to be scheduled by this Court.

14.     Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, made applicable to these proceedings pursuant to Bankruptcy Rule 7065, no notice to any person is required prior to entry and issuance of this Order.  Pursuant to Bankruptcy Rule 7065, the provisions of Federal Rule of Civil Procedure 65(c) are hereby waived, to the extent applicable.

15.     The Foreign Representative, Algoma, and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or local rules of this Court.

16.     Notwithstanding any applicability of any Bankruptcy Rules, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

17.     The Foreign Representative is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

18.     This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.


Dated:  _____, 2015

      Wilmington, Delaware


_____
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**

**Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------ x
                                                             :
```

*In re:*                                          :          **Chapter 15**
                                                  :
**ESSAR STEEL ALGOMA INC.,** *et al.,*[1]         :          **Case No. 15– _____ (    )**
                                                  :
                                                  :
**Debtors in a foreign proceeding.**              :          **(Joint Administration Requested)**
                                                  :

```
------------------------------------------------------------ x
```

**FINAL ORDER GRANTING**
**RECOGNITION OF FOREIGN MAIN PROCEEDING**
**AND CERTAIN RELATED RELIEF PURSUANT TO SECTIONS**
**362, 364(e), 365, 1517, 1519, 1520, 1521, AND 105(a) OF BANKRUPTCY CODE**

Upon the motion (the "**Motion**")[2] of Essar Steel Algoma Inc. ("**Algoma Canada**"), in its

capacity as the authorized foreign representative (the "**Foreign Representative**") of the above-

captioned debtors (collectively, "**Algoma**" or the "**Debtors**") who have filed an application in a

foreign proceeding (the "**CCAA Proceeding**") under Canada's *Companies' Creditors*

*Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**") pending before the Ontario

Superior Court of Justice (Commercial List) (the "**Canadian Court**"), pursuant to sections 362,

364(e), 365, 1517, 1519, 1520, 1521, and 105(a) of title 11 of the United States Code (the

"**Bankruptcy Code**") for entry of (a) a provisional order (the "**Provisional Order**"):

(i) recognizing and enforcing in the United States (the "**U.S.**"), on an interim basis, the initial

order issued on November 9, 2015, by the Canadian Court (the "**CCAA Initial Order**"),[3]

---

[1] The Debtors in the foreign proceeding and the last four digits of each Debtor's United States Tax Identification Number, Canadian Business Number, or Provincial Corporation Number, as applicable, are as follows: Essar Steel Algoma Inc. (0642), Essar Steel Algoma Inc. USA (8788), Essar Steel Algoma (Alberta) ULC (6883), Essar Tech Algoma Inc. (8811), and Cannelton Iron Ore Company (9965).  The Debtors' principal offices are located at 105 West Street, Sault Ste. Marie, Ontario P6A 7B4, Canada.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[3] A copy of the CCAA Initial Order is attached to the Sandoval Declaration as **Exhibit A**.

including, without limitation, the Canadian Court's decision (A) to authorize the Debtors to enter

into and perform under that certain the DIP Facility, and (B) to grant the DIP Lenders' Charge

(as defined in the CCAA Initial Order), (ii) granting an interim stay of execution against the

Debtors' assets and applying sections 362 and 365(e) of the Bankruptcy Code in these chapter 15

cases on an interim basis pursuant to sections 1519(a)(3), 1521(a)(7), and 105(a) of the

Bankruptcy Code, (iii) granting the DIP Lenders certain protections afforded by section 364(e) of

the Bankruptcy Code, and (iv) granting such other and further relief as this Court deems just and

proper; and (b) a final order after notice and a hearing (this "**Order**") (i) granting the petitions in

these cases and recognizing the CCAA Proceeding as a foreign main proceeding pursuant to

section 1517 of the Bankruptcy Code, (ii) giving full force and effect in the U.S. to the CCAA

Initial Order, including any and all extensions, amendments and/or supplements thereto

authorized by the Canadian Court and extending the protections of the Provisional Order to

Algoma on a final basis, (iii) applying section 365 of the Bankruptcy Code in these chapter 15

cases on a final basis pursuant to section 1521 of the Bankruptcy Code, (iv) granting the DIP

