## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------- x
                                            :
*In re:*                                    :    **Chapter 15**
                                            :
**ESSAR STEEL ALGOMA INC.**, *et al.*,[1]   :    **Case No. 15– _____ (    )**
                                            :
**Debtors in a foreign proceeding.**        :    **(Jointly Administered)**
                                            :
-------------------------------------------------------------- x

### MEMORANDUM OF LAW OF FOREIGN REPRESENTATIVE IN SUPPORT OF (I) VERIFIED CHAPTER 15 PETITIONS AND (II) MOTION OF FOREIGN REPRESENTATIVE FOR ORDERS GRANTING PROVISIONAL AND FINAL RELIEF IN AID OF FOREIGN MAIN PROCEEDING

**WEIL, GOTSHAL & MANGES LLP**
Ray C. Schrock, P.C. (*pro hac vice* pending)
Matthew S. Barr (*pro hac vice* pending)
767 Fifth Avenue
New York, New York  10153
Telephone:     (212) 310-8000
Facsimile:     (212) 310-8007
Email:         ray.schrock@weil.com
Email:         matt.barr@weil.com

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Amanda R. Steele (No. 5530)
One Rodney Square, 920 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 651-7700
Facsimile:     (302) 651-7701
Email:         collins@rlf.com
               defranceschi@rlf.com
               steele@rlf.com

*Attorneys for the Foreign Representative*

Dated: November 9, 2015

---

[1] The Debtors in the foreign proceeding and the last four digits of each Debtor's United States Tax Identification Number, Canadian Business Number, or Provincial Corporation Number, as applicable, are as follows: Essar Steel Algoma Inc. (0642), Essar Steel Algoma Inc. USA (8788), Essar Steel Algoma (Alberta) ULC (6883), Essar Tech Algoma Inc. (8811), and Cannelton Iron Ore Company (9965).  The Debtors' principal offices are located at 105 West Street, Sault Ste. Marie, Ontario P6A 7B4, Canada.

# TABLE OF CONTENTS

Preliminary Statement................................................................................................2

Jurisdiction and Venue...............................................................................................5

Factual Background ....................................................................................................6

Argument ....................................................................................................................6

I.      CCAA Proceeding Is Entitled to Recognition as a Foreign Main Proceeding ...................6

    A.      These Cases Are Proper Under Chapter 15 ..........................................................6

        1.      CCAA Proceeding Is a "Foreign Proceeding"..........................................7

        2.      Algoma Canada Is a "Foreign Representative" ........................................9

        3.      Algoma Canada Properly Filed These Cases............................................10

        4.      Petitions for Recognition Are Consistent with Chapter 15......................11

    B.      CCAA Proceeding is a "Foreign Main Proceeding"...............................................11

II.     Additional Relief Pursuant to Section 1521 of the Bankruptcy Code Is Warranted and Appropriate ........................................................................................................15

    A.      Application of Section 365 Is Essential ................................................................15

    B.      Recognition of DIP Facility and DIP Lenders' Charge Is Necessary....................17

III.    Provisional Relief Within the Scope of Section 1519 of the Bankruptcy Code Is Necessary and Appropriate Under the Circumstances........................................................20

    A.      Provisional Relief Is Available Under Sections 1519(a)(3), 1521(a)(7), and 105(a) of the Bankruptcy Code..............................................................................21

    B.      Provisional Relief Is Necessary to Prevent Irreparable Harm and Is Consistent with Public Interest ............................................................................23

        1.      There Is a Substantial Likelihood of Recognition of the CCAA Proceeding As a Foreign Main Proceeding and Application of the Requested Additional Bankruptcy Provisions ............................................24

        2.      Algoma Will Suffer Irreparable Harm Absent Provisional Relief............25

        3.      Provisional Relief Will Benefit Creditors.................................................27

        4.      Public Interest Favors Granting Provisional Relief ..................................27

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*In re ABC Learning Centres Ltd.*,
    445 B.R. 318 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301 (3d Cir. 2013) ..........................10, 12

*ACLU of N.J. v. Black Horse Pike Reg'l Bd. of Educ.*,
    84 F.3d 1471 (3d Cir. 1996)..................................................................................................23

*In re Angiotech Pharm. Inc.*,
    No. 11-10269 (KG) (Bankr. D. Del. Jan. 31, 2011) ................................................................22

*In re Arctic Glacier Int'l Inc.*,
    No. 12-10605 (KG) (Bankr. D. Del. Feb. 23, 2012)...................................................8, 20, 22

*In re Banco Nacional de Obras y Servicios Publicos, S.N.C.*,
    91 B.R. 661 (Bankr. S.D.N.Y. 1988) ....................................................................................25

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
    374 B.R. 122 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008) ............10, 12, 28

*In re Catalyst Paper Corp.*,
    No. 12-10221 (PJW) (Bankr. D. Del. Jan. 19, 2012)...............................................................22

*In re Cinram Int'l Inc.*,
    No. 12-11882 (KJC) (Bankr. D. Del. June 26, 2012) .......................................................8, 22

*In re Cinram Int'l Inc.*,
    No. 12-11882 (KJC) (Bankr. D. Del. July 25, 2012)...............................................................20

*In re Compania Mexicana de Aviacion, S.A. de C.V.*,
    No. 10-14182 (MG) (Bankr. S.D.N.Y. Nov. 8, 2010) .............................................................9

*Cornfeld v. Investors Overseas Servs., Ltd.*,
    471 F. Supp. 1255 (S.D.N.Y. 1979).......................................................................................13

*In re Crystallex Int'l Corp.*,
    No. 11-14074 (PJW) (Bankr. D. Del. Apr. 26, 2012)..............................................................20

*In re Curlew Valley Assocs.*,
    14 B.R. 506 (Bankr. D. Utah 1981) .......................................................................................18

*In re DBSI, Inc.*,
    409 B.R. 720, 728 (Bankr. D. Del. 2009) ...............................................................................16

*In re Destinator Techs. Inc.*,
    No. 08-11003 (CSS) (Bankr D. Del. May 20, 2008) ...............................................................23

*In re Elpida Memory, Inc.*,
   No. 12-10947 (CSS) (Bankr. D. Del. Mar. 21, 2012)...............................................22

*In re Essar Steel Algoma Inc.*,
   No. 14-11730 (BLS) (Bankr. D. Del. Jul. 17, 2014)................................................12

*In re Essar Steel Algoma Inc.*,
   No. 14-11730 (BLS) (Bankr. D. Del. Aug. 20, 2014) .......................................10, 23

*In re Fleming Companies, Inc.*,
   499 F.3d 300 (3d Cir. 2007)....................................................................................16

*In re Fraser Papers Inc.*,
   No. 09-12123 (KJC) (Bankr. D. Del. July 14, 2009).........................................20, 22

*Grp. of Inst. Inv. v. Chicago Mil. St. P. & Pac. Ry.*,
   318 U.S. 523 (1943)................................................................................................17

*In re Hamilton Square Assocs.*,
   No. 9l-14720S, 1992 WL 98294 (Bankr. E.D. Pa. May 5, 1992)...........................18

*In re Innua Canada Ltd.*,
   No. 09-16362, 2009 WL 1025088 (Bankr. D.N.J. Mar. 25, 2009).........................23

*In re Ionosphere Clubs, Inc.*,
   922 F.2d 984 (2d Cir. 1990).....................................................................................13

*In re Irish Bank Resolution Corp. Ltd.*,
   No. 13-12159 (CSS), 2014 WL 9953792 (Bankr. D. Del. Apr. 30, 2014), *aff'd,* 538 B.R. 692
   (D. Del. 2015) ........................................................................................................10

*Kos Pharm., Inc. v. Andrx Corp.*,
   369 F.3d 700 (3d Cir. 2004).....................................................................................23

*In re Lines*,
   81 B.R. 267 (Bankr. S.D.N.Y 1988)........................................................................26

*In re Lifeguard Indus., Inc.*,
   37 B.R. 3 (Bankr. S.D. Ohio 1983)..........................................................................18

