## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------------x

*In re:*

**ESSAR STEEL ALGOMA INC.,** *et al.,*[1]

      **Debtors in a foreign proceeding.**

--------------------------------------------------------------x

:    **Chapter 15**
:
:    **Case No. 15-12271 (BLS)**
:
:    **(Jointly Administered)**
:
:    **Hearing Date:  December 2, 2015 at 12:00 p.m. (ET)**
:    **Objection Deadline:  November 25, 2015 at 4:00 p.m. (ET)**
:
:    **Re:  Docket Nos. 1, 8**

### OBJECTION OF CLIFFS TO RECOGNITION OF FOREIGN PROCEEDING AND RELATED RELIEF AND RESERVATION OF RIGHTS

The Cleveland-Cliffs Iron Company, Northshore Mining Company, and Cliffs Mining Company (hereinafter "Cliffs"), parties in interest in the Chapter 15 proceeding, hereby submit this objection (the "Objection") to the Chapter 15 Petition for Recognition of a Foreign Proceeding submitted by Essar Steel Algoma Inc. ("Algoma") in its capacity as the foreign representative (the "Foreign Representative") in the Foreign Debtors' proceedings under the Companies' Creditors Arrangement Act (the "CCAA") pending before the Ontario Superior Court of Justice (the "CCAA Proceeding").  In support of this Objection, Cliffs respectfully represents as follows:

---

[1] The Debtors in the foreign proceeding and the last four digits of each Debtor's United States Tax Identification Number, Canadian Business Number, Provincial Corporation Number, or Netherlands Chamber of Commerce Number, as applicable, are as follows:  Essar Steel Algoma Inc. (0642), Essar Steel Algoma Inc. USA (8788), Essar Steel Algoma (Alberta) ULC (6883), Essar Tech Algoma Inc. (8811), Algoma Holdings B.V. (1679), and Cannelton Iron Ore Company (9965).  The Debtors' principal offices are located at 105 West Street, Sault Ste. Marie, Ontario P6A 7B4, Canada.  (Referred to herein collectively as the "Foreign Debtors")

## PRELIMINARY STATEMENT

1.    The Foreign Debtors seek entry of a broad recognition order in this Court in an effort to bind this Court to automatic acceptance of rulings in the CCAA Proceeding far beyond what chapter 15 envisions and to avoid the Court reexamining an extraordinary, interim order the Foreign Debtors hope to obtain in the CCAA Proceeding.  This Court should reject the Foreign Debtors' attempt to bind, and prejudice the rights of, U.S. creditors without the review required by the Court under section 1522 of the Bankruptcy Code.

2.    In the CCAA Proceeding, the Foreign Debtors are seeking an order (the "CCAA Order") purporting to require Cliffs to resume performance of a contract terminated on October 5, 2015, weeks before the commencement of the CCAA Proceeding and the filings in this Court.  Recognition of the CCAA Order (if obtained) would usurp a non-core state law claim already pending in federal district court in Ohio and grant the CCAA court power to order mandatory, interim injunctive relief outside of Canada and in the United States.[2]  That is no doubt why the Foreign Debtors seek the broad recognition order rather than a later application to this Court for specific recognition when and if the CCAA Order is obtained.[3]

3.    The Foreign Debtors have already hedged their bets by filing an adversary proceeding and a motion to compel in this Court, implicitly recognizing that the contract at issue

---

[2] Whether Cliffs validly terminated the parties' previous supply agreement is an issue fully before the N.D. Ohio in that pending litigation.  The Ohio court has already decided that Algoma breached the parties' agreement with respect to the payment and delivery terms for at least the 2014 nomination, and a trial on the remaining disputes, including the termination, was set to begin on December 7, 2015.  (*See* Order, *The Cleveland Cliffs Iron Company, et al. v. Essar Steel Algoma Inc.*, No. 1:15-cv-0063 (N.D. Ohio Oct. 7, 2015) [D.I. 60] [hereinafter *Cliffs v. Essar*]; Minutes of Proceeding, *id.* (July 21, 2015) [D.I. 33].)  Algoma's bankruptcy filings have stayed that litigation, but they should not change the forum for adjudication.  For this and other reasons, the District Court of Delaware should withdraw the reference and transfer the adversary proceeding back to the N.D. Ohio.  Cliffs is separately filing a motion to withdraw the reference in the District Court of Delaware.

[3] Indeed, Algoma has told this Court that it would only seek specific relief against Cliffs here in this Court if it is not successful in the CCAA Proceeding.  *See* First Day Hr'g Tr. at 15-16 (noting Algoma would seek relief related to Cliffs in the U.S. only if the Canadian Court does not provide relief sought); D.I. 8 at 13, ¶ 33, fn. 4 (noting Algoma would seek relief in either this Court or the Canadian Court).

is a U.S. asset.[4]  But the Proposed Final Recognition Order (D.I. 8, Ex. B) (the "Proposed Recognition Order") includes a provision that section 365 "shall hereby apply" without further consideration of the individual contracts implicated.  (Proposed Recognition Order at 6, ¶ 5.)  In effect, the Foreign Debtors wish to obtain a favorable ruling as to the Agreement in the CCAA Proceeding, and then use the automatic application of section 365 sought in this Court to allow it to enforce the Agreement as interpreted by the Canadian Court without further review.  This is a blatant attempt to avoid the application of section 1522.  The only manner in which section 365 can be applied in a chapter 15 proceeding is through section 1521, which necessitates that the Court consider the rights and protections due to other parties under section 1522.

4.       The Foreign Debtors' request for an overly broad recognition order should be denied, and the Court should make clear that any order purporting to require performance in the U.S. will be examined independently by this Court after careful consideration and protection of the rights of Cliffs in these matters.

