## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x

                             :

*In re:*                          :      **Chapter 15**

                             :

**ESSAR STEEL ALGOMA INC.,** *et al.,*[1]   :      **Case No. 15– 12271 (BLS)**

                             :

                             :      **(Jointly Administered)**

       **Debtors in a foreign proceeding.**   :

                             :   **Objection Deadline:  July 20, 2016 at 4:00 p.m. (EDT)**

                             :   **Hearing Date:  July 27, 2016 at 1:00 p.m. (EDT)**

                             :

------------------------------------------------------------ x

### MOTION OF FOREIGN REPRESENTATIVE
### FOR ENTRY OF AN ORDER (I) RECOGNIZING CANADIAN
### SALE ORDER, (II) AUTHORIZING AND APPROVING SALE OF U.S. ASSETS
### FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER
### INTERESTS, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF
### CERTAIN EXECUTORY CONTRACTS, AND (IV) GRANTING RELATED RELIEF

Essar Steel Algoma Inc. ("**Algoma Canada**"), in its capacity as the foreign representative (the "**Foreign Representative**") of the above-captioned debtors (collectively, "**Algoma**" or the "**Debtors**"), who have filed an application in a foreign proceeding (the "**CCAA Proceeding**") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**") pending before the Ontario Superior Court of Justice (Commercial List) (the "**Canadian Court**"), respectfully represents:

### Relief Requested

1.     Pursuant to sections 363, 365, 1501, 1507, 1520, 1521, 1525, 1527, and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6004-1 of the

---

[1] The Debtors in the foreign proceeding and the last four digits of each Debtor's United States Tax Identification Number, Canadian Business Number, or Provincial Corporation Number, as applicable, are as follows: Essar Steel Algoma Inc. (0642), Essar Steel Algoma Inc. USA (8788), Essar Steel Algoma (Alberta) ULC (6883), Essar Tech Algoma Inc. (8811), and Cannelton Iron Ore Company (9965).  The Debtors' principal offices are located at 105 West Street, Sault Ste. Marie, Ontario P6A 7B4, Canada.

Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Foreign Representative files this motion (the "**Motion**") seeking entry of an order substantially in the form annexed hereto as <u>Exhibit A</u> (the "**Proposed Order**") (a) recognizing and giving full force and effect to the Approval and Vesting Order to be entered by the Canadian Court (the "**Canadian Sale Order**"),[2] a proposed form of which is attached hereto as <u>Exhibit B</u>, (b) authorizing and approving the sale of property used in connection with Algoma's business that is located within the territorial jurisdiction of the United States (collectively, the "**U.S. Assets**") free and clear of liens, claims, encumbrances, and other interests, pursuant to the terms and conditions set forth in that certain Asset Purchase Agreement (the "**APA**")[3] between Algoma Canada, Essar Steel Algoma Inc. USA ("**Algoma U.S.**", and together with Algoma Canada, the "**Selling Debtors**"), and 1076318 B.C. Ltd. (the "**Buyer**"), a copy of which is attached hereto as <u>Exhibit C</u>, (c) authorizing the assumption and assignment of the Assumed U.S. Contracts (as defined herein) to the Buyer, in accordance with terms and conditions of the APA, and (d) granting certain relief related thereto.

<u>**Jurisdiction and Venue**</u>

2.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.  These cases have been properly commenced pursuant to section 1504 of the Bankruptcy Code by the filing of petitions for

---

[2] The Foreign Representative expects that the Canadian Sale Order will be approved and entered by the Canadian Court before the hearing on this Motion. The Foreign Representative will file a notice of entry of the Canadian Sale Order as soon as practicable after its entry by the Canadian Court.

[3] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the APA.

recognition of the CCAA Proceeding pursuant to 11 U.S.C. § 1515 of title 11 of the United States Code (the "**Bankruptcy Code**").

3.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P), and pursuant to Rule 9013-1(f) of the *Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware* (the "**Local Rules**"), Algoma consents to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4.      Venue is proper before this Court pursuant to 28 U.S.C. § 1410.

## Preliminary Statement

5.      The proposed sale (the "**Sale**") of substantially all of Algoma's property and assets (collectively, the "**Purchased Assets**") in accordance with the terms and conditions of the APA[4] and the Canadian Sale Order represents the favorable culmination of a comprehensive and robust Canadian Court-approved sale and investment solicitation process (the "**SISP**") conducted with the assistance of Algoma's advisors, and under the supervision of the Canadian Court and the Monitor (as defined herein).  The SISP amassed significant interest in Algoma's assets, and ultimately the Buyer submitted the highest and best offer.   Algoma devoted time and resources to identify alternative restructuring opportunities during the CCAA Proceedings but has been unable to secure another actionable proposal.  The Foreign Representative believes that the Sale represents a positive realization of value for Algoma's creditors and other stakeholders.

---

[4] All summaries of the Sale and APA contained herein are for descriptive purposes only, and to the extent there is a conflict between this Motion and the APA or Canadian Sale Order, the APA and Canadian Sale Order shall govern.

6.      Algoma, with assistance from its advisors and as overseen by the Monitor, extensively negotiated the terms of the APA in order to reach the best possible agreement and, as more fully described in the Sandoval Declaration (as defined herein).  Ernst & Young Inc., in its capacity as the Monitor in the CCAA Proceedings (the "**Monitor**"), is supportive of the Sale.

7.      The purchase price provided under the APA is sufficient to satisfy the DIP Facility (including exit fees), and fund any deficiency in an administrative reserve of approximately $47 million, which will first be funded with Algoma's cash.[5]  Furthermore, the purchase price involves the assumption by the Buyer of certain accrued liabilities, including the ABL Facility, as well as a credit bid of obligations under Algoma's Term Loan Facility for certain of Algoma's working capital assets, including cash and accounts receivable, prepaid expenses, and inventory.  The Buyer has not specified an allocation of the purchase price among the Selling Debtors and the Purchased Assets.

8.      The Sale should allow Algoma to complete its restructuring by September 2016, and permit Algoma's business to operate as a going concern without the continued need for the DIP Facility (as defined herein), which matures on August 31, 2016 but may be extended to September 30, 2016.  Should Algoma's restructuring process not be complete by the maturity date of the DIP Credit Agreement (as defined in the APA), Algoma would be forced to extend the DIP Credit Agreement or enter into another postpetition financing agreement, at great cost to Algoma's stakeholders.  Considering that the Debtors have conducted a comprehensive and robust process to solicit both sale and investment opportunities (including alternative restructuring proposals), and given the volatility of steel prices, it is not in the best interest of Algoma's stakeholders to extend the CCAA Proceeding and these chapter 15 cases, especially

---

[5] All references to dollars ($) shall refer to U.S. dollars unless otherwise noted.

RLF1 14779627V.1

considering the expense of administering the insolvency proceedings and the ongoing distraction of management from focusing on operations.

9.      Furthermore, in Algoma's business judgment, the Buyer is well-financed, and is controlled by parties that are experienced in the metals industry and have a strong track record of acquiring and turning around distressed businesses, as well as working constructively with unions.  Notably, the APA requires the Buyer to offer continuing employment to all or substantially all of Algoma's non-unionized employees and it is a condition of the APA that the Buyer will enter into new collective bargaining agreements with Algoma's unionized employees.