Lenders certain protections afforded by section 364(e) of the Bankruptcy Code, and (v) granting

such other and further relief as this Court deems just and proper all as more fully described in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein

in accordance with 28 U.S.C. §§ 157 and 1334, 11 U.S.C. §§ 109 and 1501, and the *Amended

Standing Order of Reference from the United States District Court for the District of Delaware*,

dated as of February 29, 2012; and consideration of the Motion and the relief requested therein

being a core proceeding pursuant to 28 U.S.C. § 157(b); and Algoma having consented to the

Court's authority to enter a final order consistent with Article III of the U.S. Constitution; and

venue being proper before this Court pursuant to 28 U.S.C. § 1410; and due and proper notice of

2

the relief sought in the Motion having been provided; and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "**Final Hearing**"); and the appearances of all interested parties having been noted in the record of the Final Hearing; and upon the Sandoval Declaration, the Ciardullo Declaration, the Memorandum of Law, and the verified chapter 15 petitions, filed contemporaneously with the Motion, the record of the Final Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

**THIS COURT HEREBY FINDS AND DETERMINES THAT:**

A.      The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.

C.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

D.      Venue for this proceeding is proper before this Court pursuant to 28 U.S.C. § 1410.

E.      The CCAA Proceeding is a "foreign proceeding" pursuant to section 101(23) of the Bankruptcy Code.

F.      The Foreign Representative is the duly appointed "foreign representative" of Algoma within the meaning of section 101(24) of the Bankruptcy Code.

G.      These chapter 15 cases were properly commenced pursuant to sections 1504, 1509, and 1515 of the Bankruptcy Code.

H.      The Foreign Representative has satisfied the requirements of section 1515 of the Bankruptcy Code and Bankruptcy Rule 2002(q).

I.      The CCAA Proceeding is entitled to recognition by this Court pursuant to section 1517 of the Bankruptcy Code.

J.      Canada is the center of main interests of each of the Debtors, and accordingly, the CCAA Proceeding is a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code, and is entitled to recognition as a foreign main proceeding pursuant to section 1517(b)(1) of the Bankruptcy Code.

K.      The Foreign Representative is entitled to all the relief available pursuant to section 1520 of the Bankruptcy Code including, without limitation, application of the automatic stay pursuant to section 362 of the Bankruptcy Code.

L.      The Foreign Representative is further entitled to application of section 365 pursuant to section 1521 of the Bankruptcy Code.

M.      The Foreign Representative has demonstrated that the incurrence of indebtedness under the DIP Facility is necessary to preserve the value of Algoma's business.

N.      The Foreign Representative has demonstrated that the terms of the DIP Facility are fair and reasonable and were entered into in good faith by Algoma and the DIP Lenders and

the DIP Lenders would not have extended financing without the provisions of this Order and protection pursuant to section 364(e) of the Bankruptcy Code.

O.     The Foreign Representative has demonstrated that application of section 365 of the Bankruptcy Code, as made applicable by sections 1521(a)(7) and 105(a) of the Bankruptcy Code, is necessary to provide Algoma with the ability to assume or reject a contract or compel a contract counterparty to perform under a contract and that, absent protections pursuant to section 365, there is a material risk that one or more of its contract counterparties may terminate agreements or discontinue performance on the incorrect assumption that it is not bound by any decision made in the CCAA Proceeding and any such termination or discontinuance of performance could impose severe economic consequences on Algoma and will interfere with reorganization efforts.

P.     The relief granted herein in necessary and appropriate, in the interests of the public and international comity, consistent with the public policy of the U.S., and warranted pursuant to section 1517, 1520, and 1521 of the Bankruptcy Code.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.     The verified chapter 15 petitions and the Motion are granted as set forth herein.

2.     The CCAA Proceeding is granted recognition as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code.