*In re Lone Pine Res. Inc.*,
   No. 13-12487 (BLS) (Bankr. D. Del. Sept. 26, 2013) ...............................................8

*In re Lone Pine Res. Inc.*,.............................................................................................19, 22
   No. 13-12487 (BLS) (Bankr. D. Del. Oct., 24, 2013)

*In re Lynx Transport, Inc.*,
   No. 98-36433DAS, 1999 WL 615366. (Bankr. E.D. Pa. Aug. 11, 1999) ...............18

*In re MAAX Corp.*,
 No. 08-11443 (CSS) (Bankr. D. Del. July 14, 2008)..............................................22

*In re Nortel Networks Corp.*,
 No. 09-10164 (KG) (Bankr. D. Del. Feb. 27, 2009)..................................................8

*Rogers v. Corbett*,
 468 F.3d 188 (3d Cir. 2006)....................................................................................23

*In re SPhinX, Ltd.*,
 351 B.R. 103 (Bankr. S.D.N.Y. 2006) *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007) ...............10, 12, 28

*In re Talon Sys. Inc.*,
 No. 13-11811 (KJC) (Bankr. D. Del. Aug. 30, 2013)..............................................20

*In re Tri-Continental Exch. Ltd.*,
 349 B.R. 627 (Bankr. E.D. Cal. 2006) ...................................................................12

*United States v. Bell*,
 414 F.3d 474 (3d Cir. 2005)....................................................................................23

*Victrix S.S. Co., S.A. v. Salen Dry Cargo, A.B.*,
 825 F.2d 709 (2d Cir. 1987)....................................................................................25

*In re Vitro, S.A.B. de C. V.*,
 470 B.R. 408 (N.D. Tex. 2012) *aff'd sub nom. In re Vitro S.A.B. de CV*, 701 F.3d 1031 (5th Cir. 2012) *cert. dismissed*, 133 S. Ct. 1862 (2013)..................................................9

*In re W.C. Wood Corp., Ltd.*,
 No. 09-11893 (KG) (Bankr. D. Del. June 1, 2009) ................................................22

*In re Wheeling-Pittsburgh Steel Cow*,
 72 BR. 845 (Bankr. W.D. Pa. 1987) .......................................................................18

*In re Woskob*,
 305 F.3d 177 (3d Cir. 2002).....................................................................................15

*In re Xentel Inc.*,
 No. 13-10888 (KG) (Bankr. D. Del. Apr. 12, 2013).................................................8

## Statutes

11 U.S.C. § 101 ..............................................................................................6, 7, 9, 10, 24

11 U.S.C. § 105 ..................................................................................................1, 19, 20, 21

11 U.S.C. § 362 ................................................................................1, 4, 5, 15, 20, 22, 23 24

11 U.S.C. § 364 ..............................................................2, 4, 5, 15, 17, 18, 19, 20, 21, 22, 26

11 U.S.C. § 365 .................................................................1, 2, 4, 5, 15, 17, 20, 21, 22, 23, 24

11 U.S.C. § 502 ...............................................................................................................11

11 U.S.C. § 1501 ................................................................................6, 11, 14, 26, 28

11 U.S.C. § 1504 ...............................................................................................6, 10

11 U.S.C. § 1506 ..............................................................................................13

11 U.S.C. § 1509 ..............................................................................................10

11 U.S.C. § 1515 ................................................................................6, 9, 10, 11, 24

11 U.S.C. § 1517 ...............................................................................2, 10, 11, 20

11 U.S.C. § 1519 ..................................................................................1, 20, 21, 23

11 U.S.C. § 1520 ..............................................................................................15, 20, 24

11 U.S.C. § 1521 ......................................................................1, 2, 15, 19, 20, 21

28 U.S.C. § 1334 ...............................................................................................5

28 U.S.C. § 157 ..............................................................................................5, 6

28 U.S.C. § 1410 .............................................................................................6

**Other Authorities**

Fed. R. Bankr. P. 2002(q) ...........................................................................................20

Essar Steel Algoma Inc. ("**Algoma Canada**") is the authorized foreign representative (the "**Foreign Representative**") of the above-captioned debtors (collectively, "**Algoma**" or the "**Debtors**"), who have filed an application in a foreign proceeding (the "**CCAA Proceeding**") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**"), pending before the Ontario Superior Court of Justice (Commercial List) (the "**Canadian Court**").

On the date hereof, the Foreign Representative commenced the above-captioned chapter 15 cases by filing verified chapter 15 petitions, and also filed the *Motion of Foreign Representative for Entry of Provisional and Final Orders Granting Recognition of Foreign Main Proceeding and Certain Related Relief Pursuant to Sections 362, 364(e), 365, 1517, 1519, 1520, 1521, and 105(a) of Bankruptcy Code* (the "**Recognition and Relief Motion**" and, together with the petitions, the "**Petitions for Recognition**"),[1] seeking (a) entry of a provisional order (the "**Provisional Order**") (i) recognizing and enforcing in the United States (the "**U.S.**"), on an interim basis, the initial order issued on November 9, 2015, by the Canadian Court (the "**CCAA Initial Order**")[2] in the CCAA Proceeding, including, without limitation, the Canadian Court's authorization of the DIP Facility[3] (as defined below) and grant to the DIP Lenders (as defined below) of a charge and certain other protections (as described in more detail below), (ii) applying sections 362 and 365(e) of title 11 of the United States Code (the "**Bankruptcy Code**") in these chapter 15 cases pursuant to sections 1519(a)(3), 1521(a)(7), and 105(a) of the Bankruptcy Code, and (iii) granting such other and further relief as the Court deems just and proper; and (b) entry of a final order (the "**Final Order**"), after notice and a hearing (i) granting the petitions in these

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Recognition and Relief Motion.

[2] A copy of the CCAA Initial Order is attached to the Sandoval Declaration (defined below) as **Exhibit A**.

[3] Additional background on the DIP Facility is contained in the Sandoval Declaration.

chapter 15 cases and recognizing the CCAA Proceeding as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code, (ii) giving full force and effect in the U.S. to the CCAA Initial Order, including any and all extensions or amendments thereof authorized by the Canadian Court, and extending the protections of the Provisional Order to Algoma on a final basis, (iii) applying section 365 of the Bankruptcy Code in these chapter 15 cases pursuant to section 1521 of the Bankruptcy Code, (iv) granting the DIP Lenders certain protections afforded by section 364(e) of the Bankruptcy Code, and (v) granting such other and further relief as the Court deems just and proper.  The Foreign Representative respectfully submits this Memorandum of Law in support of the Petitions for Recognition.

### Preliminary Statement

1.      A little over one year ago, Algoma was before this Court having filed chapter 15 petitions and seeking recognition of an insolvency proceeding in Canada as a foreign main proceeding (the "**2014 Restructuring**").  As this Court may recall, at that time, Algoma was implementing a targeted debt restructuring pursuant to the *Canada Business Corporations Act*, R.S.C. 1985, c. C-44, as amended (the "**CBCA Proceeding**").  Algoma filed those chapter 15 cases to protect the company's assets in the U.S. and to ensure that its plan of arrangement in the CBCA Proceeding could be efficiently and effectively implemented without disruption.  Algoma is now before this Court again seeking similar relief.

2.      Although Algoma's last restructuring substantially reduced the amount of its debt and positioned the company to take advantage of anticipated market improvements and operational adjustments that were expected to improve the company's financial performance, circumstances over the last several months have changed substantially, causing Algoma to once again seek relief from this Court and the Canadian Court.  As set forth in more detail in the Sandoval Declaration, because of an oversupply from imports in the steel market, the price of

steel has dropped precipitously in the past year.  Algoma has worked hard to reduce costs, including decreasing production and laying off employees, but it is facing a severe liquidity crisis.  At the same time, the company is experiencing an emergency with respect to its exclusive long-term source of iron ore pellet supply, an essential raw material input in the steel making process.  From January 2002 until mid-October 2015, all of Algoma's iron ore supply was purchased under a 23-year contract with The Cleveland-Cliffs Iron Company, Cliffs Mining Company, and Northshore Mining Company (collectively, "**Cliffs**").  Last month, Cliffs, without any basis in law or contract, and without notice, purported to terminate its long-term supply agreement, forcing Algoma to seek alternative, short-term sources, which came at increased costs.  Faced with this situation, Algoma had no choice but to protect its business and assets by seeking emergency financing and commencing insolvency proceedings.