**BACKGROUND**

A.       **The Pellet Agreement.**

5.       Cliffs had a decades-long relationship with Essar Steel Algoma Inc.'s predecessor, Algoma Steel Inc. ("Old Algoma"), which gave rise to the Pellet Sale and Purchase Agreement (the "Agreement").  The Agreement provided that Algoma was to pay for and take delivery of, and Cliffs was to supply, all of Algoma's yearly requirements of iron ore pellets ███

██████████   each calendar year through 2016.  Essar Global Limited acquired Old Algoma in 2007, and Essar Steel Algoma Inc. became the successor-in-interest to Old Algoma's rights and

---

[4] Given the limited jurisdiction of this Court in a chapter 15 case, this was the only manner in which Algoma could have argued that jurisdiction should lie in this Court.

obligations under the Agreement. As amended, the Agreement extended through 2024. (Affidavit of Terrence R. Mee at ¶ 5 [hereinafter "Mee Aff."].)

6.     The Agreement set forth the processes by which Algoma declared its annual requirements for iron ore, how it paid for that ore, and how it was to take delivery of the ore. For each year of the Agreement, Algoma was to provide its "nomination"—the amount of ore it required—for the following calendar year. (Mee Aff. ¶ 12; *id.* Ex. 1 at § 5.) Algoma was to take and pay for its annual nomination within the calendar year ███████████, consistent with strict payment requirements. (*Id.* Ex. 12 at §§ XII-XIII, XIV.) Under a recent amendment, Cliffs also included a ███████ credit payment ██████████████████████ if Algoma ████████████████████████ in 2013. (*Id.* § VII.) Algoma's obligations to take ████████ and pay on time were at the heart of the parties' bargain. Just as Algoma states that a consistent supply of pellets helped it to plan its production and staffing, Algoma's ██████ obligations allowed Cliffs to plan and manage its production and staffing, as well as project its revenue and expenses, while balancing the needs of its other customers in an orderly and efficient manner. (Mee Aff. ¶ 12.) In exchange, Algoma received a ████ price and a secure and consistent supply for the iron ore pellets it uses in its steel making operations. This was the bargain that the parties struck.

7.     Following Algoma's acquisition of Old Algoma, the parties' relationship began to become more difficult, necessitating ten amendments to the Agreement in order to help Algoma through its financial difficulties and mitigate Algoma's repeated difficulties in meeting its payment and delivery obligations. (Mee Aff. ¶¶ 6-8.) (Prior to Algoma's acquisition, the parties had performed their obligations under the Agreement with only one technical amendment. (*Id.* ¶ 6.) For the last several years, the contract has been a one-way street. While

Algoma expected Cliffs to honor the price and provide pellets whenever Algoma demanded, Algoma failed to take its nominated tonnage or take and pay ████████. (*Id.* ¶¶ 13-21, 23, 27-36; *id.* ¶ 26, Ex. 24 (Order at 11, *Cliffs v. Essar* (Oct. 7, 2015) [D.I. 60]).) In short, Algoma deprived Cliffs of the benefits of a long term agreement. (*Id.* ¶ 13.)

**B.    The Prior Pending Ohio Litigation Between Cliffs and Algoma.**

8.    On January 12, 2015, Cliffs filed suit against Algoma in the U.S. District Court for the Northern District of Ohio for breach of contract and declaratory judgment based on breaches of the Agreement going back to 2013 (the "Ohio Litigation"). (Mee Aff. ¶ 22, Ex. 19 (Compl., *Cliffs v. Essar* (Jan. 12, 2015) [D.I. 1]).) Algoma answered and filed counterclaims (including a claim for "excessive moisture") on February 11, 2015. (*Id.* ¶ 22, Ex. 19 (Ans., *Cliffs v. Essar* (Feb. 11, 2015) [D.I. 17]).) On August 31, 2015, Cliffs amended its Complaint to include claims for additional breaches and violation of Ohio trade secret law. Cliffs also sought a declaratory judgment that Algoma's material breaches of the Agreement had substantially impaired the value of the Agreement. (*Id.* ¶ 27, Ex. 25 (Am. Compl., *Cliffs v. Essar* (Aug. 31, 2015) [D.I. 43]).)

9.    Judge Donald C. Nugent set the case for trial on December 7, 2015 and set the discovery deadline for October 30, 2015. (*Id.* ¶ 22, Ex. 19 (Minutes of Proceeding, *Cliffs v. Essar* (July 21, 2015) [D.I. 33]).) Since early 2015, the parties had engaged in extensive written discovery and third party discovery and conducted inspections of each other's facilities.

10.    On July 31, 2015, Cliffs filed a motion for partial summary judgment on the issues of whether Algoma breached the Agreement as to its 2014 nomination of iron ore and on Algoma's "excessive moisture" claim. (*Id.* ¶ 26, Ex. 23 (Mot. Partial Summ. J., *Cliffs v. Essar* (July 31, 2015) [D.I. 35]).) On October 7, 2015, Judge Nugent ruled in Cliffs' favor on Algoma's moisture claim. (*Id.* ¶ 26, Ex. 24 (Order at 15, *Cliffs v. Essar* (Oct. 7, 2015) [D.I.