10.     Following consummation of the Sale, the going concern business of Algoma will be well capitalized and well financed, as the Buyer will have an asset-based lending revolving credit facility with a minimum of $200 million in available liquidity, and no other debt. Furthermore, KPS will commit an aggregate amount of up to $383 million (and no less than $228 million) into common equity of the Buyer pursuant to an executed commitment letter among the Buyer, KPS, and certain of KPS' affiliates.

11.     For those reasons, and the reasons described more fully herein, this Court's recognition and enforcement of the Canadian Sale Order, approval of the sale of the U.S. Assets free and clear of any and all interests, and approval of the assumption and assignment of the Assumed U.S. Contracts, is in the best interests of Algoma, its creditors, and other stakeholders.

## Background

12.     Algoma operates one of the largest integrated steel manufacturing facilities in Canada, producing high-quality steel and steel products for customers throughout North America.

13.     On November 9, 2015 (the "**Commencement Date**"), Algoma commenced the CCAA Proceeding in the Canadian Court.  That same day, the Canadian Court issued an order

RLF1 14779627V.1

granting certain provisional relief (the "**CCAA Initial Order**") in connection with the CCAA Proceeding.

14.     Subsequently and also on the Commencement Date, the Foreign Representative commenced these chapter 15 cases by filing on behalf of the Original Debtors,[6] among other things, (i) verified chapter 15 petitions seeking recognition by the Court of the CCAA Proceeding as a foreign main proceeding under chapter 15 of the Bankruptcy Code, and (ii) the *Motion of Foreign Representative for Entry of Provisional and Final Orders Granting Recognition of Foreign Main Proceeding and Certain Related Relief Pursuant to Sections 362 364(e), 365, 1517, 1519, 1520, 1521, and 105(a) of Bankruptcy Code filed November 9, 2015* [Docket No. 8] (the "**Recognition and Relief Motion**").

15.     On December 1, 2015, the Court entered the *Final Order Granting Recognition of Foreign Main Proceeding and Certain Related Relief Pursuant to Sections 362, 364(e), 365, 1517, 1519, 1520, 1521, and 105(a) of the Bankruptcy Code* [Docket No. 97] (as has been amended [Docket No. 100] and supplemented [Docket No. 126], the "**Recognition Order**").

16.     The CCAA Initial Order and Recognition Order granted approval of a $200 million debtor in possession financing facility (the "**DIP Facility**") pursuant to the DIP Credit Agreement.  The CCAA Initial Order and Recognition Order authorized the Debtors to pursue all avenues of sale or refinancing of their business or property, in whole or part, subject to the

---

[6] The Original Debtors include Algoma Canada, Algoma U.S., Essar Steel Algoma (Alberta) ULC, Essar Tech Algoma Inc., and Cannelton Iron Ore Company.  On November 19, 2015, Algoma Holdings B.V. ("**Holdings**") filed an application under the CCAA, and the Canadian Court entered an order (the "**Amended and Restated CCAA Initial Order**") on November 20, 2015 granting certain relief in respect of Holdings and other Debtors in connection with the CCAA Proceeding.  Also on November 20, 2016, the Foreign Representative commenced a voluntary chapter 15 case on behalf of Holdings by filing a verified chapter 15 petition seeking recognition of the CCAA Proceeding as the foreign main proceeding with respect to Holdings under chapter 15 of the Bankruptcy Code.  On December 14, 2015, the Court entered the *Supplemental Order Directing Final Recognition Order in Chapter 15 Cases of Essar Steel Algoma, Inc. et al. Be Made Applicable to Algoma Holdings B.V. Pursuant to Section 105(a) of Bankruptcy Code* [Docket No. 126].

RLF1 14779627V.1

provisions of the CCAA and the DIP Credit Agreement.  Furthermore, the DIP Credit Agreement includes a milestone requiring the Debtors to conclude a sale or investment transaction, or plan of compromise or arrangement resulting from the process, by August 31, 2016 (subject to a maximum extension to September 30, 2016, and in any case, not past the maturity of the DIP Credit Agreement).

17.    In accordance with the CCAA Initial Order and the DIP Credit Agreement, the Debtors developed the SISP to solicit interest in and opportunities for a sale, restructuring or recapitalization of Algoma's business.  In developing the SISP, Algoma worked closely with its financial and legal advisors as well as the Monitor, and sought input from a number of its key stakeholders.

18.    On February 10, 2016, the Canadian Court entered an order approving the SISP, which consisted of a two-phase bidding process.  During phase I of the SISP, Algoma (through its advisors) contacted 63 potential purchasers, and received seven phase I bids, four of which were considered qualified bids.  Each of the non-compliant bidders was given the opportunity to address its bid deficiencies.  KPS' phase I bid originally did not provide for a sufficient cash component to satisfy the DIP Facility, the ABL Facility and the Term Loan Facility, as required under the DIP Credit Agreement.  KPS was advised that it needed to increase its purchase price or reach agreement with those lenders.  KPS did engage with the Term Loan Lenders and the Monitor was present at the initial discussions between KPS and the Term Loan Lenders and was provided with periodic updates and draft materials thereafter. The other bidders were encouraged to contact the Term Loan Lenders in connection with their bids as well.

19.    In the second phase of the SISP, Algoma only received one bid, a joint bid from KPS Capital Partners, LP ("**KPS**") and certain of Algoma's prepetition lenders (the "**Term Loan**

RLF1 14779627V.1

Lenders", and together with KPS, the "**Joint Bidders**"), who together own the Buyer, a special purpose entity established pursuant to the terms and conditions of a consortium agreement. Algoma accepted the Joint Bidders' bid as the successful bid, and following hard fought arm's-length negotiations, on or about June 15, 2016, the Selling Debtors and Buyer finalized the APA. The Closing (as defined in the APA) of the Sale is subject to certain terms and conditions in the APA including, among others, approval by the Canadian Court and certain approvals of this Court.

20.     On June 20, 2016, Algoma filed in the CCAA Proceeding a motion for entry of the Canadian Sale Order (the "**Canadian Sale Motion**") approving the APA.  The Canadian Sale Motion is scheduled to be heard by the Canadian Court on July 19, 2016.  The Selling Debtors and the Buyer intend to execute the APA at a later date after the approval of the Canadian Sale Motion.

21.     More detailed information about the Debtors' business and operations, the events leading to the Commencement Date, the SISP, the Debtors' efforts to explore alternative restructuring opportunities, and the facts and circumstances surrounding the CCAA Proceeding and these cases is set forth in:

(a)     the *Declaration of J. Robert Sandoval in Support of (I) Verified Chapter 15 Petitions; (II) Foreign Representative's Motion for Orders Granting Provisional and Final Relief in Aid of Foreign Main Proceeding; and (III) Certain Related Relief* [Docket No. 6]  (the "**First Day Declaration**");

(b)     the *Declaration of Daniel Aronson in Support of  Motion of Foreign Representative for Entry of an Order (I) Recognizing Canadian  Sale Order, (II) Authorizing and Approving Sale of U.S. Assets Free and Clear of all Liens, Claims, Encumbrances, and Other Interests, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and (IV) Granting Related Relief*, filed contemporaneously herewith (the "**Aronson Declaration**");

(c)     the *Declaration of J. Robert Sandoval in Support of Motion of Foreign Representative for Entry of an Order (I) Recognizing Canadian Sale Order, (II) Authorizing and Approving Sale of U.S. Assets  Free and Clear of all Liens,*

8

*Claims, Encumbrances, and Other Interests, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and (IV) Granting Related Relief*, filed contemporaneously herewith (the "**Sandoval Declaration**"); and

(d)     the Fourteenth Report of the Monitor, including certain of the non-duplicative exhibits attached thereto (the "**Monitor's Report**"), which was filed in the Canadian Court on June 30, 2016, and is attached hereto as Exhibit F.