3.     The CCAA Initial Order, including any extensions, amendments, or modifications thereto, is hereby enforced on a final basis and given full force and effect in the U.S. (except as otherwise expressly provided herein).

4.     All relief afforded foreign main proceedings pursuant to section 1520 of the Bankruptcy Code is hereby granted to the CCAA Proceeding, Algoma, and the Foreign Representative as applicable.

5.      Sections 362 and 365 of the Bankruptcy Code shall hereby apply with respect to Algoma and the property of Algoma that is within the territorial jurisdiction of the U.S.; provided that, notwithstanding any other provision of this Order, upon the occurrence of an event of default under the DIP Documents (as defined below) or the DIP Lenders' Charge, this paragraph and the other provisions of this Order shall be deemed to be automatically modified to the extent necessary to allow the DIP Agent and the DIP Lenders to exercise their rights pursuant to paragraph 42 of the CCAA Initial Order and the DIP Documents.

6.      Subject to sections 1520 and 1521 of the Bankruptcy Code, the CCAA Proceeding and the CCAA Initial Order, and the transactions consummated or to be consummated thereunder, shall be granted comity and given full force and effect in the U.S. to the same extent that they are given effect in Canada, and each is binding on all creditors of Algoma and any of their successors and assigns.

7.      Pursuant to section 1521(a)(6) of the Bankruptcy Code, all prior relief granted to Algoma or the Foreign Representative by this Court pursuant to section 1519(a) of the Bankruptcy Code shall be extended and the Provisional Order shall remain in full force and effect, notwithstanding anything to the contrary contained therein.

8.      All entities (as that term is defined in section 101(15) of the Bankruptcy Code), other than (x) the Foreign Representative and its expressly authorized representatives and agents and (y) the DIP Agent and the DIP Lenders, to the extent provided for in the foregoing sentence of this paragraph, are hereby enjoined from:

    a)  execution against any of Algoma's assets;

    b)  the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, arbitral, or other action or

proceeding, or to recover a claim, including without limitation any and all unpaid judgments, settlements, or otherwise against Algoma in the U.S.;

c) taking or continuing any act to create, perfect, or enforce a lien or other security interest, set-off, or other claim against Algoma or any of its property;

d) transferring, relinquishing, or disposing of any property of Algoma to any entity (as that term is defined in section 101(15) of the Bankruptcy Code) other than the Foreign Representative;

e) commencing or continuing an individual action or proceeding concerning Algoma's assets, rights, obligations, or liabilities to the extent they have not been stayed pursuant to section 1520(a) of the Bankruptcy Code; and

f) terminating contracts or otherwise accelerating obligations or exercising remedies thereunder, *provided*, in each case, that such injunction shall be effective solely within the territorial jurisdiction of the U.S.

9.      To the extent provided in the CCAA Initial Order, Algoma is hereby authorized to execute and deliver such term sheets, credit agreements, mortgages, charges, hypothecs and security documents, guarantees, and other definitive documents as are contemplated by the DIP Facility (collectively, the "**DIP Documents**") or as may be reasonably required by the DIP Lenders pursuant to the terms thereof, and Algoma is hereby authorized to pay and perform all of its indebtedness, interest, fees, liabilities, and obligations to the DIP Lenders under and pursuant to the DIP Facility (and in accordance with the budget delivered in connection therewith) including, but not limited to, the fees and expenses of the DIP Lenders' Canadian and U.S. counsel, and other advisors, as and when the same become due and are to be performed,

notwithstanding any other provision of this Order and without any further order of this Court.

Pursuant to approval by the Canadian Court, subject to the satisfaction of the conditions set forth

in the DIP Documents, Algoma is hereby authorized to borrow up to $200 million (USD) under

the DIP Facility.

10.     To the extent authorized under the CCAA Initial Order, the DIP Lenders are

hereby granted the DIP Lenders' Charge, as defined in the CCAA Initial Order, on all of

Algoma's U.S. assets, subject to the priorities, terms, and conditions of the CCAA Initial Order,

to secure current and future amounts outstanding under the DIP Facility.

11.     This Order shall be sufficient and conclusive notice and evidence of the grant,