3.      Because, as set forth herein, Algoma's assets and operations primarily are located in Canada, Algoma commenced the CCAA Proceeding as its main proceeding.  The CCAA Initial Order in the CCAA Proceeding implements relief, similar to the automatic stay under the Bankruptcy Code, to prevent creditors from taking action against Algoma and its assets (among other things).  Because Algoma has assets and creditors in the U.S., to ensure that the Debtors are protected from parties taking actions against them and their assets in the U.S., the Foreign Representative commenced these chapter 15 cases.

4.      The Foreign Representative is authorized by Algoma and approved by the Canadian Court to, among other things, assist Algoma in these chapter 15 cases, report to the Canadian Court, and take such actions as may be necessary or appropriate in furtherance of the recognition of the CCAA Proceeding.  Most importantly, the Foreign Representative seeks entry of a Final Order, granting recognition of the CCAA Proceeding as a foreign main proceeding,

3

enforcing the CCAA Initial Order, applying section 365 of the Bankruptcy Code in these chapter 15 cases, and granting the DIP Lenders certain protections afforded by section 364(e) of the Bankruptcy Code. The Foreign Representative also seeks certain relief on an interim basis, pending consideration of the Final Order.

5.      As discussed in the Ciardullo Declaration, upon commencement of the CCAA Proceeding, *all of Algoma's creditors* were stayed from taking any enforcement actions against Algoma and its assets, wherever located. Notwithstanding the worldwide application of the stay imposed by the CCAA Proceeding, there is a risk that Algoma's creditors may attempt to take enforcement actions in the U.S. The entry by this Court of a final order recognizing the CCAA Proceeding as a foreign main proceeding will, among other things, extend the protections of the stay under section 362 to Algoma's assets and creditors located in the U.S., prevent contract counterparties from modifying or terminating U.S.-based contracts, and permit the enforcement in the U.S. of claims and liens granted to the lenders providing Algoma with postpetition financing. This relief is essential with respect to Algoma's customers and key suppliers, such as Cliffs, whose continued business is essential to Algoma's survival.[4] Pursuant to the Bankruptcy Rules, however, such relief is not available until this Court grants a final order, after notice and a hearing. In the interim, there is no stay or other protections in the U.S. Additionally, absent access to the liquidity provided by the DIP Facility, it is likely that Algoma will be unable to meet its postpetition obligations as they become due, maintain the operation of its business as a going concern, or pursue restructuring efforts.

---

[4] Algoma's contract with Cliffs is a valuable and important asset. Accordingly, Algoma intends to file one or more pleadings relating to Cliffs' performance under the Cliffs Iron Ore Contract. In addition, in the CCAA Proceeding, Algoma intends to seek "critical supplier relief" with respect to Cliffs, pursuant to which Cliffs would be compelled to continue supplying Algoma on commercial terms.

6.     Therefore, in addition to the Final Order, the Foreign Representative is seeking on an interim basis, an order recognizing the CCAA Proceeding and applying sections 362 and 365(e) of the Bankruptcy Code to ensure that no creditor attempts to bring any enforcement action against Algoma or attempts to terminate or modify its contract as a result of the commencement of the CCAA Proceeding or these chapter 15 cases. The Foreign Representative also is seeking approval, on a provisional basis, of recognition of the Canadian Court's approval of the DIP Facility and related DIP Lender protections, and the granting to the DIP Lenders of certain protections afforded by section 364(e) of the Bankruptcy Code. Absent the relief requested, Algoma will not have access to necessary liquidity, the CCAA Proceeding could be undermined, Algoma's restructuring efforts could be jeopardized, and Algoma, its creditors, and other parties in interest could suffer irreparable harm.

7.     Algoma seeks to accomplish two key goals in the CCAA Proceeding (with the assistance of these chapter 15 cases) which will help Algoma stabilize its business and position the company for growth for the long-term benefit of its creditors and other stakeholders: (1) deleverage its balance sheet, and (2) secure an affordable and reliable long-term source of iron ore pellets. Granting the relief sought herein will help accomplish these objectives, while at the same time ensuring the fair and efficient administration of the CCAA Proceeding, maximization of the value of Algoma's business for the benefit of creditors, and fair and equitable treatment of all stakeholders. The foregoing is consistent with the principles set forth in chapter 15 of the Bankruptcy Code and U.S. public policy.

**Jurisdiction and Venue**

8.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012. These cases have been properly

5

commenced pursuant to 11 U.S.C. § 1504 by the filing of petitions for recognition of the CCAA Proceeding pursuant to 11 U.S.C. § 1515 of the Bankruptcy Code. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P). Venue is proper before this Court pursuant to 28 U.S.C. § 1410.

## Factual Background

9.     The Court is respectfully referred to the Petitions for Recognition, the Sandoval Declaration, and the Ciardullo Declaration filed contemporaneously herewith and containing the facts relied on in this Memorandum of Law. The Sandoval Declaration and the Ciardullo Declaration are incorporated herein by reference.

## Argument

### I.     CCAA Proceeding Is Entitled to Recognition as a Foreign Main Proceeding

10.     The CCAA Proceeding should be recognized as a foreign main proceeding and the CCAA Initial Order should be recognized and enforced because these chapter 15 cases were properly commenced by a duly authorized foreign representative, the CCAA Proceeding qualifies as a foreign proceeding, and the proceeding is pending in the country where Algoma has its center of main interests.

### A.     These Cases Are Proper Under Chapter 15

11.     Chapter 15 of the Bankruptcy Code applies where a foreign representative seeks the assistance of a U.S. bankruptcy court in connection with a foreign proceeding. 11 U.S.C. § 1501(b)(1). Algoma's cases are proper under chapter 15 because (i) these cases concern a "foreign proceeding," (ii) these cases were commenced by Algoma Canada, a duly authorized "foreign representative," (iii) the Petitions for Recognition, and all required supporting documentation, were properly filed, and (iv) the relief sought by the Petitions for Recognition is consistent with the objectives of chapter 15. *See* 11 U.S.C. §§ 101, 1515.

### 1. CCAA Proceeding Is a "Foreign Proceeding"

12.     Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign
> country, including an interim proceeding, under a law relating to
> insolvency or adjustment of debt in which proceeding the assets
> and affairs of the debtor are subject to control or supervision by a
> foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).  As discussed in the Sandoval Declaration and more fully in the Ciardullo

Declaration, the CCAA Proceeding is a judicial proceeding brought under the CCAA that is

supervised by the Canadian Court.  The CCAA provides for a controlled reorganization

procedure designed to enable financially distressed companies to avoid foreclosure or seizure of

assets while maximizing the company's value as a going concern for the benefit of creditors and

other parties in interest.

13.     As detailed in the Ciardullo Declaration, although the Debtors management and

board of directors remain in place, and the board maintains its power under Canadian law to

approve significant actions, including disposing of important assets, borrowing significant

amounts, or changing corporate structures, the Debtors' assets and affairs are subject to the

supervision of the Canadian Court during the pendency of a CCAA Proceeding.  In addition, the

Canadian Court appoints a monitor who functions as an independent observer of the CCAA

Proceeding and (i) monitors the Debtors' ongoing operations, (ii) reports to the Canadian Court

on any major events affecting the Debtors, (iii) notifies creditors and shareholders of any

meetings and tabulates votes at these meetings, (iv) assists with preparing, filing, and holding

meetings for voting on the plan of arrangement, and (v) prepares a report on the plan of

arrangement, which is usually included in the mailing of the plan.  Any party-in-interest seeking

to object to the plan of arrangement may appeal to, and obtain relief from, the Canadian Court.