60])).)  On Cliffs' breach of contract claim with respect to Algoma's 2014 nomination, Judge Nugent held that "Essar [Algoma] failed to meet its annual requirements [in 2014] by a margin of at least 500,000 tons."  (*Id.* (Order at 11).)  The Court found as a matter of law that Algoma had breached the Agreement as to its 2014 nomination.  (*Id.*)

11.     During the pendency of the Ohio Litigation, Algoma's conduct went from bad to worse.  Algoma fell even further behind in its obligations to pay for and take iron ore than what had prompted Cliffs to sue in the first place.  By September 30, Algoma had taken only ███████ tons against a 2015 nomination of ████████ tons.  (*Id.* ¶¶ 28, 30, Ex. 26.)  By October, Algoma was about ██████████ behind on what it should have paid Cliffs in 2015 for deliveries that should have already been taken.  (*Id.* ¶ 40.)  Algoma also owed Cliffs another ████ ███████ in true-up payments for 2013, 2014, and the first two quarters of 2015 for ore Algoma received and consumed.  (*Id.* ¶ 42.)  Judge Nugent's October 7 ruling on Cliff's motion for partial summary judgment removed the excuses Algoma made for millions in missed payments.

12.     In light of Algoma's past and continually worsening non-performance, and because Algoma's breaches had substantially impaired the value of the Agreement, Cliffs terminated the Agreement effective October 5.  (*Id.* ¶¶ 36-37, Ex. 30.)[5]  This prompted Algoma to file for a temporary restraining order and preliminary injunction to compel Cliffs to continue to supply Algoma.  (*Id.* ¶ 43, Ex. 32 (Def.'s Mot. for T.R.O., *Cliffs v. Essar* (Oct. 6, 2015) [D.I. 55]; Def.'s Mot. for Prelim. Inj., *id.* (Oct. 6, 2015) [D.I. 56]).)  After the motions were fully

---

[5] In its letter of termination, as an alternative basis for withholding supply Algoma under the terms of the Agreement, Cliffs cited § 7(e), which provides:

> In the event that Algoma shall fail to make payment when due of any amounts, Cliffs in addition to all other remedies available to Cliffs in law or equity, shall have the right, but not the obligation, to withhold further performance by Cliffs under this Agreement until all claims Cliffs may have against Algoma under this Agreement are fully satisfied.

briefed by both parties and as the parties were preparing their hearing materials, including exhibits and witnesses, Algoma withdrew its motions on October 15, stating that it had found alternate suppliers that obviated its need to compel Cliffs' performance. (*Id.* ¶ 49, Ex. 35 (Def.'s Notice of Withdrawal of Mot. for T.R.O. and Mot. for Prelim. Inj., *Cliffs v. Essar* (Oct. 15, 2015) [D.I. 68]).)

13.     By the time discovery officially closed on October 30, 2015, Algoma had not yet finished its document production and as a result had refused to schedule depositions. (*Id.* ¶ 50, Ex. 36 (Pls.' Opp'n to Mot. for Change of Trial Date & New Case Schedule at 1-5, *Cliffs v. Essar* (Nov. 5, 2015) [D.I. 76]).) Although the schedule was tight, Cliffs was prepared to go to trial on December 7, 2015, and desired to keep the court-ordered schedule. (*Id.*)

14.     At the time that the Foreign Debtors filed the CCAA Proceeding and their chapter 15 petition in this Court, Algoma had two motions pending in the Ohio Litigation that had been fully briefed but not yet decided by the Ohio court. First, on October 23, 2015, Algoma had filed a motion for reconsideration of the October 7 order granting partial summary judgment on Algoma's excessive moisture counterclaim, which was fully briefed as of November 6. (*Id.* ¶ 51, Ex. 37 (Def.'s Mot. for Recons., *id.* (Oct. 23, 2015) [D.I. 71]; Pls.' Opp'n to Mot. for Recons., *id.* (Oct. 30, 2015) [D.I. 72]; Def.'s Reply in Supp. of Mot. for Recons., *id.* (Nov. 6, 2015) [D.I. 77]).) Second, on October 30, 2015, Algoma had filed a motion to change the trial date, which Cliffs had opposed on November 5. (*Id.* ¶ 50, Ex. 36 (Def.'s Mot. for Change of Trial Date & New Case Schedule, *id.* (Oct. 30, 2015) [D.I. 73]; Pls.' Opp'n to Mot. for Change of Trial Date & New Case Schedule, *id.* (Nov. 5, 2015) [D.I. 76]).)

**C.     Cliffs and Algoma Are Not Currently in a Supply Relationship.**

15.     Before the Foreign Debtors commenced this proceeding, Cliffs and Algoma had ceased to be in a supply relationship, and that relationship ended due to Algoma's conduct, not Cliffs'.

16.     As of the termination, Algoma had taken only ████████ tons of its 2015 nomination. (Mee ¶ 38.) This was no accident. Algoma's management made clear that it managed its inventory on a "just in time" basis to take only what it needed, without regard to its obligations under the Pellet Agreement. (*Id.* ¶ 35.) On September 18, Cliffs observed Algoma's ore yard, which stood almost completely empty, save for a few recent vessel deliveries loaded in Michigan the week of the inspection. (*Id.* ¶ 34.) By contrast, Cliffs' ore yard held nearly ████ ████████ of ore that Algoma should have taken by that point in the year. (*Id.*) Devbrat Dutta, Algoma's Superintendent of Coke and Ironmaking, explained that Algoma views its stock rate and inventory purchasing needs as a "just in time" arrangement such that it would obtain pellet inventory "just in time" for its production needs. (*Id.*) Algoma's statements and actions show that it treated Cliffs as its own private stockpile under the Agreement, leaving Cliffs with all the risk. This is not what the parties agreed to.

17.     In effect, Algoma wants to write itself a short-term contract with price and other terms more favorable to Algoma—precisely what Algoma attempted to do with its TRO motion. By withdrawing its motion and filing this proceeding, Algoma has delayed adjudication of whether the Agreement was validly terminated by the court most familiar with the dispute, and in which the issue was ready to be tried.