### The Asset Purchase Agreement

22.     Pursuant to Local Rule 6004-1, the following chart summarizes the material provisions of the APA and Canadian Sale Order.  The Foreign Representative believes that the inclusion of these provisions of the APA is fair and reasonable under the circumstances, is the result of good faith, arm's-length negotiations between the Selling Debtors and the Buyer, and is in the best interests of the Debtors, their creditors, and other stakeholders.

| MATERIAL TERMS OF THE APA, PROPOSED ORDER, AND CANADIAN SALE ORDER | |
| --- | --- |
| **Purchaser**<br>Local Rule 6004-1(b)(iv)(A) | The Buyer is not an insider (as defined in section 101(31) of the Bankruptcy Code) of any of the Debtors. |
| **Purchased Assets** | The Purchased Assets are described in Section 2.1 of the APA and include, subject to certain exceptions, substantially all of the Selling Debtors' right, title and interest in, to and under, or relating to, the assets, property and undertaking owned or used or held for use by the Selling Debtors' in connection with Algoma's business. ***See* APA, section 2.1.**<br><br>The Buyer has agreed to purchase all of the Sellers' right, title and interest in and to, *inter alia*, the following assets comprising substantially all of the Selling Debtors' business (as set out more particularly in APA s. 2.1): (a) Cash and Accounts Receivable, except to the extent used to fund the Administrative Reserve; (b) Inventory; (c) Fixed Assets and Equipment; (d) Assumed Contracts; (e) Real Property used in or required for the Business, including the Sellers' main facility located at 105 West St., Sault Ste. Marie, Ontario; (f) and Personal Property Leases, Real Property Leases and Real Property Landlord Leases. |
| **Purchase Price** | The purchase price payable to the Selling Debtors for the Purchased Assets (the "Purchase Price") shall be the total of: (i) cash sufficient to pay the outstanding liabilities under the DIP Facility in full, including exit fees, on the Closing Date (the "Cash Purchase Price"); (ii) a credit bid of the Term Loan debt on the Closing Date, solely with respect to the Selling Debtors' working capital assets (namely, Cash and Accounts Receivable, Prepaid Expenses and Inventory), at the Closing |

| MATERIAL TERMS OF THE APA, PROPOSED ORDER, AND CANADIAN SALE ORDER | |
|---|---|
| | Time (the "Credit Bid"); and (iii) the amount of the Accrued Liabilities. ***See* APA, section 3.1.** |
| **Releases**<br>Local Rule 6004-1(b)(iv)(C) | Except as otherwise contained in the APA (including in Section 7.5(b)), effective as of the Closing, each Selling Debtor releases and forever discharges the Buyer and its respective affiliates, and their respective successors and assigns, and all officers, directors, partners, members, shareholders, employees and agents of each of them, from any and all actual or potential Claims which such Person had, has or may have in the future to the extent relating to the Purchased Assets, the Excluded Assets or the Excluded Liabilities. ***See* APA, section 7.5(a).**<br>The Selling Debtors acknowledge and agree, and the Canadian Sale Order shall provide that, on the Closing Date and concurrently with the Closing, all then existing or thereafter arising Encumbrances of, against or created by the Selling Debtors, shall be fully released from and with respect to the Purchased Assets, which shall be transferred to the Buyer free and clear of all liabilities and Encumbrances except for Assumed Liabilities and Permitted Encumbrances. ***See* APA, section 8.3(b).** |
| **Competitive Bidding**<br>Local Rule 6004-1(b)(iv)(D) | The APA and Sale are the result of a competitive, two stage bidding process that was undertaken under the SISP.  No auction is contemplated by the Debtors. |
| **Closing Date and Other Deadlines**<br>Local Rule 6004-1(b)(iv)(E) | The "**Closing Date**" shall be no later than five (5) Business Days after the conditions set forth in APA have been satisfied, but in any event no later than August 31, 2016 or such later date agreed to by both the Selling Debtors and the Buyer in writing with the consent of the Monitor.  ***See* APA, section 1.1(ff).**<br>The Canadian Sale Order shall have been issued and entered by July 15, 2016.  ***See* APA, sections 6.1(c) and 8.1(e).**[7]<br>The Proposed Order shall have been issued and entered by this Court by July 29, 2016.  ***See* APA, sections 6.1(d) and 8.1(e).** |
| **Use of Proceeds**<br>Local Rule 6004-1(b)(iv)(H) | The Purchase Price is to be allocated among the Selling Debtors and the Purchased Assets, in manner to be determined by the Buyer acting commercially reasonably, in consultation with the Selling Debtors, prior to the Closing Date. ***See* APA, section 3.2.**<br>The net proceeds from the sale of the Purchased Assets shall stand in the place and stead of the Purchased Assets, and all Claims and Encumbrances shall attach to the net proceeds from the sale of the Purchased Assets with the same priority as they had with respect to the Purchased Assets immediately prior to the Sale.  ***See* Canadian Sale Order ¶ 6.** |

---

[7] The Debtors have requested an extension of this deadline, but it has not been confirmed as of the date hereof.