validity, perfection, and priority of the liens granted to the DIP Lenders in the CCAA Initial

Order without the necessity of filing or recording this Order or any financing statement,

mortgage, or other instrument or document which may otherwise be required under the law of

any jurisdiction; *provided* that Algoma is authorized to execute, and the administrative agent

under the DIP Facility may file or record, any financing statements, mortgages, other instruments

or any other DIP Document to further evidence the liens authorized, granted, and perfected

hereby and by the CCAA Initial Order.

12.     The DIP Documents have been negotiated in good faith and at arm's-length

between Algoma and the DIP Lenders.  Any financial accommodations made to Algoma by the

DIP Lenders pursuant to the CCAA Initial Order and the DIP Documents shall be deemed to

have been made by the DIP Lenders in good faith, as that term is used in section 364(e) of the

Bankruptcy Code.  Accordingly, pursuant to sections 364(e), 1519(a)(3), 1521(a)(7), and 105(a)

of the Bankruptcy Code, the validity of the indebtedness, and the priority of the liens authorized

by the CCAA Initial Order made enforceable in the U.S. by this Order, shall not be affected by

any reversal or modification of this Order, on appeal or the entry of an order denying recognition of the CCAA Proceeding pursuant to section 1517 of the Bankruptcy Code.

13.    No action, inaction or acquiescence by the DIP Agent or the DIP Lenders, including, without limitation, funding the Debtors' ongoing operations under this Order, shall be deemed to be or shall be considered as evidence of any alleged consent by the DIP Agent or the DIP Lenders to a charge against the collateral pursuant to sections 506(c), 552(b) or 105(a) of the Bankruptcy Code. The DIP Agent and the DIP Lenders shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the collateral.

14.    No person or entity shall be entitled, directly or indirectly, whether by operation of sections 506(c), 552(b) or 105 of the Bankruptcy Code or otherwise, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of any collateral or property after an Event of Default under the DIP Documents, or termination or breach under the DIP Facility, the DIP Documents, the CCAA Initial Order or this Order.

15.    Notwithstanding anything to the contrary contained herein, this Order shall not be construed as (a) enjoining the police or regulatory act of a governmental unit, including a criminal action or proceeding, to the extent not stayed pursuant to section 362 of the Bankruptcy Code or (b) staying the exercise of any rights that section 362(o) of the Bankruptcy Code does not allow to be stayed.

16.    The Foreign Representative, Algoma, and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or local rules of this Court.

17.    The Foreign Representative is hereby authorized to apply to this Court to examine witnesses, take evidence, seek production of documents, and deliver information concerning the assets, affairs, rights, obligations, or liabilities of Algoma.

18.    The Foreign Representative, Algoma and/or each of their successors, representatives, advisors, or counsel shall be entitled to the protections contained in sections 306 and 1510 of the Bankruptcy Code.

19.    Notwithstanding any applicability of any Bankruptcy Rules: (a) the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; (b) the Foreign Representative is not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order; and (c) Foreign Representative is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

20.    A copy of this Order, confirmed to be true and correct, shall be served, within three business days of entry of this Order, by facsimile, electronic mail, or overnight express delivery, upon all persons or bodies authorized to administer foreign proceedings of Algoma, all entities against whom provisional relief was granted pursuant to section 1519 of the Bankruptcy Code, all parties to litigation pending in the U.S. in which any of the Debtors were a party at the time of the filing of the verified chapter 15 petitions, the Office of the U.S. Trustee for the District of Delaware, and such other entities as this Court may direct.  Such service shall be good and sufficient service and adequate notice for present purpose.

10

21.     This Court shall retain exclusive jurisdiction to hear and determine all matters

arising from or related to the implementation, interpretation and/or enforcement of this Order.


Dated:   _____, 2015

        Wilmington, Delaware

                                    _____
                                    UNITED STATES BANKRUPTCY JUDGE