The Canadian Court, through the CCAA Proceeding, is properly exercising its jurisdiction over Algoma.

14.     In connection with the CCAA Proceeding, on November 9, 2015, the Canadian court entered the CCAA Initial Order.  The CCAA Initial Order provides for certain relief, including, among other things, (i) a stay of all proceedings and actions against Algoma, (ii) approval of the DIP Facility, (iii) a charge over Algoma's assets to secure the DIP Facility, (iv) a charge on Algoma's assets to secure payment in favor of indemnities granted to Algoma's directors and officers, (v) an order directing Algoma's critical suppliers to continue providing goods and/or services to Algoma during the CCAA Proceeding and a charge over Algoma's assets in an amount equal to the value of the goods and services supplied by such critical suppliers and received by the Algoma after the date of the Initial CCAA Order less all amounts paid to such critical supplier in respect of such goods and services, (vi) an order prohibiting all of Algoma's suppliers from interfering with the supply of goods or services to Algoma, and (vii) an administration charge on Algoma's assets to secure fees and disbursements incurred in connection with professional services rendered to Algoma.  The Initial CCAA Order is annexed to the Sandoval Declaration as **Exhibit A**.

15.     Courts have previously recognized that a Canadian restructuring proceeding under the CCAA constitutes a "foreign proceeding," as defined in the Bankruptcy Code.  *See*, *e.g.*, *In re Lone Pine Res. Inc.*, No. 13-12487 (BLS) (Bankr. D. Del. Sept. 26, 2013) [D.I. 18]; *In re Xentel Inc.*, No. 13-10888 (KG) (Bankr. D. Del. Apr. 12, 2013) [D.I. 15]; *In re Cinram Int'l Inc.*, No. 12-11882 (KJC) (Bankr. D. Del. June 26, 2012) [D.I. 30]; *In re Arctic Glacier Int'l Inc.*, No. 12-10605 (KG) (Bankr. D. Del. Feb. 23, 2012) [D.I. 28]; *In re Nortel Networks Corp.*, No. 09-10164 (KG) (Bankr. D. Del. Feb. 27, 2009) [D.I. 40].

16.     Moreover, in the chapter 15 cases filed in connection with the 2014 Restructuring, this Court recognized the CBCA Proceeding as a "foreign main proceeding."  Proceedings under the CBCA are governed by a less robust statutory regime as compared to proceedings under the CCAA and involve more limited court intervention and oversight.  As such, recognition by this Court of the CBCA Proceeding as a foreign proceeding reinforces the fact that the CCAA Proceeding is a foreign proceeding.  Accordingly, for the reasons set forth above, the CCAA Proceeding qualifies as a "foreign proceeding" under the Bankruptcy Code.

### 2.     Algoma Canada Is a "Foreign Representative"

17.     Section 101(24) of the Bankruptcy Code provides that:

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).  The boards of directors of each of the Debtors appointed by resolution the Foreign Representative.[5]  In addition, pursuant to paragraph 53 of the CCAA Initial Order, the Canadian Court appointed Algoma Canada to act as the Foreign Representative of Algoma and authorized Algoma Canada to apply for recognition by commencing chapter 15 cases in the U.S.:

> 53.     **THIS COURT ORDERS** that ESAI is hereby authorized and empowered, but not required, to act as the foreign representative (the "**Foreign Representative**") in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside of Canada, including, if deemed advisable by the Applicants, to apply for recognition of

---

[5] *See In re Vitro, S.A.B. de C. V.*, 470 B.R. 408, 412 (N.D. Tex. 2012) *aff'd sub nom. In re Vitro S.A.B. de CV*, 701 F.3d 1031 (5th Cir. 2012) *cert. dismissed*, 133 S. Ct. 1862 (2013) (recognizing that the board of directors of a corporation could authorize a person to act as the corporation's foreign representative in a chapter 15 proceeding); *In re Compania Mexicana de Aviacion, S.A. de C.V.*, No. 10-14182 (MG) (Bankr. S.D.N.Y. Nov. 8, 2010) (same). Moreover, section 1515(b) provides that in the absence of a "certified copy of the decision commencing such foreign proceeding and appointing the foreign representative" or "a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative," a petition for recognition should be accompanied by "any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative." 11 U.S.C. § 1515(b).

these proceedings in the United States pursuant to chapter 15 of
title 11 of the *United States Code*, 11 U.S.C. §§ 101- 1532.

Further, Algoma Canada, as a corporation, is a "person," as defined in section 101(41) of the

Bankruptcy Code.  11 U.S.C. § 101(41).

18.    Accordingly, Algoma Canada is a "foreign representative," as defined in the

Bankruptcy Code.  *Cf. In re SPhinX, Ltd.*, 351 B.R. 103, 116-17 (Bankr. S.D.N.Y. 2006) *aff'd*,

371 B.R. 10 (S.D.N.Y. 2007) (noting that the foreign representatives had submitted a "copy of

the Cayman Court's order appointing them to administer the Debtors' winding up under the

Companies Law and authorizing their commencement of chapter 15 cases, thereby satisfying

Bankruptcy Code section 101(24)").  Indeed, this Court previously recognized Algoma Canada

as the foreign representative in the chapter 15 cases filed in connection with Algoma's 2014

Restructuring.  *In re Essar Steel Algoma Inc.*, No. 14-11730 (BLS) (Bankr. D. Del. Aug. 20,

2014) [D.I. 96].

### 3.    Algoma Canada Properly Filed These Cases

19.    These cases were duly and properly commenced as required by sections 1504 and

1509(a) of the Bankruptcy Code, by the filing of the Petitions for Recognition in accordance with

section 1515(a) of the Bankruptcy Code, which were accompanied by all documents and

information required by sections 1515(b) and (c).[6]  *See In re Irish Bank Resolution Corp. Ltd.*,

No. 13-12159 (CSS)*, 2014 WL 9953792, at *17 (Bankr. D. Del. Apr. 30, 2014) ("The final

requirement for recognition under § 1517 is that the petition for recognition meets the procedural

requirements of [section] 1515"), *aff'd,* 538 B.R. 692 (D. Del. 2015); *In re ABC Learning*

---

[6] As set forth above, in satisfaction of section 1515(b) the Foreign Representative has attached to the Sandoval
Declaration a copy of the CCAA Initial Order, which specifically contemplates (i) the commencement of these
chapter 15 cases, and (ii) the appointment of Algoma Canada as the Foreign Representative.  Furthermore, in
satisfaction of section 1515(c), the Foreign Representative has filed, accompanying each Debtor's petition, a
*Foreign Representative's Statement Regarding Known Foreign Proceedings*, which identifies the CCAA Proceeding
as the only foreign insolvency proceeding pending with respect to each of the Debtors.

*Centres Ltd.*, 445 B.R. 318, 334 (Bankr. D. Del. 2010) (same), *aff'd*, 728 F.3d 301 (3d Cir. 2013); *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007) ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code"), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008).  Because the Foreign Representative has satisfied the requirements set forth in section 1515 of the Bankruptcy Code, these chapter 15 cases have been properly commenced.

### 4.    Petitions for Recognition Are Consistent with Chapter 15

20.    One of the stated objectives of chapter 15 is the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor." 11 U.S.C. § 1501(a)(3).  These cases have been commenced for the purpose of obtaining the assistance of the Court to ensure the effective and economical administration of the CCAA Proceeding by, among other things, restricting Algoma's creditors from taking certain actions in the U.S. that would undermine the unified, collective, and equitable resolution of Algoma's liabilities in the CCAA Proceeding before the Canadian Court. As such, the Petitions for Recognition are consistent with the purpose of chapter 15 and the cross-border coordination it promotes.