**D.     Cliffs' Termination Is Not the But For Cause of the CCAA Proceeding and Chapter 15 Case.**

18.     Having ignored its duties under the Agreement, which purportedly left it with an inventory well below its needs, Algoma now seeks to use the courts to force its former supplier to supply it again at the reduced price in the Agreement, despite its inability to live up to its side of the bargain and to provide the consideration for that reduced price or volume purchases on a regular schedule, set in advance, with consistent pro rata payments and deliveries.

19.     Algoma created its own supply shortage by failing to pay for and take delivery of the pellets according to the ▮▮▮▮ delivery requirements of Agreement. These and other repeated and continuing failures by Algoma led to Cliffs' termination of the Agreement. In particular, although obligated to take delivery of its nominated tonnage ▮▮▮▮▮▮▮▮ during the calendar year—the Agreement required Algoma to take delivery of ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Mee Aff. ¶¶ 10-11, Ex. 12 §§ XIII, XIV)—by the time of termination, Algoma had taken delivery of only ▮▮▮▮ tons of its 2015 nomination of ▮▮▮▮ tons—46.325%—and had taken these tons only from April 25 to October 7 (*Id.* ¶¶ 25, 38). Algoma has now said it needs to take delivery of ▮▮▮▮ tons in the next 4.5 months to get it through to March 2016, including up to 575,000 tons that it seeks from Cliffs because it has secured at least ▮▮▮▮ tons through other sources. (*Id.* ¶ 52, Ex. 38 (Mot. R., Marwah Aff. at ¶ 48, *In re Essar Steel Algoma Inc.*, No. CV-15-000011169-00CL (Can. Ont. Sup. Ct. J. Nov. 18, 2015)).)

20.     Cliffs has attempted to negotiate a resolution. Immediately after terminating the Agreement on October 5, Cliffs made clear to Algoma that it was willing to supply iron ore on terms more consistent with Algoma's just-in-time approach to its inventory. On October 6, Cliffs reached out to Algoma to discuss supplying Algoma with pellets on commercially reasonable terms consistent with a just-in-time iron ore supply arrangement. (*Id.*

¶ 44.)  The parties did not reach an agreement.  On October 12, 2015, despite requesting a meeting, Algoma failed to meet with Cliffs to negotiate the terms of a short term arrangement. (*Id.* ¶ 48.)  Algoma then broke off negotiations after announcing on October 15 that it had secured pellets from other sources.  (*Id.* ¶ 49.)  Since October 15, 2015, Algoma has not approached Cliffs asking Cliffs to supply on a short term or any other basis.  (*Id.* ¶ 53.)

     **E.**     **The Foreign Debtors Have Now Filed a Critical Supplier Motion in the CCAA Proceeding.**

     21.     On November 18, 2015, the Foreign Debtors filed a motion in the CCAA Proceeding seeking to declare Cliffs to be a Critical Supplier to Algoma under CCAA § 11.4 (the "Critical Supplier Motion").  (Mee Aff. ¶ 52, Ex. 38 (Mot. R., *In re Essar Steel Algoma Inc.*, No. CV-15-000011169-00CL (Can. Ont. Sup. Ct. J. Nov. 18, 2015) [hereinafter "Critical Supplier Mot."]).)  This motion seeks an order from the Canadian Court to "compel[] Cliffs to continue to supply iron ore pellets on terms and conditions consistent with the existing supply relationship or that the Court considers appropriate (to be set out in a schedule to be attached to the Order, if granted)."  (Critical Supplier Mot. at 2, ¶ 1(c).)

     22.     Algoma has not agreed to a business deal, and instead has opted to try to enlist the Canadian Court to impose pricing and other terms on Cliffs to which Algoma is not entitled under an Agreement that Algoma already has been judicially determined to have breached by a U.S. court.  On this and other bases, Cliffs will be filing an opposition to the Critical Supplier Motion in the CCAA Proceeding.

## OBJECTION

     **A.**     **The Proposed Recognition Order Seeks Overbroad, Blanket Relief Without Due Consideration of Other Parties' Interests.**

     23.     The purpose and intent of relief granted upon recognition of a debtor's foreign proceeding is to ensure that a debtor's assets and affairs in the United States are protected

during the administration of that proceeding.  *See* 11 U.S.C. § 1520(a).  Like section 362, which

section 1520 makes applicable, section 1520 is not intended to be used as a sword, but as a

shield.  Similarly, discretionary relief under section 1521 is designed simply to provide the

debtor with protection necessary to facilitate its foreign reorganization proceedings, while at the

same time balancing the playing field by protecting the interests of the debtor's creditors.  *See In

re Atlas Shipping A/S*, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009) (noting the grant of

discretionary relief under § 1521(a) is necessary to further the purposes of Chapter 15 and

protect the debtor's assets and the interests of creditors).

      24.    The scope of the discretionary, additional relief requested under

section 1521 in the Proposed Recognition Order, without explanation, goes far beyond that

which is required to protect the Foreign Debtors' businesses or facilitate their reorganization

efforts in the CCAA Proceeding.  The Proposed Recognition Order would have this Court give

blanket recognition to "[t]he CCAA Initial Order, including any extensions, amendments, or

modifications thereto" (p. 5, ¶ 3), "give[] full force and effect" to "the CCAA Proceeding and the

CCAA Initial Order, and the transactions consummated or to be consummated thereunder" (p. 6,

¶ 6), and apply sections 362 and 365 without further consideration or analysis (p. 6, ¶ 5).  The

Foreign Debtors effectively seek to use this Court to enforce extraterritorial rulings, including

potential rulings of which neither the Court nor parties in interest are yet aware, without any

Court intervention or due process afforded to creditors and parties in interest.  This type of broad

relief is not available under U.S. law.