RLF1 14779627V.1

| MATERIAL TERMS OF THE APA, PROPOSED ORDER, AND CANADIAN SALE ORDER | |
|---|---|
| | The APA provides for the funding of a reserve (the "Administrative Reserve") of $47 million to satisfy certain post-closing and legacy obligations of the Debtors, being (i) administrative or other claims and costs outstanding on the Closing Date with respect to amounts secured by charges created by the Canadian Court, including by the Initial CCAA Order; (ii) amounts payable by any Selling Debtor or any current or former director or officer of any Selling Debtor to Governmental Authorities in order to settle outstanding Environmental Claims; and (iii) all amounts necessary to cure any monetary defaults as a condition to assuming the Assigned Contracts (the "Cure Costs"), in an amount not to exceed $6 million (together, the "Administrative Reserve Costs"). *See* **APA, section 10.5(b).** |
| **Record Retention**<br>Local Rule 6004-1(b)(iv)(J) | The Selling Debtors may retain copies of all books and records included in the Purchased Assets to the extent necessary or useful for the administration of the CCAA Proceedings or these chapter 15 cases or the filing of any tax return or compliance with any Applicable Law or the terms of the APA or related to the Excluded Assets. *See* **APA, section 2.1(p).** |
| **Sale of Avoidance Actions**<br>Local Rule 6004-1(b)(iv)(K) | The Purchased Assets include all rights and claims against any Person for any liability of any kind based on or arising out of the occurrence of any fraudulent conveyance, settlement, reviewable transaction, transfer at undervalue, fraudulent preference or similar claim. *See* **APA, section 2.1(v).** |
| **Requested Findings as to Successor Liability**<br>Local Rule 6004-1(b)(iv)(L) | The Buyer is not a mere continuation of the Debtors, and there is no continuity of enterprise between the Debtors and the Buyer. The Buyer is not holding itself out to the public as a continuation of the Debtors. The Buyer is not a successor to the Debtors and the Sale does not amount to a consolidation, merger, or *de facto* merger of Buyer and the Debtors. *See* **Proposed Order ¶ P.**<br><br>Except as expressly assumed, all debts, obligations, contracts and liabilities of or relating to the Business, Purchased Assets, or the Debtors, shall remain the sole responsibility of the Debtors, and the Buyer shall not assume, accept or undertake, any debt, obligation, duty, contract or liability of the Debtors of any kind whatsoever, except as expressly assumed under the APA. *See* **APA, section 2.4.** |
| **Sale Free and Clear of Unexpired Leases**<br>Local Rule 6004-1(b)(iv)(M) | The Purchased Assets include: (a) all leases of personal or moveable property of the Selling Debtors that relate to the Business, listed on Schedule 2.1(f) of the Disclosure Letter, and (b) all of the Selling Debtors' right, title and interest in, to and under all offers to lease, agreements to lease, leases, renewals of leases, tenancy agreements, rights of occupation, licenses or other occupancy agreements which bind a Selling Debtor as lessor or licensor and which entitle any other Person to possess or occupy any space within a Real Property, listed on Schedule 2.1(g) of the Disclosure Letter. *See* **APA, sections and 2.1(f) and 2.1(g).** |

11

| MATERIAL TERMS OF THE APA, PROPOSED ORDER, AND CANADIAN SALE ORDER | |
|---|---|
| | The Canadian Sale Order and the Proposed Order vest in the Buyer absolute right, title, and interest in and to the Purchased Assets free and clear of and from any and all ownership claims, security interests, liens, encumbrances, obligations, liabilities, claims, demands, guarantees,  set-off , executions, levies, charges, or other financial or monetary claims, adverse claims, or rights of use, puts or forced sale provisions, with such claims and encumbrances attaching to the proceeds generated from the sale of the Purchased Assets.  *See* **Canadian Sale Order ¶ 4; *See* Proposed Order, ¶ H.** |
| **Credit Bid**<br>Local Rule 6004-1(b)(iv)(N) | The Buyer is entitled to credit bid in accordance with the APA.  *See* **Proposed Order ¶ V.**<br><br>The Buyer will deliver to the Selling Debtors the Credit Bid Documents, enabling the Buyer to credit bid. *See* **APA, section 5.6.**<br><br>The Selling Debtors are entitled to specific performance of the Buyer's obligations to: (i) enforce its rights under the Credit Bid Documents; and (ii) cause the Agent under the Credit Bid Documents to take such actions to ensure compliance with the Credit Bid Documents by no later than the Closing Date.  *See* **APA, section 11.3(b).** |
| **Relief from Bankruptcy Rule 6004(h)**<br>Local Rule 6004-1(b)(iv)(N) | While the APA does not contain a provision explicitly requiring the Debtors to seek a waiver of Bankruptcy Rule 6004(h), when read together, sections 6.1(d) and 8.1(e) suggest that the APA requires the Proposed Order to be issued and entered by the Court by July 29, 2016.  As a result, as set forth below in greater detail, the Debtors seek a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h).  *See* **Proposed Order ¶ 15.** |

## Approval by this Court

23.    The substantial majority of the assets to be sold are in Canada and, thus, the Foreign Representative seeks this Court's recognition and enforcement of the Canadian Sale Order with respect to such assets.  Certain of the assets to be sold pursuant to the APA constitute U.S. Assets, and certain of the contracts and leases to be assumed and assigned pursuant to the APA are U.S. law governed agreements.  Thus, in addition to seeking recognition, the Foreign Representative seeks this Court's approval of the sale of U.S. Assets free and clear of any liens, claims, encumbrances, and other interests, and authorization to assume and assign the Assumed U.S. Contracts.

24.     By this Motion, the Foreign Representative seeks entry of the Proposed Order recognizing and giving full force and effect to the Canadian Sale Order approving the sale of the Purchased Assets under the APA.  In addition to the sale of the Purchased Assets, the APA provides for the transfer of substantially all contracts to which the Selling Debtors are party (the "**Assumed Contracts**").

25.     The Sale provides for the continuation of the Debtors' business as a going concern, thus preserving jobs, maintaining customers and vendor relationships, and providing significant benefits to the Debtors' stakeholders.  As described in the Aronson Declaration, the bid for the Purchased Assets that is memorialized in the APA represents the highest price realizable for the Purchased Assets.  Indeed, the bid memorialized in the APA represents the only viable path to a successful restructuring currently available to the Debtors.  Further, entry of an order recognizing the Canadian Sale Order is a condition precedent to the Closing of the APA, and absent this relief, the Debtors and their creditors will likely suffer irreparable harm, including a potential liquidation, from the inability to close the Sale.

26.     In addition to seeking recognition and enforcement of the Canadian Sale Order approving the APA, the Foreign Representative requests that this Court, pursuant to sections 363, 1507, 1520, and 1521 of the Bankruptcy Code, authorize and approve the Sale of the U.S. Assets in accordance with the terms and conditions of the APA.

27.     The U.S. Assets, described in further detail below, are minimal relative to the Purchased Assets as a whole.  Prior to the Commencement Date, Algoma U.S. owned *de minimis* assets in the United States, limited to an office lease and certain furniture and other personal property.  However, this lease and the personal property are not being sold or transferred to the

13

Buyer as part of the Sale.  Furthermore, the shares of Algoma U.S. are not being sold to the Buyer.

28.    The U.S. Assets, excluding the In-Transit U.S. Assets (as defined herein) are listed on Exhibit D annexed hereto, are comprised mainly of (i) warehoused spare equipment used in the steel production process, and (ii) steel inventory located in certain storage and processing facilities in various locations across the United States.  Many of Algoma's customers are located in the United States, and the Debtors regularly contract with third parties to store or provide additional processing services in advance of delivery to their U.S. customers.  The Debtors estimate that, as of June 30, 2016, approximately 10,000 net tonnes of steel was located within the United States, all of which, along with the spare equipment noted herein, is proposed to be transferred to the Buyer pursuant to the APA.  In addition, pursuant to various supplier and customer agreements, the Debtors often (i) take title of raw materials and equipment upon shipment from suppliers located in the U.S., and (ii) hold title to steel inventory until delivery is completed to customers located in the U.S. (the "**In-Transit U.S. Assets**").  The Debtors also propose to transfer any In-Transit U.S. Assets to the Buyer pursuant to the APA.

29.    In addition, the Selling Debtors are parties to a number of executory contracts, including agreements with lenders, vendors, and contractors, that are governed by the laws of the United States or a jurisdiction located within the territory of the United States ("**U.S. Contracts**").  The U.S. Contracts include some of Algoma's most integral agreements, including certain supply agreements.