### B.    CCAA Proceeding is a "Foreign Main Proceeding"

21.    The Court should grant recognition of the CCAA Proceeding as a "foreign main proceeding," as defined in the Bankruptcy Code.  A foreign proceeding is a "foreign main proceeding" if it is pending in the country where the debtor has the center of its main interests. 11 U.S.C. §§ 502(4), 1517(b)(1).  Many factors weigh into the center of main interests (or COMI) analysis, including "the location of the debtor's headquarters; the location of those who actually manage the debtor; the location of the debtor's primary assets; location of the majority

of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes." *In re Irish Bank*, 2014 WL 9953792, at *16; *In re ABC Learning Centres*, 445 B.R. at 333; *In re Bear Stearns*, 374 B.R. at 128 (citing *In re SPhinX, Ltd.*, 351 B.R. at 117); *see also In re Tri-Continental Exch. Ltd.*, 349 B.R. 627, 634 (Bankr. E.D. Cal. 2006) (noting that a debtor's center of main interests is the "place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties"). Further, courts have equated a company's principal place of business to its center of its main interests. *See In re Bear Sterns*, 374 B.R. at 129.

22. In recognizing Algoma's CBCA Proceeding in its chapter 15 cases filed in connection with the 2014 Restructuring, this Court determined that Canada is Algoma's center of main interests. *In re Essar Steel Algoma Inc.*, No. 14-11730 (BLS) (Bankr. D. Del. July 17, 2014) [D.I. 28]. Specifically, the center of main interests for Algoma's enterprise is Sault Ste. Marie, Ontario, Canada, the location of Algoma's steel making facility and corporate headquarters. All active business operations of Algoma are undertaken and all steel producing assets of Algoma are located in Sault Ste. Marie. Algoma is managed on a consolidated basis out of this location. All corporate-level decision-making and corporate administrative functions affecting Algoma, including decisions on capital expenditures and business development initiatives, are centralized in the Sault Ste. Marie office; indeed, the entire management team is based there. Many of Algoma's creditors are located in Canada, and Canadian law applies to many of Algoma's contracts.

23. In these circumstances, Sault Ste. Marie, Ontario, Canada should be found to be the center of Algoma's main interests. Accordingly, given that the CCAA Proceeding is

pending in Ontario, Canada, the CCAA Proceeding should be recognized as a foreign main proceeding.

24.     Furthermore, recognizing the CCAA Proceeding as a Foreign Main Proceeding is consistent with the purpose of chapter 15 and public policy.  Section 1506 of the Bankruptcy Code provides that nothing in chapter 15 shall prevent the court from refusing to take an action otherwise required therein if such action would be manifestly contrary to the public policy of the U.S.  11 U.S.C. § 1506.  Here, the relief requested is consistent with U.S. public policy.

25.     One of the fundamental goals of the Bankruptcy Code is the centralization of disputes involving the debtor.  *See, e.g., In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990) ("The Bankruptcy Code 'provides for centralized jurisdiction and administration of the debtor, its estate and its reorganization in the Bankruptcy Court . . . . '") (internal citations omitted).  Indeed, as one court has noted, "the firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in another jurisdiction."  *Cornfeld v. Investors Overseas Servs., Ltd.*, 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979) (recognizing Canadian liquidation proceeding would not violate laws or public policy of New York or the U.S.).

26.     The CCAA is similar to chapter 11 of the Bankruptcy Code because it is a statutory regime that promotes the rehabilitation of a debtor, provides the debtor with a "breathing spell" from creditors' collection efforts and a centralized process to assert and resolve claims against the debtor's estate, and provides for a fair and equitable process for distribution to creditors in order of priority.  Recognizing the CCAA Proceeding and enjoining certain actions or proceedings with respect to Algoma and its assets will assist the orderly administration of Algoma's assets in Canada and the U.S.  Such orderly administration is consistent with U.S.

13

public policy, as embodied in the Bankruptcy Code.  If all creditors are not enjoined, creditors

may unilaterally pursue collection or enforcement efforts, U.S. assets may be seized, and the

orderly determination of claims in the foreign proceeding will be frustrated.  This would cause

significant delay and disruption to Algoma's restructuring process.  The purpose of chapter 15

and the policies underlying the Bankruptcy Code are to prevent such harm.  *See* 11 U.S.C.

§ 1501.

27.     Further, recognition of the CCAA Proceeding advances the goals of cooperation

and maximizing asset value that underlie chapter 15 and the UNCITRAL Model Law on Cross

Border Insolvency.  Section 1501(a) of the Bankruptcy Code provides, in pertinent part, that:

> The purpose of this chapter is to incorporate the Model Law on
> Cross-Border Insolvency so as to provide effective mechanisms for
> dealing with cases of cross-border insolvency with the objectives
> of -
>
>     (1) cooperation between -
>
> . . .
>
>         (B) the courts and other competent authorities of foreign
> countries involved in cross-border insolvency cases;
>
> . . .
>
>     (3)     fair and efficient administration of cross-border
> insolvencies that protects the interests of all creditors, and other
> interested entities, including the debtor; [and]
>
>     (4)     protection and maximization of the value of the debtor's
> assets.

11 U.S.C. § 1501(a).  Recognition of the CCAA Proceeding would foster cooperation between

this Court and the Canadian Court.  By recognizing the CCAA Proceeding and enforcing the

CCAA Initial Order in the U.S., this Court can effectively assist the Canadian Court in the fair

and orderly administration of Algoma's assets by ensuring that Algoma's creditors, particularly

those creditors in the U.S., are enjoined from commencing or continuing actions against Algoma and its assets.  This will help protect and maximize the value of Algoma's assets.  Additionally, recognizing the CCAA Proceeding will promote the fair and efficient administration of the CCAA Proceeding, which will protect the interests of all stakeholders by centralizing the process of resolving claims against Algoma in Canada.

## II.   Additional Relief Pursuant to Section 1521 of the Bankruptcy Code Is Warranted and Appropriate

28.    In addition to the relief automatically provided by section 1520 of the Bankruptcy Code upon recognition of a foreign main proceeding,[7] the Foreign Representative requests additional relief pursuant to section 1521 of the Bankruptcy Code to protect Algoma's assets and its creditors' interests.  Section 1521 of the Bankruptcy Code provides, in relevant part, that the court may grant a foreign representative "any appropriate relief," including "any relief that may be available to a trustee," subject to certain limitations (which do not apply here) where necessary to effectuate the purpose of chapter 15 and to protect the debtor's assets and creditors' interests.  11 U.S.C. § 1521(a)(7).  Accordingly, pursuant to section 1521(a)(7) of the Bankruptcy Code, the Foreign Representative requests that the Court extend the protections afforded by sections 364(e) and 365 of the Bankruptcy Code.

### A.   Application of Section 365 Is Essential

29.    Section 365 is a fundamental provision under the Bankruptcy Code that enables a debtor to preserve valuable commercial relationships, including preventing counterparties from attempting to terminate their contracts or halt performance as a result of the debtor's insolvency.  *See In re Woskob*, 305 F.3d 177, 184-85 (3d Cir. 2002) (explaining that section 365 invalidates

---

[7] Upon recognition of the CCAA Proceeding as a foreign main proceeding, certain relief is automatically granted as a matter of right, including application of the stay under section 362 of the Bankruptcy Code, which enjoins actions Algoma and its U.S. assets.  11 U.S.C. § 1520.

provisions of law or contract which specify that a bankruptcy filing *per se* will terminate or modify the contract); *In re DBSI, Inc.*, 409 B.R. 720, 728 (Bankr. D. Del. 2009).  It also enables a debtor to assume contracts that are beneficial and valuable, but reject those that are burdensome.  *See In re Fleming Companies, Inc*., 499 F.3d 300, 304 (3d Cir. 2007) (stating that section 365 allows a trustee to "to maximize the value of the debtor's estate by assuming executory contracts . . . that benefit the estate and rejecting those that do not").  Application of section 365 in these chapter 15 cases is necessary to protect against the disruption to business operations and interference with reorganization efforts that would result from any attempt by a contract counterparty to exercise remedies or cease performance under any executory agreement with the Debtors.  It also would give Algoma the ability to assume or reject contracts and leases – options that would be complimentary to relief available in the CCAA Proceeding, and may be necessary in the event that any of Algoma's U.S. counterparties assert that they are not bound by orders entered by the Canadian Court.