      25.    A debtor seeking chapter 15 recognition and the protections afforded

under the Bankruptcy Code cannot avoid consideration of other parties' interests.  "Chapter 15,

like the Model Law, anticipates the provision of particularized protection, as stated in §

1522(a)," when a Court is requested to provide discretionary relief under section 1521. *Jaffé v. Samsung Elecs. Co.*, 737 F.3d 14, 29 (4th Cir. 2013). "Chapter 15 does not require a U.S. bankruptcy court, in considering a foreign representative's request for discretionary relief under § 1521, to blind itself to the costs that awarding such relief would impose on others under the rule provided by the substantive law of the State where the foreign insolvency proceeding is pending." *Id.* Indeed, "[t]he principle of comity has never meant categorical deference to foreign proceedings." *In re Treco*, 240 F.3d 148, 157 (2d Cir. 2001).

      **1.**     **The Foreign Debtors' request is overly broad in seeking recognition of "any extensions, amendments, or modifications thereto" that may be made to the CCAA Initial Order.**

26.     The Foreign Debtors request that this Court recognize and "give[] full force and effect in the U.S." to "[t]he CCAA Initial Order, including any extensions, amendments, or modifications thereto." (Proposed Recognition Order at 5, ¶ 3.) No party, other than perhaps the Foreign Debtors, knows what any future "extension[], amendment[], or modification[]" to the CCAA Initial Order may say. The Foreign Debtors should not be allowed to obtain pre-recognition of rulings yet to come in the CCAA Proceeding without a full and fair consideration by this Court. Cliffs requests that the language "including any extensions, amendments, or modifications thereto" be deleted from the Proposed Recognition Order.

27.     The Foreign Debtors' Critical Supplier Motion is but one example of how this broad relief could be used to Cliffs' detriment. Although the Foreign Debtors have asked the Canadian Court for a separate order as to Cliffs and Algoma, it is unclear whether the Canadian Court would enter a wholly separate order, or would enter an "extension[], amendment[], or modification[]" to the CCAA Initial Order, which already deals with a critical supplier determination and critical supplier charge for the suppliers Algoma requested as part of the initial filings. If a critical supplier order compelling Cliffs to provide ore could be included in the

CCAA Initial Order, then the language used regarding any extension, amendments or modifications is overly broad.

28.     Cliffs recognizes that this and other Bankruptcy Courts have approved proposed final recognition orders with this language, as noted in the Foreign Debtors' motion. (D.I. 8 at 24, ¶ 54.)  However, in none of these prior cases had the debtor been attempting to use chapter 15 recognition to compel another party to perform an earlier terminated contract.  Nor was this broad relief objected to in any of those cases.  Indeed, in the two cases where a Critical Supplier determination had been made under the CCAA and an order entered, these decisions had been made by the Canadian court in each case prior to the U.S. court's decision on the requested recognition under chapter 15.  *Compare In re Catalyst Paper Corp.*, Case No. 12-10221 (PJW) (Bankr. D. Del. Mar. 5, 2012) [D.I. 89] *with In re Catalyst Paper Corp.*, No. S120712 (Can. Sup. Ct. B.C. Feb. 7, 2012) (Critical Supplier order); *compare In re Arctic Glacier Int'l Inc.*, Case No. 12-10605 (KG) (Bankr. D. Del. Mar. 16, 2012) [D.I. 70] *with In re Arctic Glacier Income Fund*, No. CI 12-01-76323 (Can. Man. Q.B. Winnipeg Feb. 22, 2012) (Initial Order with Critical Supplier determination).

### 2.     The Foreign Debtors' request is overly broad in seeking pre-recognition of proceedings and rulings yet to occur.

29.     In addition to the recognition of any alterations to the Initial Order that the Foreign Debtors seek in paragraph 3 of the Proposed Recognition Order, the Foreign Debtors also request that this Court "give[] full force and effect in the U.S." to all "transactions consummated or to be consummated" in the CCAA Proceeding or through the CCAA Initial Order and to make these "transactions" binding.  (Proposed Recognition Order at 6, ¶ 6.)[6]  Cliffs

---

[6] Although this language, like the other broad relief Algoma seeks, has been adopted in other cases, it likewise was not objected to in any of those cases.

should not be put in the position to parse through exactly what the vague language "CCAA Proceeding" and "the transactions consummated or to be consummated thereunder" means. The Court should not give broad pre-recognition to things that have yet to happen. If the Canadian Court enters the requested Critical Supplier order, or otherwise approves a "transaction" forcing Cliffs to deliver product to Algoma, this language could provide full recognition without further review by this Court, which would be wholly inappropriate.

### 3. The Foreign Debtors' request is overly broad in seeking blanket application of § 365 without the protections of § 1522.