30.    In furtherance of the Sale, the Foreign Representative also seeks this Court's authorization to assume and assign, pursuant to sections 365 and 1521 of the Bankruptcy Code, the Closing U.S. Contracts and any Assumed New U.S. Contracts (each as defined herein, and

collectively, the "**Assumed U.S. Contracts**"), in accordance with the terms and conditions of the APA.

31.     The assumption and assignment of the Assumed U.S. Contracts is integral to the Sale.  Accordingly, the Foreign Representative will provide sufficient notice to Assumed U.S. Contract counterparties pursuant to the procedures described herein (the "**Assumption and Assignment Procedures**").

<u>**Relief Requested Should be Granted**</u>

**A.     The Court Should Recognize the Canadian Sale Order and Authorize and Approve the Sale**

32.     The Foreign Representative seeks recognition and enforcement of the Canadian Sale Order after it has been entered by the Canadian Court, to ensure it is effective under the laws of the United States.

33.     Section 1521 of the Bankruptcy Code sets forth various forms of relief that may be granted upon recognition of a foreign proceeding. Specifically, section 1521(b) of the Bankruptcy Code provides, in pertinent part, that "[u]pon recognition of a foreign proceeding . . . the court may, at the request of the foreign representative, entrust the distribution of all or part of the debtor's assets located in the United States to the foreign representative." 11 U.S.C. § 1521(b).

34.     Further, sections 1525 and 1527 of the Bankruptcy Code, when read in conjunction, direct the Court to "cooperate to the maximum extent possible" with the Canadian Court regarding the "coordination of the administration and supervision" of the Debtors' assets and affairs. 11 U.S.C. §§ 1525, 1527(3).  Consistent with this, the Canadian Sale Order specifically requests the aid and recognition of this Court to give effect to the Canadian Sale Order once entered.  *See* Canadian Sale Order ¶ 15.

RLF1 14779627V.1

35.    The Recognition Order provides that the CCAA Proceeding is entitled recognition by this Court pursuant to section 1517 of the Bankruptcy Code.  *See* Recognition Order ¶ I.  The Recognition Order further provides that the CCAA Proceeding and the transactions to be consummated thereunder shall be granted comity and given full force and effect in the U.S. to the same extent that they are given effect in Canada and shall be binding on all creditors of Algoma and any of their successors and assigns.  *See Id* ¶ 6.  Accordingly, pursuant to the terms of the Recognition Order, it is appropriate that the Court recognize the Canadian Sale Order.

36.    Prior to entering the Canadian Sale Order, the Canadian Court will have the opportunity to scrutinize the APA and the Sale, which is a result of the efforts of the Debtors and their advisors (with the oversight of the Monitor) to maximize the value of the estate through the sale of the Purchased Assets.  The Foreign Representative and the Debtors have determined that the Sale provides the highest and best return to the Debtors, their creditors, and their stakeholders, and the Canadian Sale Order, upon entry, recognizes as much.  The comprehensive and robust SISP carried out by the Debtors with assistance from their advisors, and overseen by the Canadian Court and the Monitor, with input from the Debtors' key stakeholders, ensures that the process was fair and the sale is a positive result for the Debtors' stakeholders.  As further evidence of this, the Monitor, an independent party in the CCAA Proceeding, supports the Sale.  *See* Monitor's Report ¶ 76.

37.    Entry of the Proposed Order will permit the Debtors to proceed with the Sale in the CCAA Proceeding without disruption.  Absent the relief requested herein, the Debtors will suffer irreparable harm, as entry of the Proposed Order is a condition precedent to the closing of the APA.  *See* APA ¶ 6.1(d).

RLF1 14779627V.1

38. Relief similar to that requested in this Motion related to the recognition of a Canadian sale order has been entered in other chapter 15 cases in this District. *See, e.g.*, *In re PT Holdco, Inc.*, Case No. 16-10131 (LSS) (Bankr. D. Del. March 4, 2016) [D.I. 47]; *In re Thane Int'l, Inc.*, Case No. 15-12186 (KG) (Bankr. D. Del. Dec. 1, 2015) [D.I. 42]; *In re Xchange Technology Group LLC*, Case No. 13-12809 (KG) (Bankr. D. Del. Nov. 25, 2013) [D.I. 47]; *In re Talon Systems Inc.,* Case No. 13-11811 (KJC) (Bankr. D. Del. Sept. 25, 2013) [D.I. 64]; *In re Cinram International Inc.,* Case No. 12-11882 (KJC) (Bankr. D. Del. July 25, 2012) [D.I. 98]; *In re Arctic Glacier Int'l Inc.*, Case No. 12-10605 (KG) (Bankr. D. Del. July 17, 2012) [D.I. 126]; *In re EarthRenew IP Holdings LLC*, Case No. 10-13363 (CSS) (Bankr. D. Del. Feb. 18, 2011) [D.I. 68]; *In re Grant Forest Prods., Inc.* Case No. 10-11132 (PJW) (Bankr. D. Del. Apr. 26, 2010) [D.I. 57]; *In re Destinator Tech., Inc.*, Case No. 08-11003 (CSS) (Bankr. D. Del. July 8, 2008).

39. Moreover, granting the relief requested herein fulfills the public policy embodied in chapter 15 of the Bankruptcy Code, which is "to provide effective mechanisms" to promote cooperation in cross-border insolvency cases. 11 U.S.C. § 1501(a).  Accordingly, the Foreign Representative respectfully submits that this Court should recognize and give full effect and force under the laws of the United States to the findings, authorities, and provisions set forth in the Canadian Sale Order, as entered by the Canadian Court.

**B.    The Court Should Approve the Sale of U.S. Assets**

*1.    Approval of the Sale of U.S. Assets is Authorized under Sections 363, 1507, 1520, and 1521 of the Bankruptcy Code*

40. The Recognition Order provides that "[a]ll relief afforded foreign main proceedings pursuant to section 1520 of the Bankruptcy Code is hereby granted to the CCAA Proceeding, Algoma, and the Foreign Representative, as applicable."  Recognition Order ¶ 4.

17

41.    Pursuant to section 1520 of the Bankruptcy Code, section 363 of the Bankruptcy Code is applicable "[u]pon recognition of a foreign proceeding that is a foreign main proceeding . . . to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States." 11 U.S.C. § 1520(a)(2).

42.    Section 1507 of the Bankruptcy Code further provides that "[s]ubject to the specific limitations stated elsewhere in [chapter 15 of the Bankruptcy Code] the court, if recognition is granted, may provide additional assistance to a foreign representative under [chapter 15] or under other laws of the United States." 11 U.S.C. § 1507(a).

43.    Similarly, section 1521 of the Bankruptcy Code provides, in relevant part, that "[u]pon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of [chapter 15 of the Bankruptcy Code] and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief, including . . . granting any additional relief that may be available to a trustee." 11 U.S.C. § 1521(a)(7).

44.    Section 363(b)(1) provides, in relevant part, that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

45.    This Court has held that a sale of assets may be authorized under section 363 of the Bankruptcy Code if the Court finds a "sound business purpose" for the sale. *See Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147 (Bankr. D. Del. 1999) (citing *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)).  Once a court is satisfied that there is a sound business reason justifying the sale, the court must also determine that adequate

18

and reasonable notice has been provided to interested parties, that the sale price is fair and reasonable, and that the purchaser is proceeding in good faith. *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (citation omitted).