30.    More than half of Algoma's key suppliers are entities with a presence in the U.S. Many of Algoma's customers are in the U.S. and have contracts governed by the laws of the U.S. Although contract counterparties, including those whose contracts are governed by U.S. law, are subject to the jurisdiction of the Canadian Court and bound by the CCAA Initial Order, out of an abundance of caution and in order to fully protect its rights, the Foreign Representative seeks an order applying section 365 of the Bankruptcy Code in these chapter 15 cases.

31.    Algoma must have certainty that Cliffs, in particular, as well as other U.S. contract counterparties will not terminate or exercise remedies under their prepetition agreements, will continue performing thereunder, and will be subject to and bound by any decision by Algoma to affirm or disclaim such agreements.  Without the preservation of its

contractual relationships, Algoma may lose the benefit of these agreements, litigation may ensue, and counterparties may obtain unfair advantages over other creditors. Asset preservation is consistent with the purpose of chapter 15, and the protection of Algoma's assets, in the interests of its creditors. While section 365 does not apply as of right upon the recognition of a proceeding as a foreign main proceeding, such relief is warranted in these chapter 15 cases.

      **B.**     **Recognition of DIP Facility and DIP Lenders' Charge Is Necessary**

      32.     The Foreign Representative also seeks to have the Court (i) grant recognition of the DIP Facility and related liens, the DIP Lenders' Charge (as defined in the CCAA Initial Order) approved by the Canadian Court in the CCAA Initial Order, and (ii) provide the DIP Lenders certain protections provided by section 364(e) of the Bankruptcy Code. As set forth more fully in the Sandoval Declaration, the Debtors commenced the CCAA Proceeding and the Foreign Representative commenced these chapter 15 cases to, among other things, assist the Debtors in consummating a restructuring. To maintain sufficient operating liquidity and fund the administrative costs associated with the CCAA Proceeding and these cases, Algoma needs debtor-in-possession financing. After arm's-length negotiations and an extensive marketing process (as described in the Sandoval Declaration), Algoma made a good-faith business decision to enter into an agreement with certain of its prepetition secured lenders (the "**DIP Lenders**") to obtain access to a $200 (USD) million postpetition credit facility (the "**DIP Facility**"). The DIP Facility was approved, on an interim basis, by the Canadian Court, and the Foreign Representative seeks recognition and enforcement of this approval, and certain additional protections for the DIP Lenders, pursuant to section 364(e) of the Bankruptcy Code. The Sandoval Declaration includes a detailed summary of the DIP Facility.

      33.     Bankruptcy courts routinely defer to a debtor's business judgment on most business decisions, including the decision to borrow money. *See Grp. of Inst. Inv. v. Chicago*

17

*Mil. St. P. & Pac. Ry.*, 318 U.S. 523, 550 (1943); *In re Lifeguard Indus., Inc.*, 37 B.R. 3, 17

(Bankr. S.D. Ohio 1983); *In re Hamilton Square Assocs.*, No. 9l-14720S, 1992 WL 98294, at *1

(Bankr. E.D. Pa. May 5, 1992) (holding that a "debtor-in-possession['s] . . . business judgments

must be accepted if reasonable").  In general, a bankruptcy court should defer to a debtor in

possession's business judgment regarding both the need for and the proposed use of funds unless

such decision is arbitrary and capricious.  *See In re Wheeling-Pittsburgh Steel Cow*, 72 BR. 845,

849 (Bankr. W.D. Pa. 1987) (holding that "the court should not interfere with or second-guess

the debtor's sound business judgment unless and until evidence is presented that establishes that

the debtor's decision was one taken in bad faith or in gross abuse of its retained business

discretion").  Courts generally will not second guess a debtor in possession's business decisions

when those decisions involve "a business judgment made in good faith, upon a reasonable basis,

and within the scope of his authority under the Code." *In re Curlew Valley Assocs.*, 14 B.R. 506,

513-14 (Bankr. D. Utah 1981) (footnotes omitted); *In re Lynx Transport, Inc.*, No. 98-

36433DAS, 1999 WL 615366., at *3 (Bankr. E.D. Pa. Aug. 11, 1999) (holding that "a debtor in

possession (DIP) is authorized to make its own independent business judgments").

34.    The Debtors, in the exercise of their prudent business judgment and consistent

with their fiduciary duties, have concluded that the DIP Facility is necessary and its terms and

conditions are fair, reasonable, and the best available under the circumstances, and are supported

by reasonably equivalent value and consideration.  In the absence of financing from the DIP

Lenders, Algoma could face a shuttering of operations and a corresponding devastating loss of

value.  Without the DIP Facility, Algoma will not be able to fund the continued operation of its

business in a manner that will permit its restructuring and avoid irreparable harm.  The

availability to Algoma of sufficient working capital and liquidity through the incurrence of new

indebtedness and other financial accommodations from the DIP Lenders is necessary to bolster the confidence of Algoma's vendors and suppliers of goods and services, as well as its customers and employees. Indeed, the preservation and maintenance of the going concern value of Algoma's business is dependent on access to the DIP Facility, which was already approved on an interim basis by the Canadian Court in the CCAA Proceeding.

35.     Furthermore, the DIP Facility was negotiated in good faith and at arm's length by all parties involved and, accordingly, any credit extended and loans made to Algoma under the DIP Facility should be deemed to have been extended in good faith, within the meaning of section 364(e) of the Bankruptcy Code. Furthermore, proceeds to be provided under the DIP Facility will be extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Lenders are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code in these chapter 15 cases.

36.     For all of the reasons set forth herein, the Foreign Representative requests the Court, pursuant to sections 1521(a)(7) and 105(a) of the Bankruptcy Code, give full force and effect to the CCAA Initial Order of the Canadian Court in the U.S., by recognizing the DIP Facility and the DIP Lenders' Charge approved in the CCAA Proceeding and by granting to the DIP Lenders the protections of section 364(e) of the Bankruptcy Code. This relief is consistent with well-established practice under the Bankruptcy Code, and similar relief is routinely granted to trustees in domestic proceedings. While section 364(e) does not apply as of right upon the recognition of a proceeding as a foreign main proceeding, such relief is warranted in these chapter 15 cases.

37.     Courts in this District have approved postpetition financing on a final basis in other chapter 15 cases. *See, e.g., In re Lone Pine Res. Inc.*, No. 13-12487 (BLS) (Bankr. D. Del.

Oct., 24, 2013) [D.I. 64]; *In re Talon Sys. Inc.*, No. 13-11811 (KJC) (Bankr. D. Del. Aug. 30,

2013) [D.I. 49]; *In re Cinram Int'l Inc.*, No. 12-11882 (KJC) (Bankr. D. Del. July 25, 2012) [D.I.

97]; *In re Arctic Glacier Int'l Inc.*, No. 12-10605 (KG) (Bankr. D. Del. Feb. 23, 2012) [D.I. 70];

*In re Crystallex Int'l Corp.*, No. 11-14074 (PJW) (Bankr. D. Del. Apr. 26, 2012) [D.I. 111]; *In re

Fraser Papers Inc.*, No. 09-12123 (KJC) (Bankr. D. Del. July 14, 2009) [D.I. 61].

**III.    Provisional Relief Within the Scope of Section 1519 of the Bankruptcy Code Is
Necessary and Appropriate Under the Circumstances**

38.    Pursuant to the Recognition and Relief Motion, the Foreign Representative also

seeks entry of an order pursuant to sections 1519(a)(3), 1521(a)(7), and 105(a) of the Bankruptcy

Code recognizing and enforcing the CCAA Initial Order, making sections 362 and 365(e) of the

Bankruptcy Code applicable in these chapter 15 cases on a provisional basis pending entry of the

Final Order, and granting the DIP Lenders certain protections afforded by section 364(e) of the

Bankruptcy Code.  As noted above, application of both the automatic stay, which protections

should be coextensive with the stay provided in the CCAA Initial Order, and section 365(e) is

crucial to prevent irreparable injury to the value of Algoma's assets.  Additionally, immediate

access to desperately needed liquidity is critical to the success of Algoma's restructuring process,

including maximizing value for all of Algoma's creditors.