30.    The Foreign Debtors request that this Court order that section 365 "shall hereby apply" without further consideration of the individual contracts implicated. (Proposed Recognition Order at 6, ¶ 5.) In effect, Algoma is attempting to get application of section 365 via section 1521 and to be able to assume contracts within section 365 without the protections of section 1522. The Bankruptcy Code does not sanction this blatant attempt to avoid section 1522. The only manner in which section 365 can be applied in a chapter 15 proceeding is through section 1521, which necessitates that the Court consider the rights and protections due to other parties under section 1522.[7] *See In re Qimonda AG Bankr. Litig.*, 433 B.R. 547, 559-62 (E.D. Va. 2010) (holding § 365 may be applied only as discretionary relief under § 1521 with consideration of § 1522). What Algoma appears to be attempting to do is to make section 365 applicable and then use section 365 against Cliffs without having the Court consider Cliffs'

---

[7] Upon recognition, section 1521(a) of the Bankruptcy Code allows a bankruptcy court discretion, at the request of the foreign representative, to grant a debtor certain additional relief "where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1521(a). Relief under § 365 is available only through the application of § 1521(a)(7): "any additional relief that may be available to a trustee." Section 1521(a) relief, however, is subject to clear constraints, including consideration of § 1522, which states "[t]he court may grant relief under section 1519 or 1521 . . . only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected" and "may subject relief granted under section 1519 or 1521, or the operation of the debtor's business under section 1520(a)(3), to conditions it considers appropriate, including the giving of security or the filing of a bond." *See Jaffe*, 737 F.3d at 24.

rights and the protections afforded under section 1522.  This is not permitted under the Bankruptcy Code.  *See Jaffe*, 737 F.3d at 24-27 (holding that any executory contracts sought to be considered among debtor's assets must be afforded protections of § 365 *and* § 1522 such that foreign representative seeking chapter 15 recognition and relief could not avoid application of § 1522 when seeking discretionary relief afforded under § 1521 in connection with contracts).

31.    Algoma and the Foreign Debtors are not entitled to obtain blanket application of section 365 to any contract they please without consideration of the protections offered by section 1522, no matter how essential they deem a contract.  The Court is not required, in considering the Foreign Debtors' request for discretionary relief to apply section 365 under section 1521, "to blind itself to the costs that awarding such relief would impose on others under the rule provided by the substantive law of the State where the foreign insolvency proceeding is pending."  *Id.* at 29.  Section 1522 "requires the court to ensure that the relief a foreign representative requests under section 1521 does not impinge excessively on any one entity's interests, implying that each entity must receive at least some protection.  And because the interests of the creditors and the interests of the debtor are often antagonistic, . . . providing protection to one side might well come at some expense to the other."  *Id.* at 27.  "The analysis required by section 1522(a) is therefore logically best done by balancing the respective interests based on the relative harms and benefits in light of the circumstances presented, thus inherently calling for application of a balancing test."  *Id.* at 27-28.  Each party that Algoma seeks to bind through section 365 is entitled to receive due consideration of its interests by this Court, including through a full and fair consideration and application of the rights and protections afforded under section 1522 to each party implicated.

**B.    If Approved As Drafted, The Proposed Recognition Order Could Recognize Relief Sought Against Cliffs In The CCAA Proceeding At Odds With Chapter 15's Protections.**

32.    The Foreign Debtors are seeking relief in the CCAA Proceeding with respect to Cliffs that this Court should not enforce and, at a minimum, should not enforce without a thorough analysis and hearing taking into account protections of Chapter 15.

**1.    The Foreign Debtors are seeking unprecedented relief in the CCAA Proceeding that also is unavailable before this Court.**

33.    Having failed to honor its contractual obligations and having refused to come to a commercial resolution on "just in time" terms matching its approach to supply, the Foreign Debtors seek to have the Canadian Court provide Algoma a windfall—supply on the terms it wants, without any of the attendant burdens.  Cliffs and Algoma do not have an existing supplier relationship—Cliffs has not delivered any iron ore pellets to Algoma since October 7, when the last train delivery ██████████████████ finished loading.  (Mee Aff.  ¶¶ 38, 55.) When Algoma filed for CCAA protection and Chapter 15 recognition, the Agreement had been terminated in accordance with Ohio law for over a month.  Having refused Cliffs' reasonable offers for a negotiated resolution, Algoma is attempting to use the CCAA Proceeding to obtain greater rights than it has under state contract law or U.S. bankruptcy law.  Should Algoma succeed on its Critical Supplier Motion in the CCAA Proceeding, the overbroad relief sought in the Proposed Recognition Order would give the related order automatic recognition.

34.    There is no precedent for this relief under the CCAA.  There are no prior cases in which a court applying the CCAA deemed a party not currently in a supplier relationship with the debtor a "critical supplier" and compelled that party to supply the debtor.  *See* CCAA § 11.4(1) ("On application by a debtor company and on notice to the secured creditors who are likely to be affected by the security or charge, the court may make an order declaring a person to

be a critical supplier to the company if the court is satisfied that *the person is a supplier of goods or services to the company* and *that the goods or services that are supplied* are critical to the company's continued operation.") (emphases added).  Further, the Canadian Court does not have jurisdiction over Cliffs or the Agreement, as it is governed by U.S. law (Ohio) and is performed by Cliffs solely within the United States (Michigan and Ohio).[8]

35.    There also is no support for this relief under U.S. Bankruptcy law.  A debtor cannot compel performance of a terminated executory contract.  "[T]here is no provision of the Code which permits assumption or the curing of defaults in a contract terminated before bankruptcy."  *In re LJP, Inc.*, 22 B.R. 556, 558 (Bankr. S.D. Fla. 1982) ("The explicit provision for assumption of *executory* contracts [in § 365] convinces me that there is no legislative intention to permit assumption or reinstatement of contracts which have expired or have been terminated before bankruptcy." (citing *Matter of Benrus Watch Co. Inc.*, 13 B.R. 331 (Bankr. S.D.N.Y. 1981))).  Where, as here, the contract was terminated under controlling state contract law prior to the bankruptcy filing, the debtor cannot compel reinstatement of the contract, through injunctive relief or otherwise.  *Id.* (denying debtors' motion for mandatory injunction seeking to compel reinstatement of bottling agreement under which debtor had produced and sold Royal Crown Cola because the company had terminated the agreement under state law based on the debtors' financial position and failure to pay before the bankruptcy filing).