46.     The Foreign Representative submits that ample business justifications exist to sell the U.S. Assets to the Buyer.    As described in the Aronson Declaration and Sandoval Declaration, the Sale allows Algoma to emerge from the CCAA Proceeding and these chapter 15 cases at the ideal time, in advance of the autumn inventory build-up, and prior to the expiry of the DIP Facility.    The Sale is the only actionable option available to the Debtors that will allow the Algoma's business to operate as a going concern without the continued need for the DIP Facility, and that provides for the continued employment of all or substantially all of Algoma's employees.

47.     As described in the Aronson Declaration, the Debtors in consultation with their advisors, the Monitor, and the advisors of significant stakeholders in these cases, ran a thorough SISP in good faith.    After extensive marketing efforts in connection with the SISP, the Foreign Representative believes that the APA represents the highest and best offer for the Purchased Assets (which include the U.S. Assets), which will maximize the value of the Debtors' estates for all stakeholders involved.    While the U.S. Assets are minimal in the context of the Purchased Assets, entry of the Proposed Order approving the sale of the U.S. Assets is necessary to the implementation of the Sale as entry of the Proposed Order is a condition precedent to the closing of the APA.    *See* APA ¶ 6.1(d).    Entry of the Proposed Order will permit the Foreign Representative to implement the Sale in a timely and efficient manner that will maximize value for the benefit of the Debtors' creditors.

48.     Relief similar to that requested in this Motion related to asset sales pursuant to section 363 has been entered in other chapter 15 cases in this District.  *See, e.g.*, *In re PT Holdco, Inc.*, Case No. 16-10131 (LSS) (Bankr. D. Del. March 4, 2016) [D.I. 47]; *In re Thane Int'l, Inc.*, Case No. 15-12186 (KG) (Bankr. D. Del. Dec. 1, 2015) [D.I. 42]; *In re Xchange Technology Group LLC*, Case No. 13-12809 (KG) (Bankr. D. Del. Nov. 25, 2013) [D.I. 47]; *In re Talon Systems Inc.,* Case No. 13-11811 (KJC) (Bankr. D. Del. Sept. 25, 2013) [D.I. 64]; *In re Cinram International Inc.,* Case No. 12-11882 (KJC) (Bankr. D. Del. July 25, 2012) [D.I. 98]; *In re Arctic Glacier Int'l Inc.*, Case No. 12-10605 (KG) (Bankr. D. Del. July 17, 2012) [D.I. 126]; *In re EarthRenew IP Holdings LLC*, Case No. 10-13363 (CSS) (Bankr. D. Del. Feb. 18, 2011) [D.I. 68]; *In re Grant Forest Prods., Inc.* Case No. 10-11132 (PJW) (Bankr. D. Del. Apr. 26, 2010) [D.I. 57]; *In re Destinator Tech., Inc.*, Case No. 08-11003 (CSS) (Bankr. D. Del. July 8, 2008).

49.     For all of the foregoing reasons, the Foreign Representative respectfully submits that there is more than ample justification for the Court to authorize and approve the sale of U.S. Assets, pursuant to section 363 of the Bankruptcy Code.

**2.      *Sale of the U.S. Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests is Appropriate Pursuant to Section 363(f) of the Bankruptcy Code***

50.     The Foreign Representative respectfully requests that the Court, pursuant to section 363(f) of the Bankruptcy Code, authorize and approve the sale of the U.S. Assets free and clear of liens, claims, encumbrances, and other interests, except as otherwise provided in the APA.

51.     As stated above, section 363 is applicable in these chapter 15 cases.  Under section 363(f) of the Bankruptcy Code, a debtor may sell estate property free and clear of liens, claims, encumbrances, and other interests if one of the following conditions is satisfied:

> (1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     such interest is in bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).   Satisfaction of any one of these five requirements will suffice to permit the sale of the U.S. Assets "free and clear" of liens, claims, encumbrances, and other interests. *See, e.g.*, *In re Dura Automotive Sys., Inc.*, Case No. 06-11202 (KJC), 2007 WL 7728109 (Bankr. D. Del. Aug. 15, 2007). Furthermore, section 105(a) of the Bankruptcy Code grants this Court broad discretionary powers, providing that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.   11 U.S.C. § 105(a).  This equitable power may be utilized to effectuate the provisions of section 363(f). *See, e.g.*, *In re Trans World Airlines, Inc.*, 2001 WL 1820325 (highlighting bankruptcy courts' equitable authority to authorize sale of estate assets free and clear of any interests).

52.     The sale of the U.S. Assets will satisfy one or more of the requirements of section 363(f).   Any entity holding liens, encumbrances or other known interests on the U.S. Assets will receive notice of this Motion and the Sale hearing.  Accordingly, all parties in interest will be given sufficient opportunity to object to the relief requested herein.   The absence of any objections to the Sale shall be deemed consent, thereby satisfying Bankruptcy Code section 363(f)(2).  *See Futuresource LLC v. Reuters Ltd.*. 312 F.3d 281, 285 (7th Cir. 2002) ("lack of objection (provided of course there is notice) counts as consent.").   Moreover, any party asserting a lien, claim, or interest in the U.S. Assets may be compelled to accept a money satisfaction for such interest, thereby satisfying section 363(f)(5) of the Bankruptcy Code.

21

53.     As noted above, relief similar to that requested in this Motion related to the approval of the Sale has been entered in other chapter 15 cases in this District.  Further, the Canadian Sale Order also provides for the sale of the Purchased Assets, including the U.S. Assets, to vest in the Buyer free and clear of any interest.  *See* Canadian Sale Order ¶ 4. Accordingly, the Debtors request authorization to sell the U.S. Assets free and clear of all liens, claims, encumbrances, and other interests, except as provided in the APA.

### 3.     *The Buyer is Entitled to All Protections Available to a Good Faith Buyer Pursuant to Section 363(m) of the Bankruptcy Code*

54.     The Foreign Representative further requests that this Court find that the Buyer is entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the Sale. Section 363(m) of the Bankruptcy Code (which, as described above, applies in these cases) provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b) . . . of this section of a sale . . . of property does not affect the validity of a sale . . . under such authorization to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).  Section 363(m) of the Bankruptcy Code protects a good faith purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose it interest in the purchased assets if the order allowing the sale is reversed on appeal.

55.     While the Bankruptcy Code does not define "good faith," the Third Circuit has stated:

> The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

RLF1 14779627V.1

*In re Abbots Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (quoting *In re Rock Indus.*

*Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

56.     The Foreign Representative submits that, as described in the Sandoval

Declaration, the APA was negotiated without collusion, in good faith, and on an arm's-length

basis.  *See also* Monitor's Report ¶ 74.  Accordingly, the Foreign Representative requests that

the Court find that the Buyer has purchased the Purchased Assets, including the U.S. Assets, in

good faith within the meaning of section 363(m) of the Bankruptcy Code.