39.    Pursuant to section 1517, an order recognizing a foreign proceeding may only be

entered after notice and a hearing.  11 U.S.C. § 1517(a).  Pursuant to Bankruptcy Rule 2002(q),

the notice period must be at least 21 days.  Fed. R. Bankr. P. 2002(q).  Upon recognition of a

proceeding as a foreign main proceeding, among other things, section 362 (the automatic stay)

applies.  11 U.S.C. § 1520(a)(1).  Absent provisional relief, there is no stay applicable in the U.S.

during the period between filing the chapter 15 petitions and entry of the recognition order.

Therefore, interim relief is necessary to protect Algoma and its assets from diminution in value

20

caused by collection or enforcement efforts of creditors prior to the disposition of the Petitions

for Recognition. This includes (i) staying the commencement or enforcement of actions against

Algoma and its assets under section 362 and (ii) ensuring that contract counterparties continue

performing by enforcing section 365(e) of the Bankruptcy Code. In addition, due to Algoma's

liquidity constraints, the Debtors require access to the DIP Facility prior to entry of the Final

Order. The DIP Lenders have conditioned availability thereunder upon the Court's provisional

recognition of the DIP Facility and DIP Lenders' Charge approved in the CCAA Initial Order in

an order satisfactory to them, and certain protections under section 364(e) of the Bankruptcy

Code. Accordingly, certain provisional relief is necessary.

### A.    Provisional Relief Is Available Under Sections 1519(a)(3), 1521(a)(7), and 105(a) of the Bankruptcy Code

40.    Section 1519(a)(3) of the Bankruptcy Code authorizes the Court to grant, on a

provisional basis, any relief available pursuant to section 1521(a)(7). 11 U.S.C. § 1519(a)(3).

As noted above, section 1521(a)(7) provides that the Court may grant a foreign representative

any relief available to a trustee, subject to certain exceptions not relevant here. 11 U.S.C.

§ 1521(a)(7). The automatic stay of section 362 is an essential feature of the Bankruptcy Code

that clearly falls within this provision. The same is true with respect to sections 364(e)

and 365(e). Moreover, the relief authorized by the CCAA Initial Order is substantially similar to

the relief available to a trustee under the Bankruptcy Code. In addition, section 105(a) of the

Bankruptcy Code further allows the Court to "issue any order . . . necessary or appropriate to

carry out the provisions of [title 11]." 11 U.S.C. § 105(a).

41.    Courts within this jurisdiction frequently grant provisional relief similar to that

which is sought herein, including recognition and enforcement of an order entered in the foreign

proceeding and application of sections 362, 364(e) and 365(e) of the Bankruptcy Code. *See*, *e.g.*,

*In re Lone Pine Res. Inc.*, No. 13-12487 (BLS) (Bankr. D. Del. Oct., 24, 2013) [D.I. 64] (order

granting provisional relief, including recognition and enforcement of the initial order entered in

the CCAA proceeding, and application of section 362); *In re Catalyst Paper Corp.*, No. 12-

10221 (PJW) (Bankr. D. Del. Jan. 19, 2012) [D.I. 22] (order granting provisional relief,

including application of sections 362 and 365(e)); *In re Arctic Glacier Int'l Inc.*, No. 12-10605

(KG) (Bankr. D. Del. Feb. 23, 2012) [D.I. 28] (order granting provisional relief, including

recognition and enforcement of the initial order entered in the CCAA proceeding, and

application of section 362, 364(e) and 365(e)); *In re Elpida Memory, Inc.*, No. 12-10947 (CSS)

(Bankr. D. Del. Mar. 21, 2012) [D.I. 25] (order granting provisional relief, including application

of section 362); *In re Cinram Int'l Inc.*, No. 12-11882 (KJC) (Bankr. D. Del. June 26, 2012) [D.I.

30] [D.I. 30] (order granting provisional relief, including recognition and enforcement of the

initial order entered in the CCAA proceeding, protections provided by section 364(e) and

application of sections 362 and 365(e)); *In re Angiotech Pharm. Inc.*, No. 11-10269 (KG)

(Bankr. D. Del. Jan. 31, 2011) [D.I. 26] (order granting provisional relief, including application

of section 362 and 365(e)); *In re MAAX Corp.*, No. 08-11443 (CSS) (Bankr. D. Del. July 14,

2008) [D.I. 22] (order granting provisional relief, including section 365(e)).  This Court and

courts in other districts in chapter 15 cases have also, on a provisional basis, recognized DIP

financing and related liens and charges approved by foreign courts and granted DIP lenders

protections afforded by section 364(e) of the Bankruptcy Code.  *See*, *e.g.*, *In re Arctic Glacier*

*Int'l Inc.*, No. 12-10605 (KG) (Bankr. D. Del. Feb. 23, 2012) [D.I. 28] (order entered authorizing

debtors to obtain credit under a DIP facility and grant DIP lenders a charge); *In re Fraser Papers*

*Inc.*, No. 09-12123 (Bankr. D. Del. July 14, 2009) [D.I. 61]; *In re W.C. Wood Corp.*, *Ltd.*, No.

09-11893 (Bankr. D. Del. June 10, 2009) [D.I. 26]; *In re Destinator Techs. Inc.*, No. 08-11003

(Bankr D. Del. May 23, 2008) [D.I. 35].

      42.     Indeed, in the chapter 15 cases filed in connection with the 2014 Restructuring,

this Court entered an order recognizing and enforcing the preliminary order entered in the CBCA

Proceeding and applying sections 362 and 365(e) of the Bankruptcy Code, each on an interim

basis.  *In re Essar Steel Algoma Inc.,* No. 14-11730 (BLS) (Bankr. D. Del. Aug. 20, 2014) [D.I.

96].

### B.      Provisional Relief Is Necessary to Prevent Irreparable Harm and Is Consistent with Public Interest

      43.     Relief pursuant to section 1519 of the Bankruptcy Code is available where the

foreign representative can satisfy the standard for injunctive relief.  11 U.S.C. § 1519(e); *In re*

*Innua Canada Ltd.*, No. 09-16362, 2009 WL 1025088, at *3 (Bankr. D.N.J. Mar. 25, 2009).  In

the Third Circuit, the factors considered for injunctive relief include "(1) whether the movant has

shown a reasonable probability of success on the merits; (2) whether the movant will be

irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in

even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will

be in the public interest."  *United States v. Bell*, 414 F.3d 474, 478 n.4 (3d Cir. 2005) (citing

*ACLU* of *N.J. v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1477 n. 2 (3d Cir. 1996));

*see also Rogers v. Corbett*, 468 F.3d 188, 192 (3d Cir. 2006) (citations omitted); *Kos Pharm.,*

*Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citations omitted).  The Foreign

Representative submits that this standard is satisfied here and, therefore, it is entitled to the

requested provisional relief pursuant to section 1519 of the Bankruptcy Code, including entry of

the Provisional Order.

1.     **There Is a Substantial Likelihood of Recognition of the CCAA Proceeding As a Foreign Main Proceeding and Application of the Requested Additional Bankruptcy Provisions**

44.     The Foreign Representative is likely to succeed in its request for recognition of the CCAA Proceeding and application of section 365, pursuant to the Final Order.  As set forth above, recognition of the CCAA Proceeding as a foreign main proceeding is appropriate because (i) the CCAA Proceeding is a foreign main proceeding within the meanings of sections 101(23) and 1502(4) of the Bankruptcy Code, (ii) Algoma Canada is an authorized foreign representative within the meaning of section 101(24) of the Bankruptcy Code, and (c) the verified chapter 15 petitions were properly filed in accordance with section 1515 of the Bankruptcy Code, accompanied by all fees, documents, and information required by the Bankruptcy Code and the Bankruptcy Rules.  Upon recognition of the CCAA Proceeding, section 362 of the Bankruptcy Code will automatically apply in these chapter 15 cases pursuant to section 1520(a)(1) of the Bankruptcy Code.  11 U.S.C. § 1520(a)(1).