36.    Indeed, the Foreign Debtors have provided no support for their requested application of section 365 to a contract terminated prior to the bankruptcy filing date with a former supplier.  The mere fact that the supply contract was "a valuable and important asset"

---

[8] Algoma states, without explanation, that "contract counterparties, including those whose contracts are exclusively governed by U.S. law, are subject to the jurisdiction of the Canadian Court and bound by the CCAA Initial Order." (D.I. 8 at 13, ¶ 33.)  Cliffs disputes this assertion to the extent that it implies that the Canadian Court has jurisdiction to make any and all determinations with respect to the Agreement.

(D.I. 8 at 13, ¶ 33, fn. 4) or believed to be "essential" (D.I. 9 at 4, ¶ 5) does not give the court discretion to reinstate a contract and compel performance. *See In re LJP, Inc.*, 22 B.R. at 559 (rejecting "the debtor's contention that this court has equitable discretion to reinstate a contract, which has been validly terminated before bankruptcy, because that contract is essential to the debtor's reorganization").[9] "Section 105 'does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.'" *In re Premier Auto. Servs.*, 343 B.R. 501, 515 (Bankr. D. Md. 2006) (quoting *Wilner Wood Prods. Co. v. State of Maine, Dept. of Evtl. Prot.*, 128 B.R. 1, 3 (D. Me. 1991) (citing *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986))).

> **2.      The Foreign Debtors are asking this Court to give blanket recognition and enforcement to orders in the CCAA Proceeding, without considering the protections of Chapter 15.**

37.      The Foreign Debtors have asked the Canadian Court to exercise extraterritorial jurisdiction to enter a mandatory injunction that compels Cliffs to supply pellets to Algoma as if the Agreement were still in force.  Should the Canadian Court grant that request, the overbroad relief sought in the Proposed Recognition Order would give the related order automatic recognition and thrust both courts into the middle of the dispute pending in the Ohio Litigation.

38.      This Court should subject any recognition of such injunctive orders to a full, independent review rather than grant the blanket recognition the Foreign Debtors request. "[R]ecognition under Section 1517 of the Bankruptcy Code is not a 'rubber stamp exercise.'" *In*

---

[9] *See also In re Premier Auto. Servs.*, 343 B.R. 501, 522 (Bankr. D. Md. 2006) (holding bankruptcy filed in bad faith where reorganization depended on entry into long term lease and bankruptcy court "may neither compel MPA [non-debtor] to enter into a long term lease with Premier [debtor holdover tenant] as to Lot 90, nor compel MPA to agree to Premier's sublease of Lot 401" because § 365 does not apply to non-renewed contracts that expired pre-petition and were unenforceable under state law).

*re Ran*, 607 F.3d 1017, 1021 (5th Cir. 2010) (quoting *In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37, 40 (Bankr. S.D.N.Y. 2008)).   Although Cliffs recognizes that the "broad, flexible" approach to comity under Chapter 15 does not require that the relief sought in a foreign proceeding be available in the United States, "[n]evertheless, Chapter 15 does impose certain requirements and considerations that act as a brake or limitation on comity, and preclude granting the relief requested by a foreign representative."   *In re Vitro SAB De CV*, 701 F.3d 1031, 1053-54 (5th Cir. 2012) (denying enforcement of Italian bankruptcy order that purported to permanently enjoin actions brought against debtor's subsidiaries and to discharge obligations and liabilities they owned, although recognition of the bankruptcy proceeding in general was granted).[10]

39.     Moreover, the Foreign Debtors should not be allowed to avoid the well-recognized principle that "judgments of foreign courts awarding injunctive relief, even as to private parties, . . . 'are not generally entitled to enforcement.'"   *Medellin v. Texas*, 552 U.S. 491, 522 (2008) (quoting Restatement (Third) of Foreign Relations Law of the United States § 481, Comment b, p. 595 (1986)).[11]   The order that the Foreign Debtors seek in Canada is for relief that is not available under U.S. law, and they are not entitled to recognition of that order in this proceeding without consideration of Chapter 15's protections.

---

[10] *See also In re Treco*, 240 F.3d at 159 ("A court must consider the effect of the difference in the law on the creditor in light of the particular facts presented."); *In re Sivec SRL*, 476 B.R. 310, 324 (Bankr. E.D. Okla. 2012) ("The fact that priority rules and treatment of claims may not be identical is insufficient to deny a request for comity. What this Court must consider is the effect of that difference on the creditor in light of the existing facts.").

[11] *See also Pilkington Bros. P.L.C. v. AFG Indus. Inc.*, 581 F. Supp. 1039, 1042 (D. Del. 1984) (denying request for a preliminary injunction "that will exactly track the wording of the interim injunctive order issued by the English High Court of Justice" obtained during pendency of arbitration because engaging a second judicial entity into an ongoing proceeding in a foreign country would lead to inconsistent results and confusion between the entities such that enforcement in Delaware was improper).

40.     Cliffs respectfully requests that this Court consider each provision of the Proposed Recognition Order independently for its potential effect on Cliffs and other third parties so as to not allow the Foreign Debtors to receive predisposition of matters yet to be addressed.

### C.     The Underlying Dispute Between The Parties Should Be Decided By, And Is Already Before, The U.S. District Court For The N.D. Ohio.

41.     The Foreign Debtors' Critical Supplier Motion in the CCAA Proceeding seeks an order compelling Cliffs to supply ore as if the Agreement was never terminated and Algoma had not been found in material breach.  (*See* Critical Supplier Mot., Marwah Aff. at ¶ 54).  What Algoma really is trying to do here is to relitigate issues on which it already lost in litigation in the N.D. Ohio and on which it was about to go to trial—the Affidavit of Rajat Marwah filed in support of the Critical Supplier Motion admits "[t]here are a number of material issues in dispute and *in existing litigation in connection with* the Cliffs Contract and *Cliffs' purported termination* thereof" and that Algoma seeks relief in the CCAA Proceeding "[p]ending a resolution of these disputes."  (*Id.*, Marwah Aff. ¶ 7 (emphases added).)