**C.      The Court Should Approve the Assumption and Assignment of the Assumed U.S.
          Contracts**

***1.       The Court has the Authority to Approve the Assignment of the Assumed U.S. Contracts
          Pursuant to Section 365 of the Bankruptcy Code***

57.     A debtor is authorized to assume or reject any executory contract or unexpired

lease of the debtor, subject to the court's approval.  *See* 11 U.S.C. § 365(a).  Further, a debtor

may assume and assign a contract, provided it cures any existing defaults and provides adequate

assurance of future performance of the assigned contract.  *See* 11 U.S.C. § 365(b)(1).  The

Recognition Order provides that section 365 of the Bankruptcy Code applies with respect to the

property of Algoma that is within the territorial jurisdiction of the U.S.  *See* Recognition

Order ¶ 5.

58.     In furtherance of the Canadian Proceedings and the Sale, the Foreign

Representative and the Debtors seek the authority to assume and assign the Assumed U.S.

Contracts pursuant to section 365 of the Bankruptcy Code.  It is well established that the decision

to assume or reject an executory contract is subject to judicial review under the business

judgment standard.  *See, e.g. NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *Sharon*

*Steel Corp. v. Nat'l Fuel Gas Distribution. Corp.*, 872 F.2d 36, 39-40 (3d Cir. 1989); *In re Fed.*

*Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003) ("The business judgment test dictates that

23

a court should approve a debtor's decision to reject a contract unless that decision is the product of bad faith or a gross abuse of discretion."); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993).

59.    The assumption and assignment of the Assumed U.S. Contracts as part of the Sale is based on the Debtors' sound business judgment and is in the best interests of the Debtors and their creditors.  As set forth in the Sandoval Declaration, the Debtors intend to sell substantially all the assets used in their business upon the Closing and will have little use for the Assumed U.S. Contracts.   On the other hand, the Buyer will require the Assumed U.S. Contracts, together with the Purchased Assets, to continue the Debtors' going concern business.  If the Debtors are unable to assign the Assumed U.S. Contracts (the assignment of certain of which will likely be a condition to the Closing of the Sale), the Sale will be jeopardized, causing a disruption in the administration of the Debtors' estates and a significant loss of value to the Debtors and their stakeholders.

60.    The Foreign Representative believes that all requirements for assumption and assignment of the Assumed U.S. Contracts under section 365(b)(1) will be satisfied.   In connection with the assignment of the Assumed U.S. Contracts, the cure amounts (the "**Cure Amounts**") owing to counterparties of the Assumed U.S. Contracts will be paid by the Selling Debtors or the Buyer, as provided for in the APA.

61.    Furthermore, counterparties to the Assumed U.S. Contracts are adequately assured of future performance by the Buyer.  As provided in the Sandoval Declaration, the APA proceeds provide for the funding of a reserve (the "**Administrative Reserve**"), that in part, provides for a $6 million fund for Cure Amounts, with any excess Cure Amounts to be paid by the Buyer.  Counterparties to the Assumed U.S. Contracts can be assured that the Buyer did not

24

fund the Administrative Reserve merely to abandon performance of the Assumed U.S. Contracts thereafter.  Furthermore, as outlined in the Sandoval Declaration, KPS (which backs the Buyer) has the track record, financial strength, and experience in the metals industry, necessary to capably manage Algoma's business, including performing the Assumed U.S. Contracts.

62.    Relief related to the assumption and assignment of executory contracts pursuant to section 365 in connection with the sale of assets has been entered in several other chapter 15 cases in this District.  *See, e.g.*, *In re Thane Int'l, Inc.*, Case No. 15-12186 (KG) (Bankr. D. Del. Dec. 1, 2015) [D.I. 42]; *In re Xchange Technology Group LLC*, Case No. 13-12809 (KG) (Bankr. D. Del. Nov. 25, 2013) [D.I. 47]; *In re Cinram International Inc.,* Case No. 12-11882 (KJC) (Bankr. D. Del July 25, 2012) [D.I. 98]; *In re Arctic Glacier Int'l Inc.*, Case No. 12-10605 (KG) (Bankr. D. Del. July 17, 2012) [D.I. 126].

63.    Furthermore, the Foreign Representative will provide all counterparties to the Assumed U.S. Contracts an opportunity to be heard on the proposed treatment of their agreements, as all counterparties will receive notice of, and have the opportunity to object to, this Motion, pursuant to the proposed Assumption and Assignment Procedures described below.

**2.    *The Court Should Approve the Proposed Assumption and Assignment Notice and the Assumption and Assignment Procedures***

64.    The Foreign Representative proposes the following Assumption and Assignment Procedures:

a)    As soon as reasonably practicable after being notified by the Buyer as to which U.S. Contracts they propose to be assigned under the APA, the Foreign Representative will file with this Court and serve upon counterparties to all U.S. Contracts (without regard to whether the Buyer has designated such U.S. Contracts for assumption and assignment under Schedule 2.1(j) of the Disclosure Letter (as defined in the APA)) a notice substantially in the form of Exhibit E hereto (the "**Assumption and Assignment Notice**") that such U.S. Contract may be designated for assumption and assignment to the Buyer in connection with the Closing, including

Cure Amounts proposed to be paid to the applicable counterparty in the event that such contract is assumed and assigned to the Buyer in connection with the Closing. To the extent the Foreign Representative later discovers an existing U.S. Contract that was not previously identified, and which the Buyer proposes to take assignment of, the Foreign Representative will promptly file and serve upon any applicable counterparties an Assumption and Assignment Notice.

b)      U.S. Contract counterparties will be provided ten (10) days (the "**Objection Period**") to object to the assumption and assignment of their executory contracts. If any such objection is filed and remains unresolved at the time of the hearing on this Motion (the "**Hearing**"), the Foreign Representative will seek to have such objection heard at the Hearing. If the Objection Period has not expired by the date of the Hearing, a hearing will be scheduled before the Court as soon as reasonably practicable thereafter.

c)      If no objection is filed prior to the expiry of the Objection Period, the Debtors will be authorized to assume and assign such U.S. Contract to the Buyer and either pay or arrange for such Cure Amount to be paid in full satisfaction of all defaults under the U.S. Contract without further order of the Court.

d)      The Buyer will have the right, consistent with subsection 2.1(j) of the APA, to designate for assignment, any additional U.S. Contract entered into by the Selling Debtors in the ordinary course of business until the Closing Date ("**New U.S. Contract**").

e)      To the extent the Selling Debtors enter into a New U.S. Contract and the Buyer notifies the Selling Debtors that it is designating such New U.S. Contract (the "**Assumed New U.S. Contract**") for assumption and assignment to the Buyer in accordance with the APA, the Foreign Representative will, within three (3) Business Days of receipt of such notice from the Buyer, file with the Court and serve upon the applicable New U.S. Contract counterparties, an Assumption and Assignment Notice of the proposed assumption and assignment of the Assumed New U.S. Contract, including any proposed Cure Amount to be paid in connection with such assumption and assignment.

f)      Irrespective of the timeline provided for subparagraph (a) above, counterparties to Assumed New U.S. Contracts will have five (5) days (the "**New Contract Objection Period**") from the receipt of an Assumption and Assignment Notice to file an objection to such assumption and assignment with the Court. If such an objection is

filed, a hearing will be scheduled before the Court as soon as reasonably practicable thereafter.