45.     As discussed above, application of section 365 is essential in these cases to preserve Algoma's valuable contractual arrangements, and there are solid legal justifications and precedent for doing so.  The Foreign Representative seeks more limited relief on an interim basis, namely application of section 365(e).  The application of section 365(e) on an interim basis, preventing contract counterparties from terminating their prepetition contracts with Algoma, is entirely consistent with the injunctive relief afforded by the automatic stay under section 362.

46.     Further, as noted above, recognition of the DIP Facility and related liens and charges will provide Algoma with access to the necessary liquidity to pursue its restructuring efforts in the CCAA Proceeding and these chapter 15 cases, thus promoting the fair and efficient administration of a cross-border reorganization procedure that protects the interests of all

stakeholders.  Accordingly, it is likely that Algoma will receive final approval of all of the relief requested on an interim basis.

### 2.   Algoma Will Suffer Irreparable Harm Absent Provisional Relief

47.   Application of provisional relief in these cases is critical to the prevention of irreparable damage to Algoma's business and reorganization proceeding in Canada.  These chapter 15 cases were commenced for the purpose of obtaining the assistance of the Court in respect of the CCAA Proceeding and to give effect in the U.S. to the CCAA Initial Order of the Canadian Court and other protections necessary to preserve the value of Algoma's assets.  As noted in the Recognition and Relief Motion and the Sandoval Declaration, each of the Debtors is either a primary obligor under or guarantor of Algoma's prepetition funded debt, which is governed by U.S. law.  Algoma has assets in the U.S., including bank accounts and leases, as well as customer and supplier contracts governed by U.S. law.  Furthermore, many of Algoma's creditors are in the U.S.  Unless the Provisional Order is entered, Algoma faces the possibility of immediate and irreparable harm caused by actions being brought against the Debtors or their U.S. assets.  This type of decentralized administration of Algoma's assets would be extremely prejudicial to Algoma's reorganization process, would hinder the CCAA Proceeding, and would harm other creditors.

48.   A number of courts have recognized the need to provide provisional relief in a chapter 15 case pending final recognition of a foreign proceeding in order to ensure the orderly distribution of a debtor's assets in a single proceeding and avoid the irreparable harm resulting from piecemeal enforcement across multiple jurisdictions.  *See, e.g., Victrix S.S. Co., S.A. v. Salen Dry Cargo, A.B.*, 825 F.2d 709, 713-14 (2d Cir. 1987) (harm to an estate exists where orderly determination of claims and fair distribution of assets are disrupted); *In re Banco Nacional de Obras y Servicios Publicos, S.N.C.*, 91 B.R. 661, 664 (Bankr. S.D.N.Y. 1988)

(stating that injunctive relief is necessary "to prevent individual American creditors from arrogating to themselves property belonging to the creditors as a group"); *In re Lines*, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988) (stating that "the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury").

49.     Unless the Provisional Order is granted and all creditors are enjoined, Algoma faces the risk that creditors may take enforcement actions or attempt to recover against its U.S. assets, as well as the risk that contract counterparties, such as Cliffs, may refuse to perform under prepetition contracts.  Such actions would diminish the value of Algoma's assets and cause significant delay and disruption to Algoma's restructuring process.  The relief requested herein is necessary to protect against these risks.  The purpose of chapter 15 is to provide such protection by, among other things, ensuring that *all* of a debtor's creditors are subject to a stay, thereby preventing some creditors from obtaining an unfair advantage over others.  *See* 11 U.S.C. § 1501.

50.     Similarly, Algoma also will suffer immediate and irreparable harm unless it can access the DIP Facility approved by the Canadian Court.  Algoma currently is operating under significant liquidity constraints and requires immediate access to the DIP Facility to fund working capital requirements, capital expenditures, general corporate expenses, and the costs of administering its bankruptcy cases.  The proposed DIP Lenders have conditioned availability under the DIP Facility on, among other things, the entry of the Provisional Order satisfactory to them, including provisional recognition of the DIP Facility and related liens and charges and the grant of protections afforded under section 364(e) by the Court to the DIP Lenders.  If the interim requested relief is not granted, it is likely that Algoma will be unable to secure necessary goods, and it is possible that it will lose customers, and may not be able to maintain the operation

of its business as a going concern.  In addition to providing Algoma with the liquidity necessary to operate during these cases, the DIP Facility will help to preserve Algoma's business by providing assurance to its suppliers, customers, and employees that Algoma will be able to maintain its business operations and satisfy its obligations pending the outcome of these cases and the CCAA Proceeding.

### 3.    Provisional Relief Will Benefit Creditors

51.    In contrast to the hardships described above, preservation of the *status quo* through imposition of the automatic stay, provisional approval of the DIP Facility, and prevention of contract termination while the Foreign Representative and Algoma undertake the reorganization process in the CCAA Proceeding will not prejudice creditors.  Indeed, creditors as a whole will benefit from such relief.  The relief requested in the Recognition and Relief Motion is intended to be temporary, extending only through the disposition of the Petitions for Recognition.  If recognition of the CCAA Proceeding is granted, much of the same relief being requested on a provisional basis will come into effect automatically.  Moreover, the Provisional Order specifically provides that any creditor that believes it has been harmed by the provisional relief granted therein may file a motion with the Court seeking relief therefrom.  Granting the request for provisional relief actually will benefit Algoma's creditors because it will ensure the value of Algoma's assets are preserved and maximized for the benefit of and fair distribution to all creditors.

### 4.    Public Interest Favors Granting Provisional Relief

52.    Granting the provisional relief requested in the Recognition and Relief Motion will help advance the purpose and objectives of chapter 15 "to provide effective mechanisms for dealing with cases of cross-border insolvency," promote cooperation between U.S. and foreign courts, provide greater legal certainty for trade and investment, ensure the fair and efficient

administration of cross-border insolvencies in a manner that protects the interests of the debtor and all creditors and other interested entities, protect and maximize the value of the debtor's assets, and facilitate the rescue of financially troubled businesses.  11 U.S.C. § 1501(a)(1)-(5); *see also In re SPhinX, Ltd.*, 351 B.R. at 112; *In re Bear Stearns*, 374 B.R. at 126.  Accordingly, the provisional relief requested is consistent with the public policy embodied in chapter 15 of the Bankruptcy Code and will promote the fair and efficient administration of this cross-border insolvency proceeding.

53.     For the reasons set forth herein, the Foreign Representative respectfully requests that, pending the hearing on the Final Order, the Provisional Order be approved in all respects and that the terms and provisions of the Provisional Order be implemented and that, after the Final Hearing, the Final Order be approved in all respects and the terms and provision of the Final Order be implemented.

WHEREFORE, the Foreign Representative respectfully requests that this Court grant the relief requested in the Petitions for Recognition, and such other and further relief as may be just and proper.

Dated: November 9, 2015
      Wilmington, Delaware

*/s/ Mark D. Collins*
RICHARDS, LAYTON & FINGER, P.A.

Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Amanda R. Steele (No. 5530)
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Telephone:     (302) 651-7700
Facsimile:     (302) 651-7701
Email:        collins@rlf.com
Email:        defranceschi@rlf.com
Email:        steele@rlf.com

-and-

WEIL, GOTSHAL & MANGES LLP

Ray C. Schrock, P.C. (*pro hac vice* pending)
Matthew S. Barr (*pro hac vice* pending)
767 Fifth Avenue
New York, New York  10153
Telephone:     (212) 310-8000
Facsimile:     (212) 310-8007
Email:        ray.schrock@weil.com
Email:        matt.barr@weil.com

*Attorneys for the Foreign Representative*