42.     It is undisputed that, immediately after the termination on October 5, Algoma moved on October 6 for a temporary restraining order and preliminary injunction in the Ohio Litigation to compel Cliffs to continue to perform on the ground that the termination was invalid.  (Mee Aff. ¶ 43, Ex. 32 (Def.'s Mot. for T.R.O., *Cliffs v. Essar* (Oct. 6, 2015) [D.I. 55]; Def.'s Mot. for Prelim. Inj., *id.* (Oct. 6, 2015) [D.I. 56]).)  Algoma voluntarily withdrew that petition on October 15.  (Mee Aff. ¶ 49, Ex. 35 (Def.'s Notice of Withdrawal of Mot. for T.R.O. and Mot. for Prelim. Inj., *id.* (Oct. 15, 2015) [D.I. 68]).)  Now over a month later, having filed for bankruptcy in the interim, Algoma seeks to use its bankruptcy proceedings to get the relief that it chose not to pursue in the existing litigation on the same subject.

43.     Whether or not Cliffs validly terminated the parties' previous supply agreement, and thus whether or not Algoma was in breach of its obligations thereunder, are issues that were fully before the N.D. Ohio in that pending litigation at the time that the Foreign Debtors made their CCAA and Chapter 15 filings.  These filings have allowed Algoma to stay the Ohio Litigation, but they should not change the forum for adjudication.  As will be more fully set forth in Cliffs' forthcoming motion to withdraw the reference, the parties' contractual dispute should be decided by the Ohio court.

44.     Cliffs is not unwilling to supply pellets to Algoma.  What Cliffs is unwilling to do is to supply on terms that are onerous and that provide little benefit to Cliffs based on Algoma's failure to live up to its obligations.  Indeed, it was not the failure of Cliffs to negotiate in good faith that created the impasse between the parties following termination, but the inability of the parties to come to terms on a "just in time" supply agreement.  Cliffs cannot agree to supply on terms that do not account and compensate for the risks involved with a short term supply arrangement.

## REQUEST FOR SPECIFIC CHANGES TO FINAL ORDER

45.     Cliffs respectfully requests that any relief provided by a final order balance the interests of the creditors and other affected parties, including Cliffs.  Accordingly, Cliffs believes that the final order should confirm that nothing contained therein shall limit, modify, or exempt the Foreign Debtors from their obligations under Section 1522 of the United States Bankruptcy Code and further clarify that (i) the relief granted is subject to the limitations and protections set forth in sections 361, 362, 364, 365, 1520, 1521, and 1522 (to the extent section 1521 relief as requested by the Foreign Representative is deemed necessary by this Court) and (ii) nothing in the final order shall determine the forum for adjudication of matters implicating U.S. law, which shall be reserved and addressed as contemplated by sections 1525,

1527 and other applicable law.  A proposed final order with Cliffs' requested revisions shown in redline is submitted herewith as Exhibit A.

## **<u>CONCLUSION</u>**

For the reasons set forth above, Cliffs respectfully requests that this Court (i) sustain this Objection, (ii) refrain from issuing any order, including the Proposed Recognition Order, that would give blanket recognition to all orders, rulings, findings, or transactions in the foreign proceeding, (iii) provide Cliffs with adequate protection and/or sufficient protection for its rights in the form and manner set forth above, and (iv) grant to Cliffs such other and further relief as the Court deems just and proper.[12]

---

[12] By submitting this objection, Cliffs is not waiving, and specifically reserves, any rights to assert any and all defenses to any specific relief that has been or may be sought by Algoma or the Foreign Debtors in this Court or in the CCAA Proceeding with respect to Cliffs.  In particular, Cliffs reserves the right to assert any and all defenses to the motion to compel and complaint for declaratory judgment once served and a schedule for adjudication is set. Cliffs further reserves the right to assert any and all defenses to any relief sought impacting Cliffs in the CCAA Proceeding, including the Critical Supplier Motion.  To be clear, any cooperation or compliance that has been or may be offered is without prejudice to Cliffs' position that the Agreement was effectively terminated before Algoma filed for bankruptcy and is, therefore, beyond the reach of the Canadian Court or this Court as an executory contract assumable under section 365.

Dated: November 25, 2015                    Respectfully submitted,


*/s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Tamara K. Minott (No. 5643)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19801
Telephone:      +1.302.658.9200
Facsimile:      +1.302.658.3989
E-mail:      dabbott@mnat.com
             tminott@mnat.com

                    -and-

Robert S. Faxon  (*pro hac vice* pending)
Carl E. Black  (*pro hac vice* pending)
Kristin S.M. Morrison  (*pro hac vice* pending)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114.1190
Telephone:      +1.216.586.3939
Facsimile:      +1.216.579.0212
E-mail:      rfaxon@jonesday.com
             ceblack@jonesday.com
             kmorrison@jonesday.com

Pedro A. Jimenez  (*pro hac vice* pending)
JONES DAY
600 Brickell Avenue
Brickell World Plaza, Suite 3300
Miami, FL 33131
Telephone:      +1.305.714.9701
Facsimile:      +1.305.714.9799
E-mail:      pjimenez@jonesday.com

*Attorneys for*
*The Cleveland-Cliffs Iron Company, Northshore*
*Mining Company, and*
*Cliffs Mining Company*