g)    If no such objection is filed, the Debtors will be authorized to assume and assign such Assumed New U.S. Contract to the Buyer and either pay or arrange for such Cure Amount to be paid in full satisfaction of all defaults under the Assumed New U.S. Contract without further order of the Court.

h)    The Buyer will have the right, consistent with subsection 2.1(j) of the APA, to finally determine which of the U.S. Contracts will be assumed and assigned to it up to two (2) Business Days before the Closing Date (the "**Designation Deadline**"). Within two (2) Business Days after the Closing Date, the Foreign Representative will file with the Court a list of all U.S. Contracts ultimately assumed and assigned to the Buyer at the Closing (the "**Closing U.S. Contracts**"), and will serve notice of the same to all counterparties to such Closing U.S. Contracts.

i)    To the extent the Designation Deadline passes before the expiry of the New Contract Objection Period, the assumption and assignment of the relevant Assumed New U.S. Contract shall not be effective until the expiry of the New Contract Objection Period or the entry of a further order of this Court approving such assumption and assignment. For any Assumed New U.S. Contracts that are deemed or ordered approved after the Closing Date, the Debtors will file with the Court a list detailing any such Assumed New U.S. Contracts within two (2) Business Days after such approval, and will serve notice of the same to all counterparties to such Assumed New U.S. Contracts.

65.    The proposed Assignment and Assumption Notice and Assignment and Assumption Procedures adequately protect the interests of counterparties to the Assumed U.S. Contracts. Similar procedures and relief regarding the assumption and assignment of contracts in a chapter 15 case have been approved and granted previously by this Court. *See, e.g., In re Cinram Int'l Inc.*, Case No. 12-11882 (KJC) (Bankr. D. Del. July 25, 2012) [D.I. 98]. Accordingly, the Foreign Representative submits that assumption and assignment of the Assumed U.S. Contracts pursuant to the Assignment and Assumption Procedures is authorized under the Bankruptcy Code and is in the best interests of the Debtors and their creditors.

## Waiver of Bankruptcy Rules 6004(h) and 6006(d)

66.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."    Similarly, Bankruptcy Rule 6006(d) provides that "[a]n order authorizing the trustee to assign an executory contract or unexpired lease under §365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."

67.    The Foreign Representative requests that the Proposed Order, once entered, be effective immediately by providing that the 14-day stay under Bankruptcy Rules 6004(h) and 6006(d) are waived.

68.    Time is of the essence with respect to the relief embodied in the Proposed Order and the consummation of the Sale.    To achieve the highest and best value for the Purchased Assets, including the U.S. Assets and Assumed U.S. Contracts, the Foreign Representative must be afforded the opportunity to promptly sell the Purchased Assets in accordance with the Canadian Sale Order and the APA without undue disruption or delay.    Therefore, the Foreign Representative requests that the Court waive the 14-day stay period under Bankruptcy Rules 6004(h) and 6006(d) to the extent applicable to the Proposed Order.

## Notice

69.    The Foreign Representative shall provide notice of the Motion to the following parties, or their counsel, if known:  (a) all persons or bodies authorized to administer foreign proceedings of the Debtors; (b) principal parties that have appeared in the CCAA Proceeding as of the date of service of the relevant pleading; (c) the Office of the U.S. Trustee for the District of Delaware; (d) Davis Polk & Wardwell, LLP, 450 Lexington Avenue, New York, NY, 10017 (Attn: Damian S. Schaible, Esq. and Christopher S. Robertson, Esq.), counsel to Cortland Capital Market Services LLC, in its capacity as successor Term Loan Agent and to certain Prepetition

Term Loan Lenders; (e) White & Case LLP, 1155 Avenue of the Americas, New York, NY 10036-2787 (Attn: Scott Greissman, Esq. and Andrew Ambruoso, Esq.) and Shaw Fishman Glantz & Towbin LLC, 919 North Market, Suite 600, Wilmington DE 19801 (Attn: Tom Horan, Esq., counsel to Deutsche Bank AG, New York Branch, in its capacity as DIP Agent, and to Deutsche Bank AG, Canada Branch, in its capacity as ABL Agent (and, in the case of Shaw Fishman Glantz & Towbin LLC, counsel to Cortland Capital Market Services LLC, in its capacity as successor Term Loan Agent); (f) Wilmington Trust, National Association, 246 Goose Lane, Suite 105, Guilford, CT 06437 (Attn: Essar Steel Algoma Senior Notes Administrator), as Senior Notes Trustee; (g) UMB Bank, N.A., 1010 Grand Avenue, 4th Floor, Kansas City, MO 64108 (Attn: Mark Flannagan), as successor Junior Notes Trustee; (h) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Alan W. Kornberg, Esq., Brian Hermann, Esq. and Catherine Goodall, Esq.) and Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801 (Attn: Pauline K. Morgan, Esq. and Maris J. Kandestin, Esq.), counsel to the ad hoc group of noteholders of the 9.5% Senior Secured Notes; (i) Cassels Brock & Blackwell LLP, 2100 Scotia Plaza, 40 King Street West, Toronto, Ontario, M5H 3C2 (Attn: Ryan C. Jacobs), counsel to the ad hoc group of noteholders of the 14% Junior Secured PIK Notes; (j) Milbank, Tweed, Hadley & McCloy LLP, 28 Liberty Street, New York, NY 10005 (Attn: Gerard Uzzi, Esq.), counsel to Essar Global Fund Limited; (k) Ernst & Young Inc., 222 Bay Street, Toronto, Ontario M5K 1J7 (Attn: Brian M. Denega), the Monitor in the CCAA Proceeding; (l) the Office of the Delaware Secretary of State; (m) the Internal Revenue Service; (n) the Securities and Exchange Commission; (o) the Buyer, (p) all parties known or reasonably believed to have asserted any lien, claim, interest, or encumbrance on any of the U.S. Assets; (q) all known counterparties to the U.S. Contracts; (r) all

RLF1 14779627V.1

entities known or reasonably believed to have expressed an interest in acquiring the U.S. Assets; and (s) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Foreign Representative submits that no further notice is required.

## No Prior Request

70.    Except as described herein with respect to the Canadian Court, no previous request for the relief sought herein has been made to this or any other court.

RLF1 14779627V.1

WHEREFORE, the Foreign Representative respectfully requests that the Court enter the

Proposed Order and grant such other and further relief as it deems just and proper.

Dated: July 6, 2016
     Wilmington, Delaware

/s/ Amanda R. Steele
RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Amanda R. Steele (No. 5530)
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Telephone:   (302) 651-7700
Facsimile:    (302) 651-7701
Email:       collins@rlf.com
Email:       defranceschi@rlf.com
Email:       steele@rlf.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock, P.C. (admitted *pro hac vice*)
Matthew S. Barr (admitted *pro hac vice*)
Kelly DiBlasi (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York  10153
Telephone:   (212) 310-8000
Facsimile:    (212) 310-8007
Email:       ray.schrock@weil.com
Email:       matt.barr@weil.com
Email:       kelly.diblasi@weil.com

*Attorneys for the Foreign Representative*

RLF1 14779627V